IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:19-cr-083-M-1 |
| | ) | Chief Judge Barbara M. G. Lynn |
| RUEL M. HAMILTON | ) | |

**MR. HAMILTON'S MOTION TO DISMISS FOR
VIOLATION OF THE SPEEDY TRIAL ACT**

Abbe David Lowell, Bar No. 358651DC
Christopher D. Man, Bar No. 453553DC
Kaitlin A. Pierce, Bar No. 242020DC
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Dion J. Robbins, Bar No. 488888GA
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
DRobbins@winston.com
214-453-6100 (ph)
214-453-6400 (fax)

*Counsel for Defendant Ruel M. Hamilton*

i

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................1

I.    THE STA WAS VIOLATED ....................................................................2

    A.    Clock Starts On March 1, 2019.............................................................2
    B.    Clock Stops For A Day On March 4, 2019............................................3
    C.    Clock Stops For Two Days On May 2-3, 2019 .....................................4
    D.    Judge Scholer's Ineffective Ends Of Justice Findings..........................4
    E.    The STA Clock Ran Another 44 Days Between May 14 And June 27, 2019......8
    F.    Clock Stops For Seven Days On June 27-July 3, 2019 .........................9
    G.    The Court's July 3, 2019 Order Did Not Stop The Clock .....................9

II.   DISMISSAL WITH PREJUDICE IS WARRANTED....................................9

    A.    Seriousness Of The Offense.................................................................10
    B.    Facts And Circumstances Leading To The Dismissal .........................12
    C.    Impact Of Reprosecution On Administration Of Justice.....................13
    D.    Mr. Hamilton Has Been Substantially Prejudiced ..............................19

CONCLUSION...................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barker v. Wingo*,
 407 U.S. 514 (1972) ........................................................................................13, 19

*Bloate v. United States*,
 559 U.S. 196 (2010) ................................................................................................3

*Drabik v. Murphy*,
 246 F.2d 408 (2d Cir. 1957) ..................................................................................5

*Henderson v. United States*,
 476 U.S. 321 (1986) ................................................................................................4

*Pashaian v. Ecclesian Props., Ltd.*,
 1995 WL 224759 (S.D.N.Y. Apr. 14, 1995) ..........................................................5

*United States v. Barnes*,
 159 F.3d 4 (1st Cir. 1998) ......................................................................................3

*United States v. Bieganowski*,
 313 F.3d 264 (5th Cir. 2002) ................................................................................2

*United States v. Blank*,
 701 F.3d 1084 (5th Cir. 2012) .................................................................. 10, 12-15

*United States v. Blevins*,
 755 F.3d 312 (5th Cir. 2014) ..............................................................................14

*United States v. Brooks*,
 697 F.2d 517 (3d Cir. 1982) ..................................................................................6

*United States v. Brown*,
 819 F.3d 800 (6th Cir. 2016) ................................................................................7

*United States v. Brown*,
 985 F. Supp. 722 (E.D. Mich. 1997) ...................................................................20

*United States v. Bundu*,
 479 F. Supp. 2d 195 (D. Mass. 2007) .................................................................18

*United States v. Burrell*,
 634 F.3d 284 (5th Cir. 2011) .............................................................................6, 9

*United States v. Caparella,*
    716 F.2d 976 (2d Cir. 1983).................................................................. 10-11

*United States v. Castle,*
    906 F.2d 134 (5th Cir. 1990) ...................................................................11

*United States v. Clark,*
    577 F.3d 273 (5th Cir. 2009) ...................................................................11

*United States v. Crane,*
    776 F.2d 600 (6th Cir. 1985) .....................................................................7

*United States v. Doran,*
    882 F.2d 1511 (10th Cir. 1989) .................................................................6

*United States v. Fernandez,*
    2018 WL 2452951 (D. Me. May 31, 2018) ..............................................10

*United States v. Gonzales,*
    137 F.3d 1431 (10th Cir. 1998) .............................................................. 6-7

*United States v. Gonzales,*
    897 F.2d 1312 (5th Cir. 1990) ...................................................................2

*United States v. Hastings,*
    847 F.2d 920 (1st Cir. 1988).....................................................................2

*United States v. Hernandez-Amparan,*
    600 F. Supp. 2d 839 (W.D. Tex. 2009)............................................. 11, 17

*United States v. Hernandez-Mejia,*
    406 F. App'x 330 (10th Cir. 2011) ...........................................................6

*United States v. Hicks,*
    779 F.3d 1163 (10th Cir. 2015) .................................................................3

*United States v. Howard,*
    129 F.3d 1266 (6th Cir. 1997) ...................................................................6

*United States v. Irizarry-Colon,*
    268 F. Supp. 3d 324 (D.P.R. 2017)..................................................... 12-13

*United States v. Johnson,*
    29 F.3d 940 (5th Cir. 1994) ................................................................ 13-15

*United States v. Jordan,*
    915 F.3d 563 (9th Cir. 1990) ................................................................ 8-9

iv

*United States v. Joseph*,
    No. 98 CR 582 (N.D. Ill. Oct. 2, 2003)...................................................................................11

*United States v. Lloyd*,
    125 F.3d 1263 (9th Cir. 1997) ...........................................................................................7

*United States v. Mancia-Perez*,
    331 F.3d 464 (5th Cir. 2003) ...........................................................................................12

*United States v. Mancuso*,
    302 F. Supp. 2d 23 (E.D.N.Y. 2004) ...............................................................................10

*United States v. Martin*,
    742 F.2d 512 (9th Cir. 1984) .............................................................................................6

*United States v. Martinez-Espinoza*,
    299 F.3d 414 (5th Cir. 2002) ............................................................................. 12, 14-15

*United States v. May*,
    819 F.2d 531 (5th Cir. 1987) ...........................................................................................12

*United States v. McCoy*,
    770 F.2d 647 (7th Cir. 1985) .............................................................................................5

*United States v. Melguizo*,
    824 F.2d 370 (5th Cir. 1987) ...........................................................................................11

*United States v. Messer*,
    197 F.3d 330 (9th Cir. 1999) ...........................................................................................20

*United States v. Ortega-Mena*,
    949 F.2d 156 (5th Cir. 1991) .............................................................................................3

*United States v. Perez*,
    2011 WL 2294194 (D. Guam 2011) ..................................................................................2

*United States v. Quinones*,
    2013 WL 4482909 (S. D. Tex. Aug. 19, 2013) ................................................................17

