IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.                                      No. 3:19-CR-083-M

RUEL M. HAMILTON

**GOVERNMENT'S RESPONSE IN OPPOSITION TO HAMILTON'S
MOTION TO DISMISS FOR VIOLATION OF THE SPEEDY TRIAL ACT
<u>AND BRIEF IN SUPPORT</u>**

Respectfully submitted,

ERIN NEALY COX
United States Attorney

<u>/s/ Emily Falconer</u>
Emily B. Falconer
Assistant United States Attorney
Texas Bar No. 24069694

Marcus Busch
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214.659.8681
Facsimile: 214.767.4100

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... iv

I.  Factual background ..................................................................... 3

    A.  Defense counsel negotiated for a fall trial setting beginning several days after Hamilton's initial appearance in court .............................. 3

    B.  Eighteen days after the parties move for a second continuance—seeking to delay the trial setting by more than six months—Hamilton's codefendant Carolyn Davis is killed by a drunk driver .. 6

    C.  Procedural Timeline of the Case ....................................................... 7

II.  Only 36 countable days have elapsed on Hamilton's speedy-trial clock ...... 9

    A.  Two lengthy ends-of-justice continuances (Periods 3 and 4, 249 total days) are excludable from computation under 18 U.S.C. § 3161(h)(7)(A) ............................................................................ 11

        1.  The first ends-of-justice continuance of 62 days (Period 3) is excludable under § 3161(h)(7)(A)..................................... 12

        2.  The second continuance of 187 days (Period 4) is excludable under § 3161(h)(7)(A)........................................................... 18

    B.  Hamilton's motion for a status conference resulted in one day of excludable time (Period 1) ............................................................. 19

    C.  Proceedings relating to the suspension of codefendant Davis's attorney resulted in 27 days of excludable time (Period 2)............. 20

III.  The alleged speedy-trial violation here does not warrant the draconian remedy of dismissal with prejudice............................................................ 24

    A.  Hamilton's offenses were serious .................................................... 25

    B.  The facts surrounding the delay strongly favor dismissal without prejudice ...................................................................................... 26

    C.  The balance of the administration of the Act and the administration of justice weigh against dismissal with prejudice ............................ 28

CONCLUSION ............................................................................................................... 33

CERTIFICATE OF SERVICE ............................................................................................ 34

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                       **Page(s)**

*Blackledge v. Allison*, 431 U.S. 63 (1977) ......................................................... 30

*United States v. Bieganowski*, 313 F.3d 264 (5th Cir. 2002) .....................................*passim*

*United States v. Blevins*, 142 F.3d 223 (5th Cir. 1998)................................................24, 29

*United States v. Carr*, 740 F.2d 339 (5th Cir. 1984)..............................................30, 31, 32

*United States v. Clark*, 577 F.3d 273 (5th Cir. 2009)..............................................25, 26, 28

*United States v. Dignam*, 716 F.3d 915 (5th Cir. 2013)..............................................*passim*

*United States v. Edelkind*, 525 F.3d 388 (5th Cir.2008) ..................................................... 15

*United States v. Franklin*, 148 F.3d 451 (5th Cir. 1998)......................................20, 21, 22

*United States v. Kington*, 875 F.2d 1091 (5th Cir. 1989)..................................................27

*United States v. Kramer*, 827 F.2d 1174 (8th Cir. 1987) ..................................................29

*United States v. Mancia-Perez*, 331 F.3d 464 (5th Cir. 2003) ..........................................24

*United States v. McNealy*, 625 F.3d 858 (5th Cir. 2010) ..........................................*passim*

*United States v. Peoples*, 811 F.2d 849 (5th Cir. 1987) ..............................................27, 29

*United States v. Taylor*, 487 U.S. 326 (1988) ..................................................................24

*United States v. Westbrook*, 119 F.3d 1176 (5th Cir. 1997)......................................*passim*

*United States v. Whitfield*, 590 F.3d 325 (5th Cir. 2009) ..........................................15, 27

*Zedner v. United States*, 547 U.S. 489 (2006)..............................................10, 11, 12, 29

**Federal Statutes**                                                    **Page(s)**

18 U.S.C. § 3161(c)(1) ................................................................................ 9

18 U.S.C. § 3161(h)(1)(D) .................................................................... 1, 19

18 U.S.C. § 3161(h)(1)(H) ................................................................... 21, 22

18 U.S.C. § 3161(h)(6) ........................................................................ 20, 22

18 U.S.C. § 3161(h)(7) ............................................................................. 20

18 U.S.C. § 3161(h)(7)(A) ................................................................... *passim*

18 U.S.C. § 3161(h)(7)(B) ........................................................................ 11

18 U.S.C. § 3162(a)(2) ............................................................................. 24

The Court should deny defendant Hamilton's motion to dismiss the indictment under the Speedy Trial Act [77] because only 36 days have elapsed on the "speedy-trial clock."  Of the 311 days between Hamilton's initial appearance in court and the current trial setting, 276 are excludable under the Act for various reasons:

| Excludable Period | Date range | Total number of days | Reason for exclusion | Discussed *infra* at |
|---|---|---|---|---|
| Period 1 | March 4, 2019- March 4, 2019 | 1 | Hamilton filed motion for a status conference, *see* 18 U.S.C. § 3161(h)(1)(D) | Subsection II(B) |
| Period 2 | March 18, 2019- April 12, 2019 | 26 | Proceedings related to the suspension of codefendant Davis's attorney and its impact on Davis's guilty plea, §§ 3161(h)(1)(H), 3161(h)(6). | Subsection II(C) |
| Period 3 | May 2, 2019- July 2, 2019 | 62 | Parties' joint motion to transfer the case to this Court, agreed motion to continue the trial setting, and the first "ends of justice continuance, §§ 3161(h)(1)(D)–(E), 3161(h)(7)(A)–(B) | Subsection II(A)(1) |
| Period 4 | July 3, 2019- January 5, 2019 | 187 | Delay stemming from parties' second joint motion to continue the trial setting and the second "ends of justice continuance, § 3161(h)(7)(A)–(B) | Subsection II(A)(2) |
| Total excludable time | | 276 | | |

The lion's share of this time (249 days) is from Periods 3 and 4, two ends-of-justice continuances properly granted by the Court—with the findings required by 18 U.S.C. § 3161(h)(7)(A)—at the request of both parties.  The legal analysis is simple: those continuances were excludable.  And it should be simple, because a defendant cannot use his speedy-trial rights as a "two-edged sword" by asking for more time to prepare for trial

and then later seeking dismissal of the indictment because his trial did not proceed quickly enough.  *See, e.g.*, *United States v. Westbrook*, 119 F.3d 1176, 1188 (5th Cir. 1997).

