IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.

RUEL M. HAMILTON

NO. 3:19-CR-083-M
**(Supersedes indictment filed on February 21, 2019)**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC - 3 2019

CLERK, U.S. DISTRICT COURT
By_____
                    Deputy

### SUPERSEDING INDICTMENT

The Grand Jury Charges:

### Introduction

At all times material to this indictment:

1.     Defendant **Ruel M. Hamilton ("Hamilton")** was a principal of AmeriSouth Realty Group ("AmeriSouth") and a real estate developer engaged in developing low income and other for-profit housing projects within the City of Dallas and elsewhere.

2.     From in or around November 2013 to in or around August 2018, **Hamilton** engaged in a scheme to corruptly influence public officials related to **Hamilton's** business interests within the City of Dallas and to further **Hamilton's** political objectives.

3.     Carolyn Rena Davis was elected to the Dallas City Council District 7 in 2007, and re-elected to the same position in 2009, 2011, and 2013.   During her tenure on the City Council, Davis also served as Chair of the Dallas Housing Committee.   Davis was, as such, an agent of the City of Dallas during her tenure on the City Council.

**Superseding Indictment - Page 1**

4.     Jeremy Scroggins was the owner of a nonprofit known as Hip Hop Government.

5.     Council Member A, an individual known to the grand jury, was at all relevant times a member of the Dallas City Council, and as such, during all relevant times, was an agent of the City of Dallas.

6.     The City of Dallas was an incorporated unit of local government and a political subdivision of the State of Texas that received benefits in excess of $10,000 in each of the consecutive fiscal one-year periods beginning October 1, 2013, October 1, 2014, October 1, 2015, October 1, 2016, and October 1, 2017, under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

## Count One
### Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds
### [Violation of 18 U.S.C. § 371]

7.     From in or around November 2013 to in or around June 2015, in the Dallas

Division of the Northern District of Texas, the defendant, **Ruel M. Hamilton**, Carolyn

Rena Davis, and others known and unknown to the grand jury, unlawfully, willfully, and

knowingly did combine, conspire, confederate and agree with each other for Davis to

receive bribes and other things of value from **Hamilton**, a real estate developer, intending

to be influenced and rewarded in connection with a business, transaction, or series of

transactions of the City of Dallas involving anything of value of $5,000 or more,

specifically, **Hamilton's** affordable housing projects, with the intent to influence and

reward Davis, an agent of the City of Dallas, a local government that received benefits in

excess of $10,000 in the one-year periods beginning October 1, 2013 and October 1,

2014, under a Federal program involving a grant, contract, subsidy, loan, guarantee,

insurance, and other form of Federal assistance, in violation of Title 18, United States

Code, Section 666(a)(1)(B) & (a)(2).

8.     It was an object of the conspiracy for **Hamilton** to enrich himself by

corruptly offering, giving, and agreeing to give things of value to Davis for her

performance of official acts that would advance the business interests of **Hamilton**

concerning his affordable housing projects in the City of Dallas.

9.     It was a part and object of the conspiracy that Davis corruptly solicited and

demanded, and agreed to accept and did accept things of value with the intent to be

**Superseding Indictment - Page 3**

influenced and rewarded in the performance of Davis's official acts as a Dallas City

Council Member and as Chair of the Dallas City Housing Committee that would advance

the business interests of **Hamilton** in acquiring and developing affordable housing

projects in the City of Dallas.

### Purposes of the Conspiracy

10.     It was a purpose of the conspiracy for Davis to enrich herself through bribe

payments and other things of value while on the City Council and to establish herself as a

consultant and lobbyist once she left the Council.

11.     It was a purpose of the conspiracy for **Hamilton** to enrich himself through

obtaining beneficial official action.

12.     It was a purpose of the conspiracy for Davis and **Hamilton** to conceal the

payment of bribes to Davis from the Dallas City Council, the voters of the City of Dallas,

and the Texas Department of Housing and Community Affairs.