*United States v. Richmond*,
    735 F.2d 208 (6th Cir. 1984) .........................................................................................2, 7

*United States v. Rivera*,
    863 F.2d 293 (3d Cir. 1998)...............................................................................................2

*United States v. Spring*,
    80 F.3d 1450 (10th Cir. 1996) ...........................................................................................8

*United States v. Stephens*,
  489 F.3d 647 (5th Cir. 2007) ........................................................................ 1-2, 4

*United States v. Taylor*,
  487 U.S. 326 (1988) ....................................................................................... 17-18

*United States v. Tinklenberg*,
  563 U.S. 647 (2011) ........................................................................................... 1, 3

*United States v. Toombs*,
  574 F.3d 1262 (10th Cir. 2009) ....................................................................... 6-7

*United States v. Velasquez*,
  890 F.2d 717 (5th Cir. 1989) ............................................................................. 17

*United States v. Williams*,
  511 F.3d 1044 (10th Cir. 2007) ........................................................................... 7

*United States v. Willis*,
  958 F.2d 60 (5th Cir. 1992) ................................................................................. 2

*Zedner v. United States*,
  547 U.S. 489 (2006) ......................................................................................... 2, 9

**Statutes**

18 U.S.C. §666(a) ...................................................................................................... 11

18 U.S.C. §3161(2018. ..................................................................................... *passim*

18 U.S.C. §3162(a)(2) ......................................................................................... 1-2, 10

18 U.S.C. §3559(a)(3) ............................................................................................... 11

**Other Authorities**

David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of
  White-Collar Crimes*, 33 Criminology 587 (1995) .......................................... 16

Department of Justice Press Release (Mar. 1, 2019), *Dallas City Council Member
  Carolyn Davis Pleads Guilty to Accepting Bri*bes,
  https://www.justice.gov/usao-ndtx/pr/dallas-city-council-member-carolyn-
  davis-pleads-guilty-accepting-bribes .............................................................. 15

Elizabeth Szockyj, *Imprisoning White Collar Criminals?*, 23 S. Ill. Univ. L. J.
  485 (1999) .......................................................................................................... 16

Jake Bleiberg, *Ex-Dallas City Council Member Pleads Guilty to Taking Bribes*,
    U.S. News & World Rep. (Mar. 1, 2019), https://www.usnews.com/news/best-
    states/texas/articles/2019-03-01/former-dallas-city-councilor-pleads-guilty-to-
    taking-bribes ...................................................................................................................16

James Ragland, *Dallas developer donating thousands to help schools in poor
    neighborhoods*, DallasNews (Sept. 30, 2016),
    https://www.dallasnews.com/opinion/commentary/2016/09/30/dallas-real-
    estate-developer-donating-cash-technology-programs-help-schools-poor-
    neighborhoods..................................................................................................................15

John Braithwaite, *Crime, Shame and Reintegration* (1989) ...........................................17

NBC News (Mar. 1, 2019), *U.S. Attorney Discusses Charge Brought Against
    Carolyn Davis*, https://www.nbcdfw.com/news/local/Prosecutors-Discuss-
    Charges-Brought-Against-Former-Dallas-City-Councilwoman-Carolyn-
    Davis_Dallas-Fort-Worth-506556102.html.....................................................................15

Robert Wilonsky, *Former Dallas Mayor Pro Tem Dwaine Caraway sentenced to
    56 months in federal prison*, DallasNews (Apr. 5, 2019),
    https://www.dallasnews.com/news/dallas-city-hall/2019/04/05/former-dallas-
    mayor-pro-tem-dwaine-caraway-awaiting-federal-sentencing-corruption............................16

Robert Wilonsky, *Judge denies feds' request to keep Dwaine Caraway out of
    prison until he testifies against developer*, DallasNews (Apr. 4, 2019),
    https://www.dallasnews.com/news/dallas-city-council/2019/04/04/judge-
    denies-feds-request-keep-dwaine-caraway-prison-testifies-developer...................................16

Robert Wilonsky, *'Scary part is the unknown': Former Dallas Mayor Pro Tem
    Dwaine Caraway begins federal prison sentence*, DallasNews (May 7, 2019),
    https://www.dallasnews.com/news/dallas-city-hall/2019/05/07/scary-part-
    unknown-former-dallas-mayor-pro-tem-dwaine-caraway-begins-federal-
    prison-sentence ................................................................................................................16

Sally S. Simpson, *Corporate Crime Deterrence and Corporate Control
    Policies: Views from the Inside*, in Kip Schlegel & David Weisburd (eds.),
    *White-Collar Crime Reconsidered*, at 298 (1992)..............................................................17

Tom Benning, *Which Democrats are giving back campaign cash from indicted
    Dallas developer Ruel Hamilton?*, DallasNews (Apr. 26, 2019),
    https://www.dallasnews.com/news/texas-politics/2019/04/26/democrats-
    giving-back-campaign-cash-indicted-dallas-developer-ruel-hamilton...................................16

United States Courts, *Judicial Business 2018 Tables* (Sept. 30, 2018),
    https://www.uscourts.gov/statistics-reports/judicial-business-2018-tables............................14

## INTRODUCTION

To protect judicial resources, the public interest, and the due process rights of defendants, the Speedy Trial Act of 1974 ("STA"), 18 U.S.C. §3161 et seq. (2018), requires dismissal of an indictment as a matter of law if the prosecution fails to bring a defendant to trial within 70 non-excludable days. In reviewing the record of this case for motions, it became clear that the prosecution has not complied with the STA in advancing this case, and defense counsel, which never agreed to any excludable time, would be remiss not to bring the STA violation to the attention of the Court. This is especially so because the government also unduly delayed bringing this case at all, creating its own set of due process issues. (*See* Mot. to Dismiss for Pre-Indictment Delay.) To ensure that the STA serves its purpose in protecting the Sixth Amendment right to a speedy trial, the dismissal that is now required should be with prejudice. Moreover, such a dismissal with prejudice is the only way to rectify the substantial prejudice done to the defense due to the loss of a key witness through the death of Carolyn Davis due to the government's delay.

## ARGUMENT

The STA requires the trial of a federal criminal defendant to begin "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. §3161(c)(1).[1] If a defendant is not tried within 70 days, the indictment must be dismissed. *Id.* §3162(a)(2); *United States v. Stephens*, 489 F.3d 647, 652 (5th Cir. 2007).

---

[1] Weekends and holidays count in calculating violations of the Speedy Trial Act. *United States v. Tinklenberg*, 563 U.S. 647, 662 (2011).