Throughout this proceeding, defense counsel has invoked the Act as a shield, negotiating with the government for two lengthy agreed continuance motions intended to accommodate trial schedules, counsel for both parties' vacation plans, and defense counsel's observance of religious holidays in the fall.  After helping to convince the Court that those continuances served the ends of justice and his ability to prepare his defense, counsel now invokes the Act as a sword, seeking dismissal of the indictment due to delays he actively participated in creating.  The Court should reject his attempt to use the Act in this way.

Long-established Fifth Circuit precedent leaves little question that all of the time in Periods One through Four is excludable from Hamilton's speedy-trial computation. But even if the Court finds a violation of the Act, dismissal with prejudice is far too harsh a remedy on these facts.  Hamilton committed serious offenses—bribing public officials to advance his own financial interests—that undermine the public trust in government. Further, dismissal with prejudice would harm the administration of justice because defense counsel was largely responsible for the delayed trial setting; the public has a strong interest in seeing Hamilton stand trial; and dismissal with prejudice would have little value in deterring dilatory prosecutions in the future.  Hamilton's best argument— that he is prejudiced by the unavailability of codefendant Carolyn Davis due to her untimely death in July—is unpersuasive.  He has not convincingly shown that Davis

intended to withdraw her guilty plea and testify on his behalf, given that she repeatedly swore in open court that she was guilty of accepting bribes from Hamilton and reiterated her guilt to a probation officer in advance of sentencing.[1]  And in any event, defense counsel filed a motion for a six-month continuance just 18 days before Davis's untimely death, which indicates that he was not prepared for trial before Davis died.  If he had been forced to stand trial sooner, he would likely be complaining now that the Court abused its discretion in denying him adequate time to prepare.

## I.      Factual background

### A.      Defense counsel negotiated for a fall trial setting beginning several days after Hamilton's initial appearance in court.

It is unclear why defense counsel would suggest in his motion that he only recently discovered an alleged violation of the Speedy Trial Act "[i]n reviewing the record of this case for motions."  (*See* Mot. to Dism. at 1.)  The vast majority of delay between Hamilton's initial appearance and the current trial setting—276 of 311 total days—stems from two lengthy continuances that the Court granted to serve the ends of justice.  Those continuances were *specifically requested by both parties*, and defense counsel Abbe Lowell actively sought a fall trial setting from the day after he filedwained his appearance in this case.  Hamilton also claims, in carefully selected language, that "defense counsel . . . never agreed to *any excludable time*" under the Act.  (*Id.* (emphasis added).)  This statement is "true" only in the most technical and formalistic sense of the word.

---

[1] *See* Davis Presentence Report at 11 (Sealed) [51-1].

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 3**

In actuality, in March 5, 2019—four days after Hamilton's initial appearance and just one day after Lowell filed his initial appearance—Lowell emailed AUSA Marcus Busch to request a fall trial setting. Lowell wrote:

> When you can, give me a call to discuss the schedule of the case, especially in light of the Court's initial order. You have been working this investigation (and still might be) for years, I for only 2 weeks. I would like more time (fall trial) and hope you will agree.

(Exh. 4.) This led to a series of conversations that spanned a number of weeks, in which Lowell and Busch discussed a variety of scheduling concerns: Lowell's planned European vacation; a different vacation that Busch had scheduled; a case that Busch was trying in March and April; protracted negotiations over the parties' proposed protective order; and Lowell's unavailability during the Jewish high holy days in September and October.

Lowell and Busch's early conversations were memorialized in friendly and collegial emails between both Lowell and Busch and Lowell and AUSA Andrew Wirmani. (*See* Exhs. 1–4.) These emails demonstrate that Lowell not only agreed to the continuances sought by the parties, he was actively involved with negotiating them. For example, in April 2017, Lowell suggested a trial setting of late fall 2019 to accommodate various attorney schedules—including Lowell and Busch's planned vacations and Lowell's observance of the Jewish high holy days in September and October—as well as the discovery timetable in this case:

> But we should discuss the schedule and a motion? The key is to get you your trip in and then ALL the religious holidays I observe are on week days in September to late October and each week has days off. So we should ask for last week of October or November 3. That la[t]er date makes sense anyway

given our late start on motions and discovery and summer (long trip in August).  We could set out a complete schedule in a motion we file together.

(Exh. 1.)  Lowell even helpfully offered to provide Busch with a model scheduling order to propose to the Court.  (*Id.* ("I've done those and can send you a model.").

These scheduling negotiations resulted in two agreed motions to continue the trial setting [42, 54].  The first of these motions was filed on May 2, 2019—four days before the initial trial setting of May 6, 2019—and was granted by Judge Scholer the next day in an electronic order [44].  Within an hour of entering that order, Judge Scholer also granted the parties' separate motion to transfer the case to this Court [45] and entered written findings that the ends of justice served by the continuance outweighed Hamilton's and the public's interest in a speedy trial [47].[2]  Judge Scholer left it to this Court to set a new trial date, and the Court set a date of July 22, 2019.  (*See* Amended Scheduling Order [49].)  This date was well earlier than the November date the parties had requested, and this Court admonished the parties, in boldfaced text, that

> **If the defendant files for a continuance of the trial date, he and his counsel must sign and file with the Court a document entitled "Acknowledgment" which must state that the defendant understands he will not be going to trial within the speedy trial deadline.  A sample acknowledgment can be provided to the parties by the Court Coordinator upon request.**

(*Id.* at 2 (emphasis in original).)

After being admonished of the speedy-trial implications of a later setting, Lowell filed a second motion for a later trial date, wherein he requested a trial setting of January

---

[2] The timing of Judge Scholer's three May 3 orders is reflected in several emailed ECF notifications that are attached to this brief as exhibits.  (*See* Exhs. 5-7.)

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 5**

13, 2020 [54].  On July 3, 2019, this Court granted that second motion in a written order

[55], where it also made ends-of-justice findings similar to the ones entered by Judge

Scholer for the first continuance.  That order set the current trial date of January 6, 2020.

A fuller discussion of the circumstances surrounding each continuance appears in subpart

II below.

> **B.**    **Eighteen days after the parties move for a second continuance—
> seeking to delay the trial setting by more than six months—Hamilton's
> codefendant Carolyn Davis is killed by a drunk driver.**

On July 15, 2019, just 18 days after Lowell filed the parties' joint motion for a

January trial date, tragedy struck.  Hamilton's codefendant Carolyn Davis— the former

Dallas City Council member to whom Hamilton paid over $40,000 in bribes—was killed

by a drunk driver.[3]  The driver, who had four prior DWI arrests, was charged with

intoxication manslaughter for Davis's death.[4]

Davis's untimely death is relevant to this motion because she had already pled

guilty to accepting bribes from Hamilton and was expected to testify against him at trial.