### Manner and Means of the Conspiracy

13.     In return for benefits totaling approximately $40,000 in checks and cash,

the benefit of bundling and dispersing money from **Hamilton** to other political

candidates, and the promise by **Hamilton** of future employment for Davis as a consultant

and lobbyist, Davis, in her official capacity, advocated and voted for **Hamilton's** Royal

Crest project including the authorization of City of Dallas funds and obligations in excess

of $2.5 million for said project.

14.     As a member of the City Council and as Chair of the Housing Committee,

**Superseding Indictment - Page 4**

Davis would and did use her official position to seek things of value for herself by providing official assistance to **Hamilton**, who sought Texas Department of Housing and Community Affairs ("TDHCA") approval of **Hamilton's** Low Income Housing Tax Credit applications for projects located in the City of Dallas.

15.     More specifically, in return for things of value, Davis would and did agree to perform and did perform a pattern of official acts to promote and advance **Hamilton's** business interests, which included:

> a.     supporting and voting for **Hamilton's** projects as the Chair of the Dallas Housing Committee, including recommending tax credit applications;
>
> b.     moving the City Council to vote for, and voting for, **Hamilton's** Royal Crest project as a City Council Member, including authorizing the Dallas Housing Finance Corporation ("DHFC") to provide a $2,520,000 development loan to the project, and for the City of Dallas to recommend the project for the 9% tax credits to the TDHCA;
>
> c.     seeking the support of other elected officials for **Hamilton's** project; and
>
> d.     agreeing to lobby for **Hamilton's** project before the TDHCA.

16.     At the direction of Davis, and in order to disguise the bribe payments, **Hamilton** wrote checks payable to a nonprofit company owned by Jeremy Scroggins and to Scroggins individually.

17.     At Davis' direction, Scroggins deposited and or cashed the checks received from **Hamilton** and then gave some or all of the proceeds to Davis in cash.

18.     **Hamilton** also provided checks and large sums of cash to Davis knowing

that Davis would further distribute these amounts as campaign contributions to candidates for the Dallas City Council.   In order to skirt campaign finance laws, **Hamilton** would write multiple checks to the same candidate for an aggregate amount that exceeded the limit for a single donor, but, often without their knowledge, reference the names of his employees and family members, including his minor grandchildren, on the checks to disguise the fact that these donations all came from **Hamilton** and were in excess of campaign finance limits.   **Hamilton** engaged in this conduct to further his scheme to influence Davis while she was on the City Council, and to promote her future consulting and lobbying venture on behalf of herself and **Hamilton's** projects once she was off the council in June 2015 due to term limits.

19.    Davis concealed her expected and actual receipt of things of value by not disclosing conflicts of interest, omitting sources of income on a financial disclosure report filed with the City, and failing to recuse herself from votes wherein she was conflicted.

Overt Acts

20.    In furtherance of the conspiracy and to effect the objects thereof, **Ruel M. Hamilton,** Davis, Scroggins, and others, committed, and caused to be committed, the following overt acts, among others, in the Dallas Division of the Northern District of Texas:

21.    Sometime on or before November 18, 2013, the exact date being unknown to the grand jury, Davis and **Hamilton** agreed that Davis would promote **Hamilton's**

affordable housing projects before the Dallas Housing Committee and the City Council in exchange for things of value.

22. On or about November 18, 2013, **Hamilton** gave Davis a check in the amount of $2,500, payable to Scroggins, written on **Hamilton's** Amegy Bank account ending in 8967.

23. On or about September 10, 2014, **Hamilton** gave Davis a check in the amount of $2,500, payable to Scroggins's nonprofit company, written on **Hamilton's** Independent Bank of Texas account ending in 1273.

24. On or about October 20, 2014, **Hamilton** gave Davis a check in the amount of $2,500, payable to Scroggins's nonprofit company, written on **Hamilton's** Amegy Bank account ending in 8967.

25. On or about November 7, 2014, **Hamilton** gave Davis a check in the amount of $9,000, payable to Scroggins's nonprofit company, written on **Hamilton's** Sovereign Bank account ending in 0497.

26. On or about November 18, 2014, **Hamilton** gave Davis a check in the amount of $6,000, payable to Scroggins's nonprofit company, written on **Hamilton's** Sovereign Bank account ending in 0497.