Congress enacted the STA, in part, "to 'give effect to the Sixth Amendment right to a speedy trial' by setting specified time limits…within which criminal trials must be commenced." *United States v. Rivera*, 863 F.2d 293, 295 (3d Cir. 1998) (internal quotations omitted).  The STA serves a dual purpose – protecting the constitutionally guaranteed right of all defendants to a speedy trial and serving the public's interest in prompt criminal proceedings.  *Zedner v. United States*, 547 U.S. 489, 501 (2006); *see United States v. Gonzales*, 897 F.2d 1312, 1315 (5th Cir. 1990).  Because of this, "a defendant may not prospectively waive the [Speedy Trial] Act." *Zedner*, 547 U.S. at 500; *see, e.g.*, *United States v. Willis*, 958 F.2d 60, 63 (5th Cir. 1992).

Although the Court "bears responsibility in ensuring the Speedy Trial clock is upheld, . . . ultimately the onus is on the Government to prosecute cases."  *United States v. Perez*, 2011 WL 2294194, at *6 (D. Guam 2011) (granting dismissal with prejudice).  Indeed, "whenever government – for whatever reasons – falls short of meeting the Act's requirements, the administration of justice is adversely affected."  *United States v. Hastings*, 847 F.2d 920, 926 (1st Cir. 1988).  Congress, accordingly, mandated the sanction of dismissal under Section 3162 to compel prosecutors to work in furtherance of that goal.  *Id*.  Compliance is not a suggestion; it is a legal requirement.  *United States v. Bieganowski*, 313 F.3d 264, 281 (5th Cir. 2002).  Dismissal for a violation of the Act is mandatory – not discretionary.  18 U.S.C. §3162(a)(2); *see, e.g.*, *Stephens*, 489 F.3d at 652; *United States v. Richmond*, 735 F.2d 208, 211 (6th Cir. 1984).

## I.      THE STA WAS VIOLATED

### A.      Clock Starts On March 1, 2019

The February 21, 2019 Indictment was unsealed and Mr. Hamilton was arraigned on March 1, 2019 (Dkt. 14), so March 1, 2019 started the 70-day clock.  18 U.S.C. §3161(c)(1).  Although

the government is usually quick to come before the Court to seek a continuance in the "ends of justice" when it does not believe that a trial within 70 days is possible, it did not do so here.

### B.        Clock Stops For A Day On March 4, 2019

Because no trial schedule had yet been set in the case, on March 4, 2019, Mr. Hamilton filed a motion for a status conference to set "a schedule for discovery, motions and other pleadings." (Dkt. 24.)  Although the filing of that pretrial motion stopped the clock, the clock was only stopped for a single day.  On the same day that Mr. Hamilton filed his motion, Judge Scholer responded to that motion by entering a scheduling order that would conform to the STA, which included a conference.  (Dkt. 25.)  "[D]elay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excludable under the Act.  *Id.* §3161(h)(1)(D).  This language is "best read to instruct measurement of the time actually consumed by consideration of the pretrial motion." *Tinklenberg*, 563 U.S. at 656; *see Bloate v. United States*, 559 U.S. 196, 206 (2010) (time excludable "*only* from the time a motion is filed through the hearing or disposition point") (emphasis in original).  "[A] motion requesting only the scheduling of a status conference. . . . is resolved as soon as the conference is actually scheduled – not when the various matters for possible discussion, in fact, are broached – and [] the clock will start again the following day." *United States v. Barnes*, 159 F.3d 4, 12 (1st Cir. 1998); *see United States v. Hicks*, 779 F.3d 1163, 1171 (10th Cir. 2015) (following *Barnes* in holding "the setting of the date resolves the motion in its entirety") (quoting *Barnes*, 159 F.3d at 12).[2]

---

[2] The parties understood Judge Scholer's ruling as having disposed of the motion.  The government did not file a response, as it otherwise would have been required to do so within 14 days.  Local Cr. R. 47.1(d).  Nor did the Court schedule a hearing, or otherwise give any indication that the motion was under advisement.  *Cf.* Local Cr. R. 47.1(g) ("Unless otherwise directed by the presiding judge, oral argument on a motion will not be held.").  Although Judge Scholer denied

**C.      Clock Stops For Two Days On May 2-3, 2019**

The speedy trial clock continued to run until May 2, 2019, when the government filed

motions to continue and transfer the case to this Court.  (Dkts. 42 & 43.)  By that time, 60 days

had been put on the clock.  On May 3, 2019, Judge Scholer granted both the motion to continue

(Dkt. 44) and the motion to transfer the case (Dkt. 46).  The transfer order is followed up by a

Clerk's notation in the record: "Judge update in case as to Ruel M Hamilton, Carolyn Rena Davis.

Chief Judge Barbara M.G. Lynn added.  Judge Karen Gren Scholer no longer assigned to case."

That prompt disposition of the pending motions restarted the clock.

**D.      Judge Scholer's Ineffective Ends Of Justice Findings**

After granting the motion to continue (Dkt. 44) and granting the motion to transfer the case

(Dkt. 46), and after the Clerk's notation to the record that Judge Scholer was "no longer assigned

to [the] case," Judge Scholer ruled on the government's motion to continue again, for a second

time, on May 3, 2019 (Dkt. 47).  This time she granted what ended up being a short continuance

(vacating the trial schedule until this Court set a new schedule) with an "ends of justice" finding

that, if valid would have stopped the speedy trial clock from May 3 to May 14, 2019.  But Judge

Scholer's second order inadequately invoked the "ends of justice" provision of 18 U.S.C.

§3161(h)(7)(A) for two reasons.

---

Mr. Hamilton's motion as moot when she transferred the case on May 3, 2019, the motion itself
became moot when the Court granted the relief requested by setting a schedule on March 4, 2019.
Thus, there is no tolling of the motion through Judge Scholer's order formally declaring the motion
moot.  *See United States v. Ortega-Mena*, 949 F.2d 156, 159 (5th Cir. 1991) (finding trial court
erred in excluding time between filing of response to a motion and its hearing, where trial court
gave no indication of the hearing).  Even if such tolling had occurred, it would be limited to a
maximum of 30 days.  Section 3161(h)(1)(H) limits the exclusion of pretrial motions "not to
exceed thirty days" from STA calculations.  *Henderson v. United States*, 476 U.S. 321, 329 (1986)
("The phrase 'prompt disposition' was intended to prevent a district court from using subsection
([(h)(1)(D)]) to exclude time after a motion is taken under advisement when that time fails to
qualify for exclusion under subsection ([(h)(1)(H)])."); *see Stephens*, 489 F.3d at 656.