Indeed, Davis signed a six-page factual resume [10] detailing her *quid pro quo*

arrangement with Hamilton, in which Hamilton funneled bribes to her through a

nonprofit organization, paid her in cash, and promised her future employment, in

exchange for Davis helping Hamilton secure the Council's approval for tax credits and

---

[3] Police ID Suspect in Crash that Killed Dallas City Council Member Caolyn Davis, Dallas Morning
News, *available at* https://www.dallasnews.com/news/politics/2019/07/16/police-id-suspect-in-crash-
that-killed-former-dallas-city-council-member-carolyn-davis-and-critically-injured-her-daughter.

[4] *Id.*

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 6**

$2.5 million in funding for one of housing developments.  (*Id.* (Hamilton is "Person A" in Davis's factual resume).)

Now Hamilton claims that before Davis died—entirely unbeknownst to the government—she had been planning to attempt to withdraw the guilty plea she entered months before.  (Mot. to Dism. at 19.)  Davis had reiterated her guilt in open court on two separate occasions, but after she died, defense counsel managed to obtain declarations from three of her associates indicating that she regretted pleading guilty and had planned to testify that Hamilton did not bribe her.  (*See* Exhs. 1–3 to Mot. to Dism.)  These declarations were news to the government.  Before Davis died, neither she, nor her attorney, nor Hamilton's counsel had ever mentioned to the government that Davis was considering withdrawing her plea or no longer planned to cooperate in Hamilton's prosecution.  In fact, before her death, Davis had met with the probation officer who was preparing her PSR and reiterated her guilt of accepting bribes from Hamilton.

### C.    Procedural Timeline of the Case

As explained in detail in Part II, 276 of 311 days between Hamilton's initial appearance and the current trial setting are excludable under the Speedy Trial Act.  The table below, which is color-coded to correspond with four excludable time periods (*see* Introduction, *supra*) provides the procedural history of this case in graphical form.  The government's legal analysis with respect to each of these periods is explained in Part II.

| Date | Event |
|---|---|
| March 1-March 3, 2019 | Countable time under the Speedy Trial Act, beginning with Hamilton's initial appearance in court [16] |
| March 4-March 4, 2019 | **Excludable Period 1: Delay related to defense motion for scheduling order** (1 day)<br><br>March 4, 2019: Defense counsel Abbe Lowell files a notice of appearance [23] and Hamilton's motion for a status conference [24]; Judge Scholer enters initial scheduling order with May 6, 2019 trial date [25] |
| March 5-March 17, 2019 | Countable time under the Speedy Trial Act |
| March 18-April 12, 2019 | **Excludable Period 2: Delay related to codefendant Davis** (26 days)<br><br>March 18, 2019: Judge Scholer enters order referring Allen disciplinary matter to a magistrate judge "for a hearing, if necessary, and additional findings" [29]<br><br>March 29, 2019: Magistrate Judge Rutherford holds hearing on Allen disciplinary matter and its effect on Davis's guilty plea [37]; enters order granting Davis's motion to substitute attorney Heath Harris for attorney Allen [38]; and enters supplemental findings to report and recommendation that Judge Scholer accept Davis's guilty plea [38]<br><br>April 12, 2019: Judge Scholer enters order accepting the magistrate judge's findings and accepting Davis's guilty plea [39] |
| April 13-May 1, 2019 | Countable time under the Speedy Trial Act |
| May 2, 2019-July 2, 2019 | **Excludable Period 3: Delay relating to first continuance in the ends of justice** (62 days)<br><br>May 2, 2019: The government files an agreed motion to transfer the case to this Court in light of the Court's sentencing of key |

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 8**

| | |
|---|---|
| | witness Dwaine Caraway [43] and motion to continue the trial setting until November 2019 [42]<br><br>May 3, 2019: Judge Scholer enters electronic order granting the motion to continue [44]; order transferring the case to this Court [46]; and written order elaborating her findings on the motion to continue [47]<br><br>May 14, 2019: This Court enters amended scheduling order, setting a new trial date of July 22, 2019 [49]<br><br>June 27, 2019: Defense counsel Lowell files joint motion to for new scheduling order, requesting a trial date of January 13, 2019 [54] |
| July 3, 2019-January 5, 2020 | **Excludable Period 4: Delay relating to second continuance in the ends of justice** (187 days)<br><br>July 3, 2019: Court construes joint motion for scheduling order as a motion to continue in the ends of justice, grants the motion, and sets a new trial date of January 6, 2020 [55]<br><br>July 16, 2019: Codefendant Carolyn Davis is killed in a car accident by a drunk driver |
| January 6, 2020 | Current trial setting |

## II.    Only 36 countable days have elapsed on Hamilton's speedy-trial clock.

The Speedy Trial Act protects defendants' and the public's interest in the swift resolution of criminal charges.  But in passing the Act, Congress also recognized that it can be difficult to administer justice in 70 days' time.  As a general matter, the Act requires that a defendant's trial commence "within seventy days from the filing date (and making public) of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1); *accord United States v. Dignam*, 716 F.3d 915, 20-21

(5th Cir. 2013).  That said, the Supreme Court has "recognize[d] that criminal cases vary widely and that there are valid reasons for greater delay in particular cases."  *Zedner v. United States*, 547 U.S. 489, 497 (2006).

"To provide [this] necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start."  *Id.* (citing § 3161(h)).  For example, the Act excludes from the 70-day computation:

- "[D]elay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," § 3161(h)(1)(D);

- "[D]elay resulting from any proceeding relating to the transfer of a case," § 3161(h)(1)(E);

- "[D]elay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," § 3161(h)(1)(H);

- "[A] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted," § 3161(h)(6); and

- "[A]ny period of delay resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," § 3161(h)(7)(A).

These statutory exclusions are implicated in the four time periods excludable from Hamilton's speedy-trial clock.

**A.      Two lengthy ends-of-justice continuances (Periods 3 and 4, 249 total days) are excludable from computation under 18 U.S.C. § 3161(h)(7)(A).**

Two lengthy continuances (Periods 3 and 4) that the Court granted are excludable because the Court supported them with the findings required by the Speedy Trial Act. The Act excludes "period[s] of delay resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," 18 U.S.C. § 3161(h)(7)(A).  As the Supreme Court has recognized, this ends-of-justice provision furnishes "[m]uch of the Act's flexibility" because it "gives the district court discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs."  *Zedner*, 547 U.S. at 498–99.  This flexibility is enabled by the concomitant requirements that the Court enter specific findings that the ends of justice served by the continuance outweigh the defendant's and the public's interest in a speedy trial and that the court "set forth, in the record of the case, either orally or in writing, its reasons for" such findings.  18 U.S.C. § 3161(h)(7)(A).

The Act further directs courts, in deciding whether to grant an ends-of-justice continuance, to consider a non-exhaustive list of factors.  *See* 18 U.S.C. § 3161(h)(7)(B). Two are relevant here:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice; and

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 11**

(iv) Whether the failure to grant such a continuance . . . would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. §§ 3161(h)(7)(B)(i), (iv).