27. On or about January 8, 2015, **Hamilton** gave Davis a check in the amount of $3,500, payable to Scroggins's nonprofit company, written on **Hamilton's** Amegy Bank account ending in 8967.

28. On or about January 22, 2015, **Hamilton** gave Davis a check in the amount

of $1,500, payable to Scroggins's nonprofit company, written on **Hamilton's** Amegy

Bank account ending in 8967.

29.    On or about January 22, 2015, **Hamilton** wrote eight checks payable to

Dallas City Council Member Candidate B's campaign, an individual known to the grand

jury, totaling $10,000, written on **Hamilton's** Independent Bank of Texas account ending

in 1273.   These checks indicated that the donors were members of **Hamilton's** family,

including minor grandchildren, and **Hamilton's** employees.   **Hamilton** wrote an

additional $2,000 check payable to Candidate B's campaign on his Amegy Bank account

ending in 8967.   This check indicated that **Hamilton** and his wife were the donors.

30.    On or about February 16, 2015, at approximately 2:37 p.m., Davis tells an

associate that she told candidates, including Dallas City Council Member Candidate C, an

individual known to the grand jury, that they should not take "money from folk that's

over a thousand.   Get some nonprofits that you could support and tell them to channel

the money through those nonprofits.   I – and – and you know, can nobody touch you.

The money ain't in your name.   You can't put that money in your name and then expect

not to get caught.   I have turned people on to nonprofits all day long."

31.    On or about February 16, 2015, at 3:49 p.m., Davis and **Hamilton**

discussed campaign contributions for Candidate B.   Davis reminds **Hamilton** that she

will be off the council soon whereupon **Hamilton** responds: "Yeah, I know.   I know we

got to get as much done as possible."

32.    On or about February 20, 2015, at approximately 12:27 p.m., Davis

**Superseding Indictment - Page 8**

reminds **Hamilton** that the campaign contributions for Candidate B can only be "a thousand dollars per person."   **Hamilton** responds: "Yeah.   Well, I got a couple people up here I'm going to get some from and then I'm going to start rounding out stuff for family members."

33.    On or about February 22, 2015, at approximately 9:04 a.m., Davis tells Scroggins that if a public official's spouse had "started her own nonprofit -- them checks could have went to her nonprofit all day long and there's nothing the FBI could do about it."   Davis further says: "It's just not to be caught red-handed doing stuff."

34.    On or about February 26, 2015, at approximately 9:57 a.m., Davis tells **Hamilton** that the checks he had previously written for Candidate B have to be rewritten. **Hamilton** then tells Davis to "bring them all and I'll rewrite every one of them."

35.    On or about February 27, 2015, **Hamilton** wrote seven checks payable to Candidate C's campaign, totaling $10,000, written on **Hamilton's** Sovereign Bank account ending in 0497.   These checks indicated that the donors were members of **Hamilton's** family, including minor grandchildren, and **Hamilton's** employees.

36.    On or about February 27, 2015, **Hamilton** wrote seven checks payable to Council Member A's campaign totaling $10,000, written on **Hamilton's** Sovereign Bank account ending in 0497.   These checks indicated that the donors were members of **Hamilton's** family, including minor grandchildren, and **Hamilton's** employees.

37.    On or about March 6, 2015, **Hamilton** gave Davis a check in the amount of $2,000, payable to Scroggins's nonprofit company, written on **Hamilton's** Independent

**Superseding Indictment - Page 9**

Bank of Texas account ending in 1273.

38.     On each occasion wherein **Hamilton** gave Davis a check for Scroggins or his nonprofit, Davis would give the check to Scroggins who would then either deposit it into an account held by Scroggins or cash it.   Generally, Scroggins, at Davis's direction, would then give some or all of the proceeds to Davis in cash.

39.     On or about March 6, 2015, at approximately 4:23 p.m., Davis asked **Hamilton** if we can meet tomorrow "so I can give you your checks back and you can rewrite some new ones?"