4

First, by the time Judge Scholer issued the order, she had already transferred the case and the record disclosed that she was "no longer assigned to [the] case."  The order itself acknowledged that at the outset, explaining in the past tense that the "case has been transferred" to this Court and reporting that a "new trial schedule will be issued by Chief Judge Lynn."  (Dkt. 47 at 1.)  The second order is ineffective because Judge Scholer "had already lost all jurisdiction over the action because the transfer was then complete."  *Drabik v. Murphy*, 246 F.2d 408, 409 (2d Cir. 1957) (Hand, L., J.); *see United States v. McCoy*, 770 F.2d 647, 650 n.3 (7th Cir. 1985) (district court decision on motion was "null and void as the district court was without jurisdiction"); *see also Pashaian v. Ecclesian Props., Ltd.*, 1995 WL 224759, *1 (S.D.N.Y. Apr. 14, 1995) (ordering case be reassigned to a new judge but expressly "retain[ing] jurisdiction" during the interim).

Second, Judge Scholer's "ends of justice" findings are inadequate under the STA.  Those findings appear to be based on a template from some other case, which has no applicability here. The Order notes that an "ends of justice" continuance can be granted "at the request of a defendant or defendant's attorney" and that its findings were based on "the reasons set out in defendant's motion."  (Dkt. 47 at 1.)  Moreover, the Court's finding that this continuance was necessary to afford "defendant's counsel the reasonable time necessary for effective preparation," even "taking into account the exercise of due diligence by defense counsel," was based on "the reasons set out in defendant's motion."  (*Id.* at 1-2.)  But *there was no defendant's motion*, the motion for a continuance was filed by the government and was based on its request for a transfer.

There was nothing in the record for Judge Scholer to have based these conclusions upon. The defendant had not represented that he could not be ready for trial based on the schedule already set by the Court.  Nor did the government's motion contend that it could not be ready for trial within the timeframe set by Judge Scholer.  (Dkt. 42.)  Rather, the government argued that Judge

Scholer should vacate the trial schedule because the parties were seeking a transfer to this Court, such that this Court should set its own schedule.  (*Id.* ¶5.)

The reasons used to justify an "ends of justice" finding are subject to great scrutiny under the STA.  "Th[e] [ends-of-justice] exception to the otherwise precise requirements of the Act was meant to be a rarely used tool for those cases demanding more flexible treatment."  *United States v. Toombs*, 574 F.3d 1262, 1269 (10th Cir. 2009) (quoting *United States v. Doran*, 882 F.2d 1511, 1515 (10th Cir. 1989) (quotation omitted).  Unlike most factual findings made by a judge, the STA provides:

> No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection *unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding* that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. §3161(h)(7)(A) (emphasis added).  This "requirement provides a record so that an appellate court may review the decision. . . .  Without properly explained reasons, the delay caused by a continuance is not an excludable item."  *United States v. Howard*, 129 F.3d 1266 (6th Cir. 1997) (quoting *United States v. Brooks*, 697 F.2d 517, 520 (3d Cir. 1982)).  The continuance must be based on "specific underlying factual circumstances."  *United States v. Martin*, 742 F.2d 512, 514 (9th Cir. 1984).

"[W]hen the Government seeks the exclusion, it must 'support[ ] by the information and evidence presented to the district court' that there is a 'permissible' basis for the exclusion."  *United States v. Burrell*, 634 F.3d 284, 287 (5th Cir. 2011) (quoting *United States v. Gonzales*, 137 F.3d 1431, 1435 (10th Cir. 1998)) (vacating conviction for STA violation).  These requirements are "interpreted strictly."  *United States v. Hernandez-Mejia*, 406 F. App'x 330, 336-37 (10th Cir. 2011) (reversing conviction on STA grounds under these "demanding standards").

6

Even where a defendant was the party seeking a continuance, and merely asserted a conclusory need for more time, appellate courts have found that to create an inadequate record for an "ends of justice" finding. *Toombs*, 574 F.3d at 1269. A district court is required to engage in more probing analysis to test whether more time is actually needed, and the record evidence must support the finding. *See Gonzales*, 137 F.3d at 1435 ("[S]uch a reason must be supported by the information and evidence presented to the district court. Because the information presented at the July 15 hearing does not meet this burden, we are not persuaded the ends of justice were served by granting the continuance."). "A record consisting of only short, conclusory statements lacking in detail is insufficient. . . . Simply identifying an event, and adding the conclusory statement that the event requires more time for counsel to prepare, is not enough." *Toombs*, 574 F.3d at 1271-72;[3] *see United States v. Brown*, 819 F.3d 800, 822 (6th Cir. 2016) (rejecting "ends of justice" finding not supported by record); *United States v. Williams*, 511 F.3d 1044, 1058 (10th Cir. 2007) (finding "ends of justice" conclusion to rest on inadequate record); *United States v. Lloyd*, 125 F.3d 1263, 1269 (9th Cir. 1997) ("district court may not simply credit the vague statements by one party's lawyer," reversing because "the district court conducted no independent inquiry and made no attempt to verify the statements"); *United States v. Crane*, 776 F.2d 600, 605 (6th Cir. 1985) (vacating conviction based on STA violation because record failed to establish defendant needed more time when defense counsel had said more time was not needed); *Richmond*, 735 F.32d at 216 (rejecting "ends of justice" finding based on inadequate record). Respectfully, by basing

---

[3] The government's motion to continue did not even provide as much detail as in *Toombs*. It recounted several events and then summarily ended with the sentence: "Additional time will be needed to complete these tasks." (Dkt. 42 ¶4.) It is not clear whether the government is seeking to move the trial date at all, or merely the schedule for pretrial events. No particular amount of additional time is sought, or explanation was given for why more time is needed or how much would be sufficient.

conclusory "ends of justice" findings on claims that were never actually made or tested, Judge Scholer's "ends of justice" findings lack an adequate basis in the record.

In any event, Judge Scholer's order at best only stopped the speedy trial clock temporarily by vacating the trial schedule until a new trial schedule could be set by this Court.[4]  This Court set a new trial schedule on May 14, 2019 (Dkt. 49), so even if Judge Scholer's "ends of justice" continuance was valid, it would only exclude May 3–14, 2019.  Thus, excluding Judge Scholer's "ends of justice" finding, the STA clock would have run 70 days by May 14, 2019 – crossing into prohibited territory under the STA.  Excluding the time under Judge Scholer's "ends of justice" finding, the STA clock would be at 60 days on May 14, 2019.