Beyond these requirements, the Act is also flexible as to when these required findings must be made. *See United States v. McNealy*, 625 F.3d 858, 862-63 (5th Cir. 2010) (citing *Zedner*, 547 U.S. at 506-07) ("'[A]lthough the Act is clear that the[se] findings must be made, if only in the judge's mind, before granting the continuance . . . , the Act is ambiguous on precisely when those findings must be set forth in the record of the case.'"). "At the very least, the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss[.]" *Id.* at 863. The Fifth Circuit has held that the findings may be articulated either by the judge who granted the continuance or by "[a] successor judge." *Dignam*, 716 F.3d at 922.

### 1.    The first ends-of-justice continuance of 62 days (Period 3) is excludable under § 3161(h)(7)(A).

The first continuance at issue here (Period 3) is excludable under § 3161(h)(7)(A) because Judge Scholer entered written findings that the ends of justice served by the continuance would outweigh the public's and defendant's interest in a speedy trial. As discussed in subsection (1) above, the parties began negotiating for this continuance in the earliest days of this prosecution, in order to accommodate attorney scheduling conflicts and the protracted discovery schedule. (*See* Exh. 1.) The parties also agreed

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 12**

that a continuance needed to accommodate their request to transfer the case from Judge Scholer's docket to this Court.[5]

On May 2, along with the motion to transfer the case to this Court, the government also filed, on behalf of both parties, a motion to continue the original trial setting. (*See* Unopposed Mot. to Continue Trial and Pretrial Deadlines [42].)  In that motion, the government explained that a continuance was necessary for several reasons: (i) discovery had only recently been served on defense counsel due to the time required to negotiate the protective order that Judge Scholer entered on April 22, 2019; (ii) additional time was needed for the defense to review the discovery materials, file pretrial motions, evaluate the government's case, and prepare for trial; (iii) the government would need time after that to respond to defense motions and prepare for trial; and (iv) the continuance was necessary to effectuate the parties' agreed request to transfer the case to this Court.  (*Id.* at 1–2.)  Thus, the unopposed motion sought a fall trial setting of November 4, 2019.  (*Id.* at 2.)

As explained in subpart I(A), this continuance motion memorialized earlier scheduling negotiations between defense counsel Lowell and the government.  (*See* Exhs. 1–3.)  Indeed, Lowell not only *agreed* to the government's May 2 continuance motion, he

---

[5] The parties sought to transfer the case from Judge Scholer's docket to this Court because this Court had recently sentenced Dwaine Caraway, the other Dallas City Council Member whom defendant Hamilton is alleged to have bribed.  *See* Judgment [29], *United States v. Caraway*, No. 3:18-CR-00409-M-1 (Apr. 8, 2019).  To that end, they filed an agreed motion to transfer the case to this Court on May 2, 2019, in which they explained that Caraway was expected to testify against Hamilton in this case, and this Court had stated at Caraway's sentencing that he may be eligible for a sentence reduction based on his testimony against Hamilton.  (*See* Agreed Mot. to Transfer at 2 [43].)  The parties agreed that a transfer was appropriate in light of this Court's expertise with the Caraway matter and the interrelatedness of the two cases.  (*See id.*)

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 13**

was actively involved in preparing it.  The same day the motion to continue was filed,

Lowell sent AUSA Andrew Wirmani redlined changes to that document.  He explained

his additions as follows:

> *I made some changes to reflect a few events, most importantly the date we received discovery after the protective order was entered.*  I think I have all of that right, but please let me know if I do not.  I also changed the proposed order in light of the fact that we will be making a request for a transfer and we should check dates with the new judge if that occurs. . . .  *As to the schedule, the last draft that Marcus sent was more or less OK but I think, if we are going to have an early November trial, we should have motions filed a little before he has that date now*. . . .

(Exh. 2 at 1 (emphasis added).)  Most notably, this email demonstrates that it was *Lowell*

who inserted language to the motion to reflect that the defense needed additional time to

prepare for trial in light of the discovery timetable.  (*Id.*)

Judge Scholer entered three successive orders that granted the requested

continuance [44], transferred the case to this Court [46], and elaborated her findings for

granting the continuance [47].  In the latter of these orders, she explained:

> For the reasons set out in defendant's motion, the Court finds that (1) the ends of justice served by the granting of a trial continuance outweigh the best interests of the public and the defendant in a speedy trial; (2) the failure to grant a continuance in this case would deny defendant's counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence; and (3) taking into account the exercise of due diligence by defense counsel, a continuance of the duration granted by this order is necessary for effective preparation by defense counsel.

(Order on Motion to Continue [46].)  This Court then set a new trial date of July 22,

2019.  (Amended Scheduling Order [55].)

This first continuance (Period 3: May 2 to July 3, 2019)[6] was properly excludable from the speedy-trial clock because Judge Scholer made specific and particularized findings that satisfied the Act's requirements for an excludable continuance in the ends of justice. *See* 18 U.S.C. § 3161(h)(7)(A). The Fifth Circuit has repeatedly held that no magic words are required to satisfy § 3161(h)(7)(A)'s requirement that ends-of-justice findings be made on the record. *See, e.g.*, *United States v. Whitfield*, 590 F.3d 325, 358 (5th Cir. 2009) (holding that court's findings were adequate because they rested on an acceptable statutory consideration under subsection 3161(h)(8)(B)); *United States v. Edelkind*, 525 F.3d 388, 397 (5th Cir.2008) (holding that the district court's finding on the record that the case was complex was sufficient to satisfy section 3161(h)(b)(A)); *United States v. Bieganowski*, 313 F.3d 264, 282 (5th Cir. 2002) (same).

Even if magic words were required, Judge Scholer used them. Her order used the exact language of § 3161(h)(7)(A) in finding that the ends of justice served by the continuance outweighed the public's and defendant's interest in a speedy trial. (Order on Mot. to Continue [47].) It also made reference to specific statutory considerations from §§ 3161(h)(7)(B)(i) and (iv). (*Id.*) Hamilton argues that Judge Scholer's findings were inadequate because she referred to the motion to continue as "the defendant's motion," rather than as an unopposed government motion. (Mot. to Dism. at 5.) But the issue of who filed the motion has no bearing on the adequacy of the court's findings. Instead, the

---

[6] The government has included in this period the two days between the filing of the motion to continue, which automatically tolled the speedy trial clock under § 3161(h)(1)(D). The government counts the end of Period 3 as July 3, 2019, the day before this Court granted the second continuance, which begins Period 4.

Act provides that the court may grant an ends-of-justice continuance, "whether granted sua sponte or on a party's motion."  18 U.S.C. § 3161(h)(7)(A).