40.     On or about March 18, 2015, **Hamilton** wrote four checks payable to Council Member A's campaign totaling $4,000, written on **Hamilton's** Sovereign Bank account ending in 0497.   The checks indicated that the donors were **Hamilton's** employees.

41.     On or about March 19, 2015, Davis filed her 2014 Personal Financial Statement with the City of Dallas and did not disclose the payments she received from **Hamilton** in 2014.

42.     On or about April 13, 2015, at approximately 4:16 p.m., **Hamilton** told Davis: "So, I know you wanted the rest of the cash.   I have a -- probably half of it.   I know I have over another thousand bucks or we could do it tomorrow, so - ."   Davis responded: "Well, it's up to you ….   We can wait until tomorrow if you want to."

43.     On or about April 14, 2015, at approximately 4:52 p.m., **Hamilton** and Davis discuss meeting at **Hamilton's** office momentarily for Davis to pick up cash.

**Hamilton** asks Davis if she "want[s] to come up for a little bit or are you just planning to -- doing a hit and run?"

44.     On or about May 11, 2015, at approximately 10:26 a.m., while discussing campaign donations, Davis told **Hamilton** to "try to have the money in different – in different names already laid out, but not your office address, if that makes sense. Because I don't want them to come back, hit me like they did last time."

45.     On or about May 18, 2015, at approximately 12:49 p.m., Davis tells **Hamilton** "I'm on my -- my way to come -- you need me to meet you downstairs and we just go over there?   I – I – I got the totals figured out what I think we need to do."

46.     On or about May 18, 2015, **Hamilton** went to Amegy Bank, accompanied by Davis, withdrew $5,000 cash from his Independent Bank of Texas account ending in 1620, and gave it to Davis for herself and for political donations.

47.     On or about June 2, 2015, at approximately 10:36 a.m., Davis told **Hamilton** she will have to "work the polls" for Candidate B.   **Hamilton** asks: "Is there anything I can do to help?"   Davis replies: "we might have to get some -- income -- I need."   **Hamilton** responds: "Yeah, well, -- just come see me."

48.     On or about June 4, 2015, at approximately 10:49 a.m., while Davis and **Hamilton** were discussing Davis's future lobbying practice once she departed the City Council later that month, **Hamilton** told Davis "…technically you can't lobby directly for a year or whatever, but you could talk to people… You can -- you can effectively do the same thing through other people."

**Superseding Indictment - Page 11**

49.     On or about June 4, 2015, at approximately 3:53 p.m., **Hamilton** and Davis discuss going to the bank the next day.

50.     On or about June 5, 2015, at approximately 11:08 a.m., Davis tells **Hamilton** that she is on her way to meet him at his office.

51.     On or about June 5, 2015, at approximately 12:16 p.m., **Hamilton** withdrew $4,000 cash from his Sovereign Bank account ending in 0497 and gave Davis cash.

52.     On or about June 11, 2015, **Hamilton** withdrew $5,000 cash from his Sovereign Bank account ending in 0497.

53.     On or about June 13, 2015, **Hamilton** met with Davis and gave her cash.

54.     On or about June 13, 2015, at approximately 8:18 a.m., Davis tells an associate that she is "going to continue to work with Ruel" and that she told **Hamilton** that his "name is not going to be attached to none of this next year."

55.     On or about June 13, 2015, at approximately 9:56 p.m., Davis told **Hamilton** "everyone won who I was supporting. I used every bit that you had to give me. I'll come over Monday and you can put something into my eager nest. I had to do what I had to pay. I tried to hold on to a little, but couldn't because I just had to pay people." **Hamilton** agreed and said: "I'll see you Monday."

<u>Additional Overt Acts: Official Acts by Davis to Benefit **Hamilton**</u>

56.     On or about February 2, 2015, during a meeting of the Housing Committee, Davis, as the Chair of the Housing Committee, voted to support moving **Hamilton's**

**Superseding Indictment - Page 12**

Royal Crest project forward to the City Council, so that the Council could then decide whether to provide City of Dallas backed funding and support tax-exempt bonds and tax credits for **Hamilton's** project. At that time, the tax credit application for **Hamilton's** project was in direct competition with that of a competing project. Davis's vote included support for City of Dallas funding of $168,000 and a DHFC development loan funding of $2,520,000 for **Hamilton's** project. **Hamilton** was present at the meeting.