### E.      The STA Clock Ran Another 43 Days Between May 14 And June 27, 2019

In setting the Amended Trial Schedule on May 14, 2019, no party asked this Court to make an "ends of justice" finding or otherwise stop the running of the STA, so no "ends of justice" finding was made, and no record to support any "ends of justice" finding was ever created. Obviously, Judge Scholer's "ends of justice" finding (if valid) vacating the schedule until this Court could set a new one does not provide an "ends of justice" justification for whatever other continuances may later be sought or occur.  *See, e.g.*, *United States v. Jordan*, 915 F.3d 563, 565-66 (9th Cir. 1990) ("The Speedy Trial Act thus requires that an 'ends of justice' continuance be specifically limited in time and that there be findings supported by the record to justify each 'ends

---

[4] Vacating a trial date is the equivalent of a continuance and requires an ends-of-justice finding. *See, e.g.*, *United States v. Spring*, 80 F.3d 1450, 1457 (10th Cir. 1996) ("The court did not specifically state that it was granting a continuance, yet that was indisputably the effect of its order vacating the scheduled trial date . . . ."); *Crawford*, 982 F.2d at 201 (holding STA clock resumed where court vacated trial date due to a conflict with the trial date but did not reset the trial date until three months later); *Graham*, 2008 WL 2098044, at *5 (holding order vacating the trial date "left the case in limbo for 17 months" and dismissing for a STA violation where the court did not balance the ends-of-justice factors).

of justice' continuance.  Otherwise one early 'ends of justice' continuance could exempt the entire case from the requirements of the Speedy Trial Act altogether, and open the door for wholly unnecessary delays in contravention of the Act's purpose.").   As of June 27, 2019, 113 non-excludable days had passed (and crediting Judge Scholer's "ends of justice" continuance, 103 days had passed).

> ### F.     Clock Stops For Seven Days On June 27-July 3, 2019

The clock would stop again when the parties filed a joint motion for a modified trial schedule on June 27, 2019 (Dkt. 54), which was decided July 3, 2019 when the Court adopted a new schedule (Dkt. 55).

> ### G.     The Court's July 3, 2019 Order Did Not Stop The Clock

The Court's July 3, 2019 Order setting the schedule made an ends of justice finding to justify the continuance under the STA (Dkt. 55), but – respectfully – the Court did not have a record before it that would justify that finding.  The parties' motion seeking a continuance simply proposed new dates for trial-related events to occur, without creating any record for the reasons why any delay would be needed.  As explained above in Subsection D, a more thorough record is needed to justify stopping the STA clock.  Thus, although the STA clock had already expired by the time this Court issued its July 3, 2019 Order, another 84 days of unexcused delay has been added to the clock since then, for a total of 197 non-excludable days.

## II.     DISMISSAL WITH PREJUDICE IS WARRANTED

The violation of a defendant's STA rights triggers dismissal as a matter of law.  *See, e.g.*, *Zedner*, 547 U.S. at 507-08 (dismissal requirement is "unequivocal"); *Burrell*, 634 F.3d at 286 ("If a trial does not commence by the date required by the Speedy Trial Act, the Act demands that the information or indictment . . . be dismissed on motion of the defendant.'") (quoting 18 U.S.C.

§3162(a)(2)).  In deciding whether to dismiss with or without prejudice, a court must address: "(1) the seriousness of the offense; (2) the facts and circumstances which led to the dismissal; and (3) the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice."  *United States v. Blank*, 701 F.3d 1084, 1088 (5th Cir. 2012); *see* 18 U.S.C. §3162(a)(2).  Within this third prong, the Court should consider the most significant factor of whether a defendant has suffered any prejudice due to the delay.  *Blank*, 701 F.3d at 1090.

### A.      Seriousness Of The Offense

To decide if an STA dismissal should be with prejudice or not, courts examine the seriousness of the offense.  *Id*.  "The Section 3161(a)(1) seriousness factor ordinarily focuses solely on the charge rather than, e.g., the strength of the government's case or the likely outcome of the proceedings."  *United States v. Mancuso*, 302 F. Supp. 2d 23, 32 (E.D.N.Y. 2004).  While there is no clear, universally accepted standard, courts seemingly look to two factors for seriousness under the STA: (1) whether the offense involves violence; and (2) the maximum length of the sentence the statute allows.  *See United States v. Fernandez*, 2018 WL 2452951, at *1 (D. Me. May 31, 2018) (stating that five-year potential sentences are on the "lower end of federal felonies"); *see also United States v. Caparella*, 716 F.2d 976, 980 (2d Cir. 1983) (holding defendant's conduct not considered a 'serious' crime absent exacerbating circumstances such as violence, where crime was a felony with five-year maximum sentence); *Graham*, 2008 WL 2098044, at *6 (dismissing indictment under STA with prejudice where defendants charged with Class D and E felonies, which are the "least serious felonies in the federal hierarchy.").  For nonviolent crimes, in particular, courts most often consider the maximum sentence length in weighing whether to label the offense "serious."  *United States v. Melguizo*, 824 F.2d 370, 371

(5th Cir. 1987) ("Using the punishment prescribed by statute as a measure of the severity of the crime is a proper method of analysis under the Act.").

Mr. Hamilton faces two charges under Section 666, a non-violent charge concerning allegations of bribery, each of which carries a statutory maximum sentence of up to 10 years.  18 U.S.C. §666(a).  Those offenses are on the bottom end of being Class C felonies, 18 U.S.C. §3559(a)(3) (10-25 years), and even if convicted, Mr. Hamilton would face a Guideline sentence well short of the statutory maximum.  Dismissal with prejudice is easily justified.  *See, e.g.*, *United States v. Castle*, 906 F.2d 134, 138 (5th Cir. 1990) (affirming dismissal without prejudice in a bank fraud case where the maximum sentence was 20 years); *United States v. Hernandez-Amparan*, 600 F. Supp. 2d 839, 844 (W.D. Tex. 2009) (granting STA dismissal with prejudice, noting while defendant faced potential 20-year sentence, "violence was not an element of any of Defendant's past or present charges").