Further, regardless of how the motion was styled, it is substantively inaccurate for Hamilton to claim that the motion was not a defense motion.  It was styled as an unopposed government motion, but the parties' correspondence makes clear that it was an agreed motion on behalf of both parties.  Indeed, Lowell's May 2 email to Andrew Wirmani shows that Lowell not only reviewed the motion before it was filed, he redlined and added language to it—language that specifically invoked the defense's need for extra time to prepare for trial.  (*See* Exh. 2.)  It is inaccurate, then, for Lowell to now argue that "[t]here was nothing in the record" to support Judge Scholer's finding that a continuance was necessary to allow defense counsel or the government adequate time to prepare. (Mot. to Dismiss at 5-6.)  That language was in the motion, it was added by Lowell himself, and it was a proper record foundation for Judge Scholer's ends-of-justice findings.  *See* 18 U.S.C. §§ 3161(h)(7)(B)(i), (iv).

Hamilton is also incorrect that Judge Scholer lacked jurisdiction to grant a continuance because she entered her findings only after transferring the case to this Court.  (Mot. to Dism. at 5.)  Judge Scholer granted the continuance in an electronic order [44] *before* she transferred the case to this Court [46].  Her later order on the motion to continue [47] simply placed in the record the findings she made to support the continuance, as required by the Act.  As the Fifth Circuit has recognized, the Speedy Trial Act does not specify *when* the court must enter its ends-of-justice findings into the record.  *McNealy*, 625 F.3d at 862–63.  "[T]he Act is clear that the[se] findings must be

made, *if only in the judge's mind*, before granting the continuance," but they need only be placed in the record at some point "by the time a district court rules on a defendant's motion to dismiss." *Id.* (emphasis added).  Because Judge Scholer entered her findings less than an hour after granting the continuance, it is clear from the record that she had ends-of-justice considerations in mind when she granted the continuance. [7]

Even if Judge Scholer stripped herself of jurisdiction to enter ends-of-justice findings by entering the transfer order 18 minutes prior, this Court can simply rearticulate those findings on the record now.  The Fifth Circuit has held the Act's required findings may be articulated either by the judge who granted the continuance or by "[a] successor judge." *Dignam*, 716 F.3d at 922.  The Act's requirements are satisfied so long as (i) the record indicates that the district court had ends-of-justice considerations in mind when it granted the continuance, and (ii) the ends-of-justice findings are entered into the record by the time the district court rules on the defendant's motion to dismiss on speedy-trial grounds.  *See Bieganowski*, 313 F.3d at 283; *see also Dignam*, 716 F.3d at 922-23 (affirming that the successor judge's articulation of the predecessor judge's reasons for granting the continuance, which were entered into the record at the time of the motion to dismiss, was sufficient to show that the continuance was excludable); *McNealy*, 626 F.3d at 863 (affirming continuance as an ends-of-justice continuance where, although the district court granted the continuance without entering into the record any ends-of-justice findings, the court later did so in denying the defendant's motion to dismiss).  Judge

---

[7] *See* ECF Email re Order Granting Motion to Continue (Exh. 5, time-stamped 4:57 P.M.); ECF Email re Order Granting Motion to Transfer Case (Exh. 6, time-stamped 5:05 P.M.); ECF Email re Order to Continue (Exh. 7, time-stamped 5:23 P.M.).

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 17**

Scholer's order memorializing her findings makes clear that she had ends-of-justice

considerations in mind when she granted the continuance, so this Court can properly

enter the same findings now in denying the motion to dismiss.

### 2. The second continuance of 187 days (Period 4) is excludable under § 3161(h)(7)(A).

Similar to the analysis in subsection II(A) above, the second continuance of 187

days (Period 4) is excludable under the Act. Well before the first continuance expired,

defense counsel filed a joint motion on behalf of both parties for a new scheduling order,

in which he requested a new trial date of January 2020. (*See* Joint Mot. for Amendment

Scheduling Order [54].) This Court construed that motion for what it was: a motion to

continue the trial setting. (Order on Mot. to Continue [55].) In granting the motion, the

Court made the ends-of-justice findings required by the Act:

> After careful consideration, the Court finds that the ends of justice served by
> granting the continuance outweigh the best interests of the public and the
> defendants in a speedy trial, and that failure to grant such a continuance might
> result in a miscarriage of justice. Specifically, the Court finds that the
> provisions of 18 U.S.C. § 3161(h)(7)(A) and (B)(iv) are satisfied and
> accordingly, the motion is GRANTED.

*Id.*

Similarly to the first continuance, the Court's order granting the second

continuance satisfied the requirements of the Act and tolled the speedy-trial clock. Like

Judge Scholer's findings, this Court used the "magic words" of § 3161(h)(7)(A) and

found that the ends of justice served by the continuance outweighed the defendant's and

the public's interest in a speedy trial. (*Id.*) And like Judge Scholer's findings, the order

referenced specific factors listed in 18 U.S.C. § 3161(h)(7)(B)(i) and (iv), namely that

failure to grant the continuance could result in a miscarriage of justice or could deny the defense or the government adequate time to prepare for trial.  (*Id.*)  Thus, the Court should reject Hamilton's claim that—"respectfully"—the Court failed to comport with the Act's requirements.  (*See* Mot. to Dismiss at 9.)  Further, as discussed above, the Court also has the option to enter additional findings now if it is concerned that its earlier order was inadequate under § 3161(h)(7)(A).  *See, e.g.*, *Bieganowski*, 313 F.3d at 283.

### B.    Hamilton's motion for a status conference resulted in one day of excludable time (Period 1).

Hamilton recognizes that one day is excludable on account of his March 4 motion for a status conference.  (*See* Mot. to Dism. at 3.)  Under 18 U.S.C. § 3161(h)(1)(D), the speedy-trial computation automatically excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  Hamilton argues that his motion for a status conference to address was addressed by Judge Scholer's scheduling order, which was also entered on March 4, although the motion was not terminated on the docket until Judge Scholer transferred the case to this Court in May.  (Mot. to Dism. at 3.)[8]  The excludable time on account of Hamilton's motion, then, is one day.

---

[8] It could be argued that the scheduling order did not address all of the relief sought by Hamilton's motion, which specifically requested a status conference, rather than simply a scheduling order.  In that event, more than one day would be excludable under § 3161(h)(1), but the government does not press that argument here because so much other time is clearly excludable for Periods 2, 3, and 4.