57. On or about February 25, 2015, Davis moved the City Council to authorize the DHFC to make a development loan to **Hamilton's** company in an amount not to exceed $2,520,000 for **Hamilton's** project, as an integral part of **Hamilton's** TDHCA's 9% tax credit application. Davis, along with those City Council members present, voted to adopt the resolution supporting the tax credit application **Hamilton** sought.

58. On or about April 23, 2015, at approximately 9:24 a.m., Davis told **Hamilton** that she questioned a City of Dallas housing official (Official X) about the status of **Hamilton's** Royal Crest project that was tied in points with another competing project. Davis told **Hamilton** that she told Official X to connect **Hamilton** with a nonprofit so that his project would get another point in the scoring system, thereby surpassing the score of the other competing project. **Hamilton** told Davis that he would be "disappointed" if his project did not get on TDHCA's list of projects "they are seriously considering." **Hamilton** told Davis that he wanted her, and another City Council Member (Council Member A), to lobby for his project before the TDHCA, specifically, to speak before the TDHCA during a hearing on tax credits. Davis agreed

to lobby the project in her official capacity before the TDHCA in Austin, Texas.

Payments by **Hamilton** to Davis after June 2015 in Furtherance of the Conspiracy

59.     From on or about October 2015 to on or about October 2018, Hamilton, as agreed, paid Davis at least $20,000 as a "consultant" to benefit **Hamilton's** financial interests.

All in violation of 18 U.S.C. § 371 (18 U.S.C. § 666(a)(1)(B) and (a)(2)).

## Count Two
### Bribery Concerning a Local Government Receiving Federal Benefits
### [Violation of 18 U.S.C. § 666(a)(2)]

60.     The Grand Jury hereby adopts, re-alleges and incorporates herein all allegations set forth in the preceding paragraphs of this indictment as if fully set forth herein.

61.     From in or about November 2014 to in or about June 2015, in the Dallas Division of the Northern District of Texas, the defendant, **Ruel M. Hamilton**, corruptly offered to give and did give something of value to Carolyn Rena Davis in connection with a business, transaction, and series of transactions of the City of Dallas involving anything of value of $5,000 or more, to wit: votes and other official acts by Davis regarding **Hamilton's** projects, with intent to influence and reward Davis, an agent of the City of Dallas, a local government that received benefits in excess of $10,000 in the one-year period beginning October 1, 2014 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance.

In violation of 18 U.S.C. § 666(a)(2).

### Background to Counts Three and Four

62.     In furtherance of **Hamilton's** scheme to corruptly influence public officials, on or about August 2, 2018, **Hamilton** initiated contact with Council Member A. **Hamilton** urgently sought Council Member A's official assistance in facilitating the late-addition of a referendum item, which would serve **Hamilton's** political agenda, to be placed on the agenda of the next Dallas City Council meeting scheduled for August 8, 2018.   **Hamilton** told Council Member A: "So I was told that if there is anybody that could get the Mayor to put it on the agenda for the 8th, that it was Councilmember [Council Member A]."   The item, if added on the agenda and passed by the City Council, would have resulted in the placement of a referendum item on the November 2018 general election ballot for City of Dallas voters.

63.     The next day, on August 3, 2018, **Hamilton** and Council Member A met and further discussed **Hamilton's** request for the addition of the agenda item and Council Member A's vote on it.   **Hamilton** also sought future official action by Council Member A in relation to a housing project that **Hamilton** desired to develop in the City of Dallas. Specifically, **Hamilton** stated: "Before you leave office or whenever your last term is, we're going to have stuff built down there on Eleventh Street.   You just watch.   I need you for that.   I'm saying is, I'm there, you know, and so if there is anything that I can help you with, I mean, I hope you feel like you can reach out."