Courts have sometimes examined factors other than sentence length in weighing whether an offense is "serious."  *See United States v. Clark*, 577 F.3d 273 (5th Cir. 2009) (noting dollar value involved in tax fraud case when affirming the district court's dismissal without prejudice); *see also Caparella*, 716 F.2d at 980 (holding dismissal without prejudice was *improper* where defendant postal worker was charged with opening mail without authority, without particular reference to sentence length); *United States v. Joseph*, No. 98 CR 582, at *6 (N.D. Ill. Oct. 2, 2003) (finding bank fraud was not "serious" since "it does not involve violence or physical injury to others").  Here, Mr. Hamilton is charged with bribing one Dallas City Council Member who was begging for help with his and his mother's medical care with $7,000 to support a ballot initiative that would have provided paid medical leave.  Even if characterized as a crime (and the facts do

not show that it was anything more than charity), Mr. Hamilton's selfless effort to expand access to medical care for the less fortunate members of the Dallas community is hardly a serious crime.

Mr. Hamilton also is accused of bribing another Dallas City Council Member with $40,000 (he actually made charitable donations to an organization helping children) in exchange for her support of funding from the State of Texas for one of his low-income housing projects, funding that was never issued. But City Councils across Texas compete to have the limited funds of the State of Texas invested in their communities, so the support of the Dallas City Council for low-income housing support in blighted Dallas communities is something everyone would expect. This too would hardly be a serious offense.

### B.   Facts And Circumstances Leading To The Dismissal

"Normally, this factor concerns the government's reason for violating the Speedy Trial Act, and accordingly, the burden is on the government to explain the violation." *Blank*, 701 F.3d at 1089. If the government provides a reason, a defendant is then "entitled to 'subpoena relevant documents [and] call Government officials' in an effort to show this reason was pretextual." *United States v. Martinez-Espinoza*, 299 F.3d 414, 419 (5th Cir. 2002) (internal quotations omitted). If "the Government [] 'offer[s] no explanation whatsoever' for its delay," a court must "assume[] that the delay was unjustified and that the second factor weigh[s] in favor of dismissal with prejudice." *United States v. Mancia-Perez*, 331 F.3d 464, 469 (5th Cir. 2003) (quoting *United States v. May*, 819 F.2d 531, 533 (5th Cir. 1987)); *see also Blank*, 701 F.3d at 1089 ("Delay attributable to the trial court, just as delay attributable to the government, weighs in favor of dismissal with prejudice."). Even where delay results from "a 'neutral reason,' it weighs in favor of dismissal with prejudice." *Id*. When the delay is "caused by the government's failure to monitor the passing of non-excludable days under the STA," dismissal with prejudice is warranted. *United States v. Irizarry-Colon*, 268 F. Supp. 3d 324, 334 (D.P.R. 2017).

12

Although the prosecution can speak for itself as to why it did not ask Judge Scholer or this Court to make sufficient findings, the government has explained: "When the indictment was filed and until early April, counsel for the government was completing another trial."  (Dkt. 42 ⁋ 3.) The fact that the government may have been busy with other cases, however, does not provide a justification for filing this case and then letting it linger.  *See* 18 U.S.C. §3161(h)(7)(C).

### C.  Impact Of Reprosecution On Administration Of Justice

The third factor is the impact of a reprosecution on both the administration of the STA and the administration of justice.  *See, e.g.*, *Blank*, 701 F.3d at 1090.  This last factor is a two-step analysis, with each step consisting of three factors.  Step one asks a court to take into account three considerations: (1) "the defendant's right to a timely trial;" (2) "the potential deterrent effect of a prejudicial dismissal on repeated violations of the [STA];" and (3) "the public's interest in bringing the defendant to trial."  *Id*.  In step two, the Fifth Circuit has also examined "the presence or absence of prejudice to the defendant caused by the violation."  *Blank*, 701 F.3d at 1090.  In doing so, the Fifth Circuit considers three interests set forth by the Supreme Court: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.  Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Blank*, 701 F.3d at 1090 (citing *Barker v. Wingo*, 407 U.S. 514 (1972)).

First, "[w]eighing in favor of dismissal with prejudice, [courts] note that the Act was designed to protect a defendant's right to a timely trial, and dismissal with prejudice is more likely to cause the government and the courts diligently to comply with the Act's requirements."  *United States v. Johnson*, 29 F.3d 940, 946 (5th Cir. 1994); *see Blank*, 701 F.3d at 1090.  That factor plainly favors dismissal with prejudice here.

13

Second, courts consider if "[a]llowing reprosecution, especially in cases [] where the delay is severe, may send the message to the government that violations — even severe violations — of the Act will not result in a correspondingly severe penalty." *Johnson*, 29 F.3d at 946. In this analysis, courts often look to see if the government or the court have a history of violating the STA. *See United States v. Blevins*, 755 F.3d 312, 318 (5th Cir. 2014) (evaluating court's record); *Martinez-Espinoza*, 299 F.3d at 419 (evaluating government's record). In *Blank*, the Fifth Circuit noted that "criminal trials are routinely scheduled beyond the time limits of the Speedy Trial Act. Accordingly, our requiring a prejudicial dismissal in this case would send a stronger message to the district court that it must comply with the requirements of the Speedy Trial Act." 701 F.3d at 1089; *see also Johnson*, 29 F.3d at 946 ("[D]ismissal with prejudice is more likely to cause the government and the courts diligently to comply with the Act's requirements."). Seven years after *Blank*, criminal trials in this District continue to be scheduled long after the STA clock has run. *See* United States Courts, Judicial Business for 2018, Table D-6 (2018) (N.D. Texas, 10.8 months from commencement to termination of criminal jury trials), https://www.uscourts.gov/statistics-reports/judicial-business-2018-tables.[5] Accordingly, this factor favors dismissal with prejudice here. As the Fifth Circuit noted, "[p]rejudicial dismissal in a case might encourage the government to go beyond that which it is *required* to do and take appropriate actions to encourage a district

---

[5] One reason for the delay in this District is the prosecution's delay in producing discovery. The government does not announce an indictment until its investigation has concluded and it is ready for trial, so by that time it has all the relevant information in its possession. If the prosecution would turn that evidence over on day 1, at the same time a defendant is handed the indictment, cases could proceed to trial much faster. For some reason though, the prosecution too often feigns surprise that a defendant would want to see the evidence relevant to his case, and a host of obstacles seem to emerge in locating and producing what is required. Although Mr. Hamilton has not filed for a continuance in this case, as defendants often are forced to do by the government's foot-dragging, it is worth noting that discovery is still not complete in this case. Defendants should not have to choose between a speedy trial and a fair trial, but that is the choice prosecutors too often manufacture for defendants.