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 19**

C.      **Proceedings relating to the suspension of codefendant Davis's attorney resulted in 27 days of excludable time (Period 2).**

The 26-day period between March 18 and April 12 (Period 2) is excludable from Hamilton's speedy-trial computation.  Under § 3161(h)(6), a defendant's speedy-trial clock is tolled for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."  18 U.S.C. § 3161(h)(6).  The Fifth Circuit has construed this provision to mean that "the excludable delay of one codefendant may be attributable to all codefendants." *United States v. Franklin*, 148 F.3d 451, 455 (5th Cir. 1998).[9]

The Court's acceptance of codefendant Carolyn Davis's guilty plea was delayed by proceedings related to her attorney's discipline and suspension from practice in the Northern District.  Davis made her initial appearance in court on March 1, 2019, the same day as Hamilton's initial appearance.  (*See* Minute Entry for Davis Arraignment [19].) Davis had already decided to plead guilty before her initial appearance, so she entered a guilty plea at her arraignment hearing.  (*Id.*).  The same day, Magistrate Judge Rutherford entered her report and recommendation that Judge Scholer accept Davis's guilty plea. (*See* Report and Recommendation [21].)  But before Judge Scholer had accepted Judge Rutherford's recommendation, the clerk's office entered a docket notice that Davis's attorney, Scottie Allen, had been disciplined in a different case and would be suspended

---

[9] The Speedy Trial Act was amended in October 2008—and some subsections were renumbered—so cases decided before October 2008 refer to the exclusion for codefendant-related delay using its former section number of 18 U.S.C. § 3161(h)(7).

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 20**

from practice in the Northern District of Texas from April 1 through September 30, 2019. (*See* Clerk's Note of Mar. 15, 2019.)

On March 18, 2019, Judge Scholer entered an order referring the Allen disciplinary matter to Judge Rutherford for a hearing and additional findings, if necessary. (Order of Mar. 18, 2019 [29].) Judge Rutherford set the Allen disciplinary matter for hearing on March 29, 2019, and she addressed several matters at that hearing. (*See* Orders of Mar. 20 and 29, 2019 [30, 37].) She granted Davis's motion to substitute attorney Heath Harris for attorney Allen. (*See* Order of Mar. 29, 2019 [37].) Further, because Davis had been represented by Allen when she entered her guilty plea, Judge Rutherford conducted a full inquiry into whether Allen's representation and subsequent discipline had affected the knowing and voluntary nature of Davis's guilty plea and confirmed that Davis did not wish to change or withdraw her plea. (*See* Supp. to Report and Recommendation re Davis Plea of Guilty [38].) On March 29, the same day as the hearing on the Davis/Allen matter, Judge Rutherford entered a supplement to her initial report and again recommended that Judge Scholer accept Davis's guilty plea. (*Id.*) On April 12, 2019, Judge Scholer accepted Davis's plea in accordance with Judge Rutherford's recommendations. (Order of Apr. 12, 2019 [39].)

This delay relating to the suspension of Davis's attorney is excludable as to Davis and, by proxy, as to Hamilton. Under 18 U.S.C. § 3161(h)(1)(H), the speedy-trial computation excludes delay reasonably attributable to "any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." The Allen disciplinary matter, and its effect on Davis's guilty

plea, was under advisement by Judge Scholer from March 18—the day she referred the matter to a magistrate judge—until April 12, the day she accepted Judge Rutherford's findings following a March 29 hearing.  The total excludable time was 26 days, less than the maximum of 30 provided by the Act.  *See* 18 U.S.C. § 3161(h)(1)(H) (limiting excludable time for any proceeding under advisement by the court to a period "not to exceed thirty days").  Thus, the Allen disciplinary matter was excludable as to Davis and is also excludable as to Hamilton, so long as it was "reasonable."  *See* 18 U.S.C. § 3161(h)(6); *Franklin*, 148 F.3d at 455.

The delay stemming from the Allen disciplinary matter was reasonable.  *See* 18 U.S.C. § 3161(h)(1)(H).  The reasonableness of codefendant-related delay is "fact-intensive" and determined on a "case-by-case basis."  *Bieganowski*, 313 F.3d at 283.  In assessing the reasonableness of the delay, the Court should consider "both the totality of the circumstances of the case prior to trial and the actual prejudice suffered by the appellant as a result of the [] exclusion."  *Id.* (internal quotation marks and citations omitted).  The relevant factors are (i) "the necessity of the delay, giving proper consideration to the purpose behind subsection (h)[6]—accommodating the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial," and "prejudice, on the other hand," for which "relevant considerations include whether the delay impaired the appellant's ability to defend himself or resulted in excessive pretrial incarceration."  *Id.* (internal quotation marks and citations omitted).

These considerations weigh in favor of finding the delay relating to Davis's attorney and guilty plea was reasonable.  First, the delay was necessary in light of the

statutory purpose of subsection 3161(h)(1)(6), which is to ensure the efficient use of resources in trying codefendants together.  Although Davis had already entered a guilty plea when she made her initial appearance, Judge Scholer rightly requested an inquiry into whether her attorney's discipline and suspension had affected his representation of Davis or the knowing and voluntary nature of her guilty plea.  Hamilton cannot credibly claim otherwise, given that he now claims—following Davis's death—that she regretted her guilty plea and had wished to withdraw it.  (Mot. to Dism. at 19–20.)  The Allen disciplinary matter was directly relevant to whether Davis would persist with her guilty plea, and if she had not, the Court had a strong interest in trying both defendants jointly.

Second, Hamilton was not prejudiced by the 27-day delay related to the Allen disciplinary matter.  He was not incarcerated at the time, so the delay did not increase his pretrial incarceration time.  *See Bieganowski*, 313 F.3d at 283 (listing pretrial incarceration as relevant to the question of prejudice stemming from codefendant-related delay).  And any claim he could make that he was prejudiced by the delay related to Davis's plea is not credible because defense counsel was involved in requesting two lengthy continuances—including one that will run until January 2020—*after* the resolution of the Allen disciplinary matter.  The Allen/Davis matter is excludable as reasonable codefendant-related delay, so Hamilton's speedy-trial computation should exclude 26 days for it.

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 23**

### III. The alleged speedy-trial violation here does not warrant the draconian remedy of dismissal with prejudice.

The Court need not reach the remedy question, of course, unless it finds that Hamilton has shown a violation of the Speedy Trial Act, which he has not. Even if he had, and dismissal of the indictment were warranted under 18 U.S.C. § 3162(a)(2), it should be without prejudice to refiling the indictment. "A district court is not required to dismiss an indictment with prejudice for every violation of the Speedy Trial Act." *United States v. Mancia-Perez*, 331 F.3d 464, 468 (5th Cir. 2003). Indeed, "[t]he decision whether to dismiss [an indictment] under the Speedy Trial Act with or without prejudice is entrusted to the sound discretion of the district judge[,] and no preference is accorded to either kind of dismissal." *United States v. Blevins*, 142 F.3d 223, 225 (5th Cir. 1998); *see also United States v. Taylor*, 487 U.S. 326, 334 (1988) (noting that Congress left the decision to "the guided discretion of the district court" and "neither remedy was given priority").

In determining whether a dismissal of an indictment for noncompliance with the Act should be with or without prejudice, the district court should "consider (1) the seriousness of the offense, (2) the facts and circumstances of the case which lead to the dismissal, and (3) the impact of a reprosecution on the administration of the Act and on the administration of justice." *Mancia-Perez*, 331 F.3d at 468; *see also* 18 U.S.C. § 3162(a)(2). "The defendant has the burden of proving that dismissal of his case pursuant to these factors is appropriate." *Mancia-Perez*, 331 F.3d at 468.