64.     Council Member A agreed to facilitate the addition of the agenda item to the agenda, and to provide official assistance on the proposed housing project, in return

for money.   When Council Member A asked **Hamilton** for $6,200, **Hamilton** agreed but confirmed that Council Member A would "follow through with the Mayor."   **Hamilton** then offered to pay $6,500, which Council Member A accepted.   **Hamilton,** instead, wrote a $7,000 check to Council Member A.   **Hamilton** further discussed with Council Member A how **Hamilton** should characterize the purpose of the check, including: "What should I put down just for posterity sake, down in here [the memo line] for, what should I say?   All right.   I just wrote something down there just so ... some -- somebody ever asks, I can come up with some kind of reference."

## Count Three
### Bribery Concerning a Local Government Receiving Federal Benefits
### [Violation of 18 U.S.C. § 666(a)(2)]

65.     The Grand Jury hereby adopts, re-alleges and incorporates herein all allegations set forth in the preceding paragraphs of this indictment as if fully set forth herein.

66.     On or about August 3, 2018, in the Dallas Division of the Northern District of Texas, defendant, **Ruel M. Hamilton**, corruptly offered to give and did give something of value to Council Member A, an individual known to the grand jury, in connection with a business, transaction, and series of transactions of the City of Dallas involving anything of value of $5,000 or more, to-wit, the facilitation of the addition of an agenda item for the upcoming City Council meeting and Council Member A's vote for it, and in relation to official acts for a housing project that **Hamilton** desired to develop in the City of Dallas, with intent to influence and reward Council Member A, an agent of the City of Dallas, a local government that received benefits in excess of $10,000 in the one-year period beginning October 1, 2017 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance.

In violation of 18 U.S.C. § 666(a)(2).

**Count Four**
**Use of Interstate Facility to Commit Travel Act Violation**
**[Violation of 18 U.S.C. § 1952(a)(3)]**

67.     The Grand Jury hereby adopts, re-alleges and incorporates herein all

allegations set forth in the preceding paragraphs of this indictment as if fully set forth

herein.

68.     On or about August 2, 2018, within the Dallas Division of the Northern

District of Texas, the defendant, **Ruel M. Hamilton**, used and caused to be used facilities

in interstate commerce with the intent to promote, manage, establish, carry on, distribute

the proceeds of, and facilitate the promotion, management, establishment, carrying on,

and distribution of the proceeds of an unlawful activity, that is, Bribery in violation of

Texas Penal Code § 36.02, and thereafter, to perform and attempt to perform acts to

promote, manage, establish, carry on, distribute the proceeds of, and facilitate the

promotion, management, establishment, carrying on, and distribution of the proceeds of

such unlawful activity as follows: the facilitation of the addition of an agenda item for the

upcoming City Council meeting by Council Member A, an individual known to the grand

jury, and Council Member A's vote for it, and in relation to official acts by Council

Member A for a housing project that **Hamilton** desired to develop in the City of Dallas.

In violation of 18 U.S.C. § 1952(a)(3).

A TRUE BILL

_____

FOREPERSON

ERIN NEALY COX
UNITED STATES ATTORNEY

MARCUS BUSCH
Assistant United States Attorney
Texas Bar No. 03493300
ANDREW O. WIRMANI
Assistant United States Attorney
Texas Bar No. 24052287
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214-659-8642
Facsimile: 214-659-8809

**Superseding Indictment - Page 20**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

RUEL M. HAMILTON

SUPERSEDING INDICTMENT

18 U.S.C. § 371
Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds
(Count 1)

18 U.S.C. § 666(a)(2)
Bribery Concerning a Local Government Receiving Federal Benefits
(Counts 2 and 3)

18 U.S.C. § 1952(a)(3)
Use of Interstate Facility to Commit Travel Act Violation
(Count 4)

4 Counts

A true bill rendered

DALLAS                                                                    FOREPERSON

Filed in open court this 3rd day of December, 2019.

**No Warrant Needed**      **Defendant on Federal Bond since 03/01/2019**

UNITED STATES MAGISTRATE JUDGE
Criminal Case Pending: 3:19-CR-00083-M