14

court to schedule criminal trials within the Speedy Trial Act's limits and to rule timely on outstanding motions implicating speedy trial concerns." *Blank*, 701 F.3d at 1089 n.6 (noting courts look to prosecutors to assist in STA compliance).

Third, while courts will almost always "acknowledge that the public has a great interest in bringing [] defendants" to trial, that focus is more compelling "especially [for] recidivists, [and those] who have been accused of committing serious crimes." *Johnson*, 29 F.3d at 946; *see Martinez-Espinoza*, 299 F.3d at 419.   But Mr. Hamilton is no recidivist; this is his first alleged offense.   He is a person who has been widely praised for his extensive charitable activities and work to benefit underprivileged parts of the Dallas community.[6]   He has no history of violence, and as a man in his mid-60s, still debilitated by a long successful fight with cancer, he is no threat to anyone.

Additionally, Mr. Hamilton has been punished through the process.   The U.S. Attorney issued a press statement and held a press conference the day Mr. Hamilton's indictment was unsealed, which led to a flurry of press attention designed to humiliate him and prejudice his case.[7] In addition to a slew of local press, here in Mr. Hamilton's community of Dallas, news of the

---

[6] *See, e.g.*, James Ragland, *Dallas developer donating thousands to help schools in poor neighborhoods*, DallasNews (Sept. 30, 2016), https://www.dallasnews.com/opinion/commentary/2016/09/30/dallas-real-estate-developer-donating-cash-technology-programs-help-schools-poor-neighborhoods.

[7] *See, e.g.*, Department of Justice Press Release (Mar. 1, 2019), *Dallas City Council Member Carolyn Davis Pleads Guilty to Accepting Brib*es, https://www.justice.gov/usao-ndtx/pr/dallas-city-council-member-carolyn-davis-pleads-guilty-accepting-bribes; NBC News (Mar. 1, 2019), *U.S. Attorney Discusses Charge Brought Against Carolyn Davis*, https://www.nbcdfw.com/news/local/Prosecutors-Discuss-Charges-Brought-Against-Former-Dallas-City-Councilwoman-Carolyn-Davis_Dallas-Fort-Worth-506556102.html (video of press conference).

15

charges has received national attention.[8]  Not only has this been humiliating for him and his family, it has tainted a number of politicians he has supported over the years by association (many of whom have publicly returned his campaign contributions) and it has hurt the causes that he believes in.[9]  And every passing event remotely related to his case seems to lead to more prejudicial press attention.[10]  This is a degree of shame and humiliation not experienced by the typical defendant, and that matters.

For white collar offenders, it is not prison that deters crime.[11]  Rather than longer sentences, it appears to be "the criminal process itself – charge, trial, conviction, and sentencing – [that] has the greatest impact on the offender, and the period of imprisonment adds little by

---

[8] *See, e.g.*, Jake Bleiberg, *Ex-Dallas City Council Member Pleads Guilty to Taking Bribes*, U.S. News & World Rep. (Mar. 1, 2019), https://www.usnews.com/news/best-states/texas/articles/2019-03-01/former-dallas-city-councilor-pleads-guilty-to-taking-bribes.

[9] *See, e.g.*, Tom Benning, *Which Democrats are giving back campaign cash from convicted developer Ruel Hamilton?*, DallasNews (Apr. 26, 2019), https://www.dallasnews.com/news/texas-politics/2019/04/26/democrats-giving-back-campaign-cash-indicted-dallas-developer-ruel-hamilton.

[10] *See, e.g.*, Robert Wilonsky, *'Scary part is the unknown': Former Dallas Mayor Pro Tem Dwaine Caraway begins federal prison sentence*, DallasNews (May 7, 2019), https://www.dallasnews.com/news/dallas-city-hall/2019/05/07/scary-part-unknown-former-dallas-mayor-pro-tem-dwaine-caraway-begins-federal-prison-sentence; Robert Wilonsky, *Former Dallas Mayor Pro Tem Dwaine Caraway sentenced to 56 months in federal prison*, DallasNews (Apr. 5, 2019), https://www.dallasnews.com/news/dallas-city-hall/2019/04/05/former-dallas-mayor-pro-tem-dwaine-caraway-awaiting-federal-sentencing-corruption; Robert Wilonsky, *Judge denies feds' request to keep Dwaine Caraway out of prison until he testifies against developer*, DallasNews (Apr. 4, 2019), https://www.dallasnews.com/news/dallas-city-council/2019/04/04/judge-denies-feds-request-keep-dwaine-caraway-prison-testifies-developer.

[11] Studies of white collar offenders from before the enactment of the Sentencing Guidelines show no difference in recidivism patterns between offenders who received jail time and those sentenced to probation.  *See* David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995).  These studies show "no significant difference in recidivism between white-collar offenders sentenced to prison and similar offenders who did not receive a prison sentence" and are consistent with the findings of earlier criminological studies dating back to the 1970s.  *See* Elizabeth Szockyj, *Imprisoning White Collar Criminals?*, 23 S. Ill. Univ. L. J. 485, 495 (1999).

way of deterrence." *Id.  See, e.g.*, John Braithwaite, *Crime, Shame and Reintegration* at 69 (1989) ("It would seem that sanctions imposed by relatives, friends or a personally relevant collectivity have more effect on criminal behavior than sanctions imposed by a remote legal authority."); Sally S. Simpson, *Corporate Crime Deterrence and Corporate Control Policies: Views from the Inside*, in Kip Schlegel & David Weisburd (eds.), *White-Collar Crime Reconsidered* at 298 (1992).  While Mr. Hamilton has not been tried, convicted, or sentenced – and is unlikely to be convicted or sentenced if he were to go to trial – he has faced the communal sanctions associated with the bad publicity (e.g., politicians return his contributions).  Even if Mr. Hamilton were acquitted, experience show that gossip will persist and the title of one-time criminal defendant will be a moniker associated with him for the rest of his life.  These sorts of collateral consequences can be considered in deciding whether to dismiss with prejudice or how important it is to press forward in search of being more punitive.  *See, e.g.*, *United States v. Velasquez*, 890 F.2d 717, 720 (5th Cir. 1989) (finding STA violation and ordering dismissal with prejudice because defendant would face concurrent sentence if tried and convicted, so no strong reason to pursue additional conviction ); *Hernandez-Amparan*, 600 F. Supp. 2d at 844 (dismissing with prejudice where the defendant was in deportation proceedings for a prior offense); *United States v. Quinones*, 2013 WL 4482909, at *16 (S. D. Tex. Aug. 19, 2013) (dismissing with prejudice after inquiring "whether the delays are likely to be repeated and whether prosecutorial misconduct and delay would be deterred by barring reprosecuting") (internal quotations omitted).