A.      **Hamilton's offenses were serious.**

Hamilton is charged with paying some $40,000 in bribes to a sitting member of the Dallas City Council and promising her future employment in exchange for her assistance in securing approval for one of his housing developments.  (Indictment at 2–4.) Not only did Council Member Davis help secure approval for one of Hamilton's projects, she helped him secure a $2.5 million loan for the project from the City of Dallas.  (*Id.* at 3.)  Hamilton has also been charged with paying bribes to Person A, (*id.* at 4), who was Dwaine Caraway, another former Dallas City Council member who has since been convicted and sentenced for accepting bribes in an unrelated case involving the Dallas County Schools.  This kind of public corruption is an abuse of the public's trust in its elected officials and undermines the integrity of government.  Thus, it would almost seem to go without saying that Hamilton's offenses were serious.

Relying on nonbinding authority, Hamilton argues that his offenses were not serious because they were not violent and because he faced a maximum prison term of ten years on each of two counts of bribery.  But he acknowledges, as he must, that the Fifth Circuit has previously recognized nonviolent white-collar offenses as "serious" for speedy-trial purposes.  In *United States v. Clark*, the Court upheld the district court's finding that the defendant's tax fraud, which caused tax losses of $80,601, was "serious" for speedy-trial purposes.  *See* 577 F.3d 273, 282 (5th Cir. 2009).  The *Clark* Court approved of the district court considering the defendant's ongoing course of criminal conduct over more than a year's time.  *Id.*  The district court in *Clark* "properly refused to

apply a mechanical test to judge the seriousness of Clark's alleged offenses" and "carefully considered the gravity of Clark's alleged crimes." *Id.*

The Court should do the same here. The gravity of public-corruption crimes cannot be reduced to the fact that they are not violent or the maximum sentence available for the crime. Rather, the Court must take into account the full circumstances of the conduct with which Hamilton has been charged. He paid bribes to a public official in order to secure approval for one of his affordable-housing developments, and he funneled those bribes through a nonprofit organization in an attempt to evade detection. (*See* Indictment at 3.) He paid these bribes to Davis over the course of almost two years, an ongoing course of criminal conduct similar to that seen in *Clark*. (*Id.* at 2.) He has also been charged with paying bribes to Council Member Caraway in August 2018, which further demonstrates that Hamilton's criminal behavior in paying bribes to city officials occurred over the course of years. (*Id.* at 4–5.) These offenses were serious.

### B.     The facts surrounding the delay strongly favor dismissal without prejudice.

Of all of the remedy factors, the second factor—the circumstances surrounding the delay—weighs heaviest against dismissal with prejudice. Hamilton, through defense counsel, was largely the cause of the delay of which he now complains. As the Fifth Circuit has repeatedly recognized, dismissal with prejudice is not an appropriate remedy where the defendant and his attorneys were the cause of the delay. *See Clark*, 577 F.3d at 283 (holding that the district court did not abuse its discretion in weighing the second factor against dismissal with prejudice where "the overwhelming majority of the delays

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 26**

resulted from the conduct of [the defendant] and his attorneys"); *United States v. Peoples*, 811 F.2d 849, 851 (5th Cir. 1987) (holding that defendant's partial responsibility for the delay favors dismissal without prejudice).

These cases are not the only examples of the Fifth Circuit disapproving of speedy-trial claims where the delay resulted from a continuance to which the defendant agreed. Indeed, that Court has often found such claims waived on appeal, holding that a defendant is "precluded from [] challenging" a continuance to which he agreed on speedy-trial grounds. *E.g.*, *Whitfield*, 590 F.3d at 358. A defendant "may not seek to turn the benefit he accepted into an error that would undo his conviction." *Westbrook*, 119 F.3d at 1188 (internal quotation marks and citations omitted) (cited in *Whitfield*). "The Speedy Trial Act entitles criminal defendants to adequate time for preparing a defense, but *that right may not be used as a two-edged sword . . . .*" *Whitfield*, 590 F.3d at 358 (emphasis added). In keeping with these principles, the Fifth Circuit has followed the "'sensible maxim that defendants ought not to be able to claim relief on the basis of delays which they themselves deliberately caused.'" *Id.* (quoting *United States v. Kington*, 875 F.2d 1091, 1108 (5th Cir. 1989)).

The record here, along with the attached correspondence between defense counsel and the government, show that defense counsel was a driving force—if not *the* driving force—behind the parties' requests for a late fall and then January trial setting. In contrast to his claim that the government "fil[ed] this case and then let[] it linger," (Mot. to Dism. at 13), defense counsel Lowell was actively involved with negotiating for a later trial date, and Lowell was the first to propose a late-fall trial date, (Exhs. 1–4).

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 27**

Lowell now insinuates that that the speedy-trial clock had never occurred to him in claiming that he "never agreed to any excludable time" and that any delay was caused by the "government's failure to monitor the passing of non-excludable delays under the STA." (Mot. to Dism. at 1, 12–13 (internal quotation marks and citation omitted)). But it strains all credulity for a white-collar defense attorney of Lowell's caliber—whose firm biography boasts of 24 high-profile federal criminal representations—to suggest that he was unaware of the speedy-trial implications of the continuances he actively requested. And the viability of Lowell's claim that he never agreed to excludable time ended with the Court's May 14 order—six days after the initial trial setting—which noted in boldfaced text that any further continuances sought would put the defendant beyond the speedy-trial deadline. (*Id.* at 2 (emphasis in original).) In light of these facts, the circumstances surrounding the delay weigh heavily against dismissal with prejudice.

### C.    The balance of the administration of the Act and the administration of justice weigh against dismissal with prejudice.

The final remedy factor under the Act—reprosecution's impact on the administration of the Act and on the administration of justice— "encompasses three concerns: the defendant's right to a timely trial; the deterrent effect of a prejudicial dismissal on Government's repeated violations of speedy trial requirements; and the public's interest in bringing the accused to trial." *Clark*, 577 F.3d at 283-84. It also implicates the presence or absence of prejudice to the defendant. *Id.*

The defendant's right to a speedy trial cannot weigh in favor of dismissal with prejudice here because he caused the delays of which he complains. As the Fifth Circuit

has recognized, when "it is the conduct of the defendant or defense counsel which creates the delay, it is only the *public's* interest in a speedy trial which has been violated." *Peoples*, 811 F.2d at 852.  Thus, "[u]sing the sanction of dismissal [with prejudice] for such delay would be counterproductive" because—putting aside that a defendant cannot violate his own speedy-trial rights—it would create a "powerful incentive" in future cases "for defendants and defense counsel to create delay." *Id.*  In other words, a dismissal-with-prejudice remedy would actually *harm* the administration of the Act and impair the public's interest in seeing Hamilton put to trial.