Under the second step, prejudice is inevitable and "[t]he longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty[.]"  *United States v. Taylor*, 487 U.S. 326, 340 (1988).  As the Supreme Court explained,

17

> [I]nordinate delay between public charge and trial, . . . wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

*Id*. at 340 (internal quotations omitted).  That is exactly what we have here.  *See, e.g.*, *United States v. Bundu*, 479 F. Supp. 2d 195, 200 (D. Mass. 2007) (dismissing with prejudice absent "bad faith on the part of the AUSA" because of AUSA's inattention in allowing more than 200 days to pass).

Mr. Hamilton has not been incarcerated, but he remains subject to liberty-restricting conditions of release until his trial is concluded.  The anxiety of a trial hangs over his head like a sword of Damocles with each passing day.  His business and personal relationships continue to suffer, not only out of concerns with associating with an accused felon, but out of concern that the possibility of incarceration may limit his ability to honor any future commitments.  Most recently, as noted above, the media animus against him has pressured politicians to return his campaign contributions, which has been both humiliating and has hindered his ability to engage in First Amendment activities promoting candidates and causes that he believes in.  Additionally, Mr. Hamilton is concerned – justifiably – that the persistent flow of media attention about his case (some stoked by prosecutorial antics, including a press conference conduct with the sole purpose of publicizing its allegations against him) will pollute the jury pool.

### D.     Mr. Hamilton Has Been Substantially Prejudiced

Mr. Hamilton has suffered actual prejudice due to the death of Carolyn Davis on July 16, 2019.  Had trial occurred anywhere within the 70 days that the STA began to run on March 1, 2019, the trial certainly would have been over by the time Ms. Davis died four and a half months later.  As the Supreme Court explained, "if witnesses die or disappear during a delay, the prejudice is obvious."  *Barker*, 407 U.S. at 352.  That is certainly the case here.

18

The government's case against Mr. Hamilton concerning his alleged bribery of Davis is entirely circumstantial.  It is an undeniable feature of our political system that political candidates win supporters by promising to take official acts if elected that will benefit their supporters, and political supporters, in turn, support candidates who they believe will take official actions that will benefit them.  As it does in every case in which the government oversteps in bringing public corruption cases, the government will point out to the jury that a supporter did something to help a candidate and then point out that a candidate did something to help her supporter, and the government will ask the jury to infer that there was some kind of improper *quid pro quo* connecting the two.

In this case, Carolyn Davis's testimony would have been critical to exposing the weakness in the government's case – that there was no *quid pro quo*.  The government's theory of the case is that Mr. Hamilton bribed Davis by writing checks to a 503(c)(3) organization called Hip Hop Government, knowing that Davis would take that money for herself, and by offering her a job once she left the City Council.  But Davis would have testified that Mr. Hamilton had not bribed her or done anything wrong.

Davis had pled guilty to being bribed by Mr. Hamilton (and the government has now moved to dismiss those charges, Dkt. 71), but before she died Davis had told at least *four* people that she regretted that decision and was working to change her plea.  (Ragsdale Decl. (Ex. A), Turner Decl. (Ex. B), & Wash Decl. (Ex. C).)  Davis told former Dallas City Councilwoman and her friend of 30 years, Diane Ragsdale, that she had only pled guilty because she could not afford to defend herself, and the prosecution had threatened her with a lengthy prison term, which would have deprived her of her ability to care for her disabled daughter.  (Ex. A ¶7.)  Davis told the same thing

19

to Regina Turner, who had helped arrange the "Freedom Rides" for Dallas schoolchildren to participate in that were largely funded by Mr. Hamilton.  (Ex. B ¶19.)

Turner further explains that Davis told her that Mr. Hamilton had not done anything wrong, but was a good man who "had no idea that funds were being diverted" from the charitable project, and that she felt terrible that her guilty plea was being used to tarnish his reputation.  (Ex. B ¶18.)  Ragsdale confirms that Davis assured her of Mr. Hamilton's innocence as well.  (Ex. A. ¶7.)  Davis told both of her friends that she would testify as to Mr. Hamilton's innocence as well.  (Ex. A ¶18, Ex. B. ¶5.)

Similarly, Albert Wash explains that Davis spent a lot of time visiting him and his wife after Davis was charged and he too explained that Davis told him and his wife that she would be changing her plea to not guilty.  (Ex. C. ¶4.)  He adds: "Carolyn told my wife and I that if she was called to testify that she and Mr. Hamilton had not done anything wrong.  She would testify that Mr. Hamilton had not paid her bribes, he had just help fund the freedom rides for those kids." (*Id.* ¶5.)

The loss of this exculpatory testimony, from the very person the government claims was the one who solicited the bribes, is incredibly prejudicial.  A dismissal with prejudice is plainly warranted.  *See, e.g.*, *United States v. Messer*, 197 F.3d 330, 339-40 (9th Cir. 1999) (reversing and ordering dismissal with prejudice where witness died during delay); *United States v. Brown*, 985 F. Supp. 722, 727 (E.D. Mich. 1997) (dismissing indictment with prejudice due to a witness' death).

## CONCLUSION

The STA has been violated and the Indictment must be dismissed.  That dismissal should be with prejudice.  Surely no one imagines Mr. Hamilton to be a violent criminal or likely to

20

commit any sort of criminal infraction in the future.  With or without a conviction, the government

has made its point.  There is no compelling reason why reprosecution is necessary.  To the contrary,

for the STA to be taken seriously by the prosecution, and for the right to a speedy trial to remain a

right that matters, the Court should order the dismissal with prejudice.

Dated:  September 26, 2019

Respectfully submitted,

/s/ Abbe David Lowell
Abbe David Lowell, Bar No. 358651DC
Christopher D. Man, Bar No. 453553DC
Kaitlin A. Pierce, Bar No. 242020DC
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Dion J. Robbins, Bar No. 488888GA
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
DRobbins@winston.com
214-453-6100 (ph)
214-453-6400 (fax)

*Counsel for Defendant Ruel M. Hamilton*

**CERTIFICATE OF SERVICE**

I certify that on September 26, 2019, a copy of the foregoing was filed with the Court's

electronic case filing system, thereby effecting service on counsel for all parties.

/S/Abbe David Lowell
Abbe David Lowell

21