Further, the record here shows no government conduct that needs deterring with the harsh remedy of dismissal with prejudice.  The government entered in good faith into run-of-the-mill scheduling negotiations with defense counsel, the kind that occur in almost every case.  (*See* Exhs. 1–3.)  Even if the Court finds fault with these negotiations, dismissal without prejudice is an adequate remedy because it would "impose[] some costs on the prosecution and the court, which . . . encourages compliance" with the Act, while not "unduly impairing the enforcement of federal criminal laws." *Zedner*, 547 U.S. at 499.  The lack of intentional delay by the government renders a dismissal-with-prejudice remedy inappropriate.  *See Blevins*, 142 F.3d at 226 (holding that dismissal with prejudice for deterrent value would be "inappropriate" where the record does not reflect that the government intentionally delayed the proceedings); *see also United States v. Kramer*, 827 F.2d 1174, 1178 (8th Cir. 1987) ("Dismissal with prejudice in this case lacks any prophylactic effect as this is not a case where the court needs to deter repetition of prosecution actions which lead to the violation of the [STA].").

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 29**

Finally, Hamilton has not made an adequate showing of prejudice to his defense to warrant immunity from reprosecution. His argument here turns on the unavailability of Carolyn Davis as a witness due to her untimely death; he claims that Davis would have testified on his behalf at trial. But he fails to convincingly show that Davis's absence will prejudice him. Davis admitted *twice* in open court that she was guilty of accepting bribes from Hamilton, and she signed a six-page factual resume detailing that conduct. Such "[s]olemn declarations [made] in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Davis's prior statements uniformly point to her (and, by proxy, Hamilton's) guilt in the offense charged in the indictment.

It is hardly dispositive that defense counsel procured—only *after* Davis died—declarations from three of her associates indicating that she wanted to withdraw her guilty plea and testify on Hamilton's behalf. First, it is unlikely that Davis would have been allowed to do this after twice declaring her guilt in open court. The court would have had to engage in a seven-factor analysis under *United States v. Carr*, and almost all of the *Carr* factors would have weighed against allowing Davis withdraw her plea:

> (1) whether the defendant asserted her innocence; (2) whether the Government would suffer prejudice if the withdrawal motion was granted; (3) whether the defendant delayed in filing her withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether the defendant had close assistance of counsel; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984). In particular, the second through seventh *Carr* factors would have weighed heavily against allowing Davis to withdraw her plea.

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 30**

Further, Hamilton's prejudice argument neglects that even if Davis had withdrawn her guilty plea, *she would have been on trial along with him*.  Under the Fifth Amendment, she could not have been "'called to testify'" at her own trial, so Hamilton has not shown a "loss of [] exculpatory testimony."  (*See* Mot. to Dism. at 20 (quoting Albert Wash Decl.).)  Even if Davis would have testified at her own trial—likely against the advice of counsel—the government could have impeached her with her prior inconsistent statements that she accepted bribes from Hamilton and her factual resume. Such testimony would also have opened the door for the government to show that Davis had—under Hamilton's accounting of the facts—perjured herself in two hearings before the magistrate judge.  In other words, even accepting the defense declarations as true, it is far from a foregone conclusion that Hamilton has lost a valuable exculpatory witness due to trial delays.

Beyond that, there is reason to doubt the truthfulness of the declarations.  For example, one declarant claims that Davis told her that she "never told the FBI or prosecutors that Ruel Hamilton did anything wrong," (*see* Mot. to Dismiss, Exh. B at 4), and another declarant reports Davis saying that "she told the FBI that Mr. Hamilton did not do anything wrong and did not pay her any bribes," (*see id.*, Exh. A at 1).  These statements are demonstrably false.  On December 20, 2018, more than two months before she pled guilty, Davis unequivocally told the FBI that she voted for Hamilton's Royal Crest project on two occasions because he had been giving her money.  (*See* Exh. 8 at 6 (FBI 302 report summarizing agents' interview with Davis).)  She further told agents that "it's a bribe, that's what it is."  (*Id.*)  AUSAs Busch and Wirmani were present for this

interview, along with Davis's attorney, and all of them heard Davis make these statements.  (*Id.* at 1.)

Even if one were to credit the declarations and believe that Davis "never told *the FBI or prosecutors* that Hamilton did anything wrong," the government intends to introduce at trial consensually recorded meetings in which Davis discussed accepting bribes from Hamilton.  For example, in October 2018, Davis had a meeting with codefendant Jeremy Scroggins, whose nonprofit organization Hamilton used to funnel bribes to Davis.  (*See* Exh. 9 at 1 (FBI 302 report re Davis/Scroggins meeting of Oct. 3, 2018).)  Davis and Scroggins discussed former City Council Member Dwaine Caraway, who has already been convicted of accepting bribes in another case, and how "you cannot take $40,000 or $50,000 from somebody you do not know when you are on the Dallas City Council."  (*Id.*)  Davis then told Scroggins that she was afraid to accept cash from people and described the process by which she got Hamilton to write checks to Scroggins's nonprofit organization, and "she can get the cash from the checks."  (*Id.*)  This recorded call is just one example of why Davis's putative testimony would have had little value to Hamilton at trial, even if he *had* shown in his motion that Davis (i) intended to withdraw her plea, (ii) would have been allowed to withdraw her plea under the *Carr* analysis, (iii) would have waived her Fifth Amendment rights and testified at trial, and (iv) would have also sought to exonerate Hamilton in the process.  And of course, he has not convincingly shown—or even attempted to show—any of these things.  So he has also not convincingly shown that he has been prejudiced by Davis's unavailability as a witness.

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 32**

Finally, Hamilton cannot show that he was prejudiced by Davis's unavailability as a witness because he cannot show that he was ever—at any time in the past—prepared to stand trial. Indeed, just eighteen days before Davis's death, defense counsel filed a motion seeking a *six-month continuance* of the trial setting. The loss of Davis as a witness, then, is a purely hypothetical harm because the defense was never ready for trial at any time before she died. The prejudice factor, too, weighs against dismissal with prejudice.

## CONCLUSION

In sum, Hamilton has shown no speedy-trial violation, and this Court can easily deny the motion without a hearing.

Respectfully submitted,

ERIN NEALY COX
United States Attorney

/s/ Emily Falconer
MARCUS BUSCH
Assistant United States Attorney
Texas Bar No. 03493300

EMILY B. FALCONER
Assistant United States Attorney
Texas Bar No. 24069694
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214.659.8681
Facsimile: 214.767.4100

**Government's Response to Speedy Trial Act & Sixth Amendment Motion – Page 33**

## **CERTIFICATE OF SERVICE**

I certify that I filed this document with the Court's electronic filing system, which will automatically serve all counsel of record.

*/s/ Emily Falconer*
Emily Falconer