IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:19-cr-083-M-1 |
| | ) | Chief Judge Barbara M. G. Lynn |
| RUEL M. HAMILTON | ) | |

**MR. HAMILTON'S MOTION FOR A HEARING TO REVIEW AND DISMISS
THE SUPERSEDING INDICTMENT FOR PROSECUTORIAL VINDICTIVENESS
(MTD 1)**

Abbe David Lowell, Bar No. 358651DC
Christopher D. Man, Bar No. 453553DC
Kaitlin A. Pierce, Bar No. 242020DC
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Dion J. Robbins, Bar No. 488888GA
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
DRobbins@winston.com
214-453-6100 (ph)
214-453-6400 (fax)

*Counsel for Defendant Ruel M. Hamilton*

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

I.      Pre-Indictment Investigation........................................................................ 2

II.     Initial Indictment......................................................................................... 3

III.    Mr. Hamilton's Challenges .......................................................................... 3

IV.     Superseding Indictment ............................................................................... 3

ARGUMENT ....................................................................................................... 4

I.      The Prosecution's Own Statements Demonstrate Actual Vindictiveness And The
        Manner And Timing Of The Superseding Indictment Raises A Presumption Of
        Vindictiveness As Well................................................................................ 5

II.     The Course Of Events In This Case Creates A Reasonable Apprehension That The
        Additional Charges Are Vindictive ............................................................... 9

        A.      The Manner In Which Mr. Hamilton Exercised His Legal Rights Heightened
                The Risk For Prosecutorial Vindictiveness........................................... 9

        B.      The Manner In Which The Prosecution Sought The Superseding Indictment
                Strongly Suggests Vindictiveness ...................................................... 13

                1.      New Charges Are Weak....................................................... 13

                2.      New Charges Are Based On Evidence That Was Available To The
                        Prosecution When It Sought The Initial Indictment ................. 15

                3.      The Prosecution Can Identify No Objectively Innocent Reason For
                        Bringing The Superseding Indictment .................................... 16

CONCLUSION.................................................................................................... 19

TABLE OF AUTHORITIES

Page

Cases

*Blackledge v. Perry*,
    417 U.S. 21 (1974)......................................................................................................4-5

*Bordenkircher v. Hayes*,
    434 U.S. 357 (1978).................................................................................................4, 16

*Jordan v. Epps*,
    756 F.3d 395 (5th Cir. 2014) ......................................................................................5

*United States v. Brown*,
    298 F.3d 392 (5th Cir. 2002) ....................................................................................18

*United States v. Dvorin*,
    817 F.3d 438 (5th Cir. 2016) ............................................................................. *passim*

*United States v. Goodwin*,
    457 U.S. 368 (1982).................................................................................................17

*United States v. Herrera*,
    640 F.2d 958 (9th Cir. 1981) ......................................................................................4

*United States v. James*,
    590 F.2d 575 (5th Cir. 1979) ..........................................................................7, 12, 14

*United States v. Jenkins*,
    504 F.3d 694 (9th Cir. 2007) ......................................................................................5

*United States v. Johnson*,
    221 F.3d 83 (2d Cir. 2000)..........................................................................................4

*United States v. LaDeau*,
    734 F.2d 561 (6th Cir. 2013) ...................................................................................5-6

*United States v. Picou*,
    2015 WL 6163423 (E.D. Cal. 2015)...........................................................................7

*United States v. Richburg*,
    478 F. Supp. 535 (M.D. Tenn. 1979).........................................................................6

*United States v. Saltzman*,
    537 F.3d 353 (5th Cir. 2008) ...................................................................................4-5

*United States v. Shults*,
    2018 WL 5046427 (N.D. Tex. Sept. 20, 2018)............................................................4

*United States v. Terrell*,
    220 F. Supp. 3d 941 (N.D. Iowa 2016)......................................................................6

Statutes

18 U.S.C. §666............................................................................................. 2-3, 7, 17

18 U.S.C. §2518(8)(d) ...............................................................................................11

Other Authorities

Tim Rogers, D. Magazine, *Councilman Scott Griggs Returns Campaign
    Contributions from Hamilton Children* (Feb. 6, 2019),
    https://www.dmagazine.com/frontburner/2019/02/councilman-scott-griggs-
    returns-campaign-contributions-from-hamilton-children/ .......................................15

Jim Schutze, The Dallas Observer, *Dallas City Council Corruption Case a Third-
    Cousin to Trump Impeachment* (Nov. 13, 2019) .....................................................11

## INTRODUCTION

Prosecutorial vindictiveness can be proven in either of two ways.  Actual vindictiveness can be shown where there is direct evidence of vindictiveness, such as through statements made by prosecutors acknowledging that they have taken retaliatory action for the defendant's exercise of some protected right.  Alternatively, where such direct evidence is lacking, a rebuttable "presumption of vindictiveness" arises where the circumstances provide "reasonable apprehension" under a preponderance of the evidence standard that it is due to a defendant's assertion of his or her rights.  *See United States v. Dvorin*, 817 F.3d 438, 455 (5th Cir. 2016).  In that situation, the prosecution can be made to explain its conduct through a hearing.

This is the rare case in which there is evidence of both grounds.  The prosecution waited until the eve of trial to file a Superseding Indictment, which supplemented the two charges in the initial Indictment with two more counts, thereby doubling the number of counts and doubling the potential penalty range.  The new charges were not based on any newly discovered evidence, but were based on evidence in the government's possession when the initial Indictment was filed.  The only thing that changed in the interim was that Mr. Hamilton filed numerous motions exposing errors by the government and raising significant issues about the government's conduct in bringing this case, much of which was further reported in the press.  While this is more than enough to establish a rebuttable presumption of vindictiveness, when challenged by the defense for its last-minute Superseding Indictment, the prosecution acknowledged to the Court that its Superseding Indictment was retaliation for Mr. Hamilton exercising his rights: "the new charges are a direct response to the defendant's own motions practice."  (Dkt. 142 at 2.)  That is an admission that the "new charges" resulted from actual vindictiveness.

1

# BACKGROUND

The grand jury returned the initial Indictment against Mr. Hamilton on February 21, 2019. Nine months later—just a month before trial—the prosecution superseded the Indictment, adding counts for conspiracy and violation of the Travel Act.  The Superseding Indictment thereby doubled the number of charges and raised the potential statutory maximum sentence by a decade. Those charges are based on the same conduct alleged in the initial Indictment for which the prosecution had been content with two simple 18 U.S.C. §666 counts.  The evidence underlying the "upped" conspiracy and Travel Act charges was in the prosecution's possession for as long as four years.  In between the initial and Superseding Indictment, Mr. Hamilton fought back.  Through his repeated discovery requests and numerous motions highlighting errors and questionable conduct on the part of the government, Mr. Hamilton brought attention and criticism to the government's investigation and case.

## I.    Pre-Indictment Investigation

By the prosecution's own admission, it began investigating Mr. Hamilton more than *five* years ago in late 2014 or early 2015.  During that time, the prosecution wiretapped Mr. Hamilton's phone conversations, surveilled his business office and real estate properties, and subpoenaed his bank, credit card, and telephone statements.  Notwithstanding this extraordinary level of scrutiny, the prosecution then waited four years before taking any legal action against Mr. Hamilton.

It was not until August 9, 2018, that the prosecution first approached Mr. Hamilton. Perhaps expecting Mr. Hamilton to submit and plead guilty, the prosecution met with both Mr. Hamilton and his counsel in an attempt to gain his cooperation.  When Mr. Hamilton denied the prosecution's accusations and refused to cooperate, the prosecution sought a two-count indictment against him, which was returned on February 21, 2019.

2

## II.   Initial Indictment

The initial Indictment against Mr. Hamilton was limited to two counts of bribery under 18 U.S.C. §666.   Count 1—which centered on the prosecution's investigation of Mr. Hamilton in 2015—alleged that Mr. Hamilton paid former Councilmember Carolyn Davis and promised her future employment, in exchange for Davis' support of Mr. Hamilton's low-income housing tax project.   Count 2—which was based on Mr. Hamilton's communications with Dwaine Caraway on August 2 and August 3, 2018—alleged Mr. Hamilton paid Caraway in exchange for Caraway's help in getting a referendum item on the City Council agenda and with an unspecified future development project.

## III.   Mr. Hamilton's Challenges

After the initial Indictment was returned, Mr. Hamilton mounted a vigorous defense, challenging various aspects of the government's investigation and charging decisions.   Mr. Hamilton made repeated discovery requests, which culminated in a Motion to Compel.  (Dkt. 104.) Additionally, he filed over a dozen motions, identifying factual and legal errors in the charges against him, highlighting instances of questionable government conduct, and causing the prosecution to have to explain its actions to the Court.   Drawing on these filings, the press published articles that were critical of the government.

## IV.   Superseding Indictment

Then, with seven motions pending that might have dismissed or limited the charges, and just weeks before the trial was set to begin, the prosecution took action that "shocked" both Mr. Hamilton and this Court.  (12/6/19 Tr. at 4 (Lynn, C.J.).)  It obtained a Superseding Indictment charging Mr. Hamilton with two additional counts: conspiracy and violation of the Travel Act.

## ARGUMENT

It is "a due process violation of the most basic sort" to "punish a person because he has done what the law plainly allows him to do." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). A defendant makes a case for prosecutorial vindictiveness when the defendant has exercised a right and the prosecutor responds by "upping the ante." *Blackledge v. Perry*, 417 U.S. 21, 28 (1974). As an example of improperly upping the ante, "a prosecutor may not increase the charge against a defendant solely as a penalty for invoking a right." *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008); *see United States v. Shults*, 2018 WL 5046427, at *2 (N.D. Tex. Sept. 20, 2018) (Lynn, C.J.); *see also United States v. Herrera,* 640 F.2d 958, 961 n.6 (9th Cir. 1981) (stating that "[w]hen the defendant is given a heavier sentence or when the charges against him are increased in retaliation for the exercise of some right, the defendant has clearly been penalized for his action," and "[t]here may [also] be other factual settings in which a finding of vindictive prosecution would be justified"). Doing so constitutes prosecutorial vindictiveness.

"The defendant must prove prosecutorial vindictiveness by a preponderance of the evidence, and may do so either by showing actual animus or showing sufficient facts to give rise to a presumption of vindictiveness." *Dvorin*, 817 F.3d at 455 (internal citation omitted). "A finding of 'actual vindictiveness requires 'direct' evidence, such as statements by the prosecutor.'" *Shults*, 2018 WL 5046427, at *2 (quoting *United States v. Johnson*, 221 F.3d 83, 94 (2d Cir. 2000)). Alternatively, "[t]o determine whether the presumption of vindictiveness applies, the court examines the prosecutor's actions in the context of the entire proceedings, and if the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the additional charge was vindictive, a presumption of vindictiveness applies." *Dvorin*, 817 F.3d at 455. "The mere appearance of prosecutorial vindictiveness suffices to place

4

the burden on the government. . . ."  *United States v. Jenkins*, 504 F.3d 694, 700 (9th Cir. 2007).

There is no presumption when "the prosecutor's actions are reasonably justified by an innocuous

explanation," *Jordan v. Epps*, 756 F.3d 395, 418 n.4 (5th Cir. 2014) (Dennis, J., concurring), for

example, where "it was impossible to proceed on the more serious charge at the outset,"

*Blackledge*, 417 U.S. at 29 n.7.  "The presumption cannot be overcome unless the government

proves by a preponderance of the evidence that events occurring since the time of the original

charge decision altered that initial exercise of the prosecutor's discretion."  *Dvorin*, 817 F.3d at

455.[1]

## I.   THE PROSECUTION'S OWN STATEMENTS DEMONSTRATE ACTUAL VINDICTIVENESS AND THE MANNER AND TIMING OF THE SUPERSEDING INDICTMENT RAISES A PRESUMPTION OF VINDICTIVENESS AS WELL

Here, prosecutorial vindictiveness is demonstrated both by actual vindictiveness through

the prosecution's own statements and through the presumption of vindictiveness.  In terms of the

presumption of vindictiveness, this case is similar to *United States v. LaDeau*, in which the Sixth

Circuit explained that "prosecutorial vindictiveness can potentially be found in the pre-trial

addition of charges following pre-trial assertions of protected rights."  734 F.2d 561, 567 (6th Cir.

2013) (internal quotation omitted).  There, a defendant was charged with one count of possession

of child pornography carrying a sentencing range of zero to ten years.  After the defendant

prevailed in a suppression motion, the government superseded to charge conspiracy to receive

child pornography, which carries a sentence of five to 20 years.  *Id.* at 564.  The Sixth Circuit

found that the prosecution was vindictive "given that the government already possessed all of the

relevant evidence that supported the superseding indictment well before procuring the first

---

[1]  The Fifth Circuit "review[s] a district court's factual findings concerning prosecutorial vindictiveness for clear error and its legal determinations de novo."  *Saltzman*, 537 F.3d at 359.

indictment." *Id.* at 568. The suppression motion was the only intervening event that "altered [the government's] perception of the case during the thirteen months that it was pending." *Id. LaDeau* recognized that, given the defendant's successful assertion of his rights, "it was clearly reasonable for the government to adjust to the new posture of the case by recalibrating its prosecution," and that the prosecution could have charged a conspiracy to possess, rather than receive, child pornography, "which carries an identical penalty to the offense originally charged – zero to ten years." *Id.* at 570-71; *see also United States v. Terrell*, 220 F. Supp. 3d 941, 952 (N.D. Iowa 2016) (finding vindictiveness in the government following through on its threat to cease cooperating if the defendant sought a detention hearing, even though the government prevailed at the detention hearing); *United States v. Richburg*, 478 F. Supp. 535, 547 (M.D. Tenn. 1979) (dismissing superseding indictment adding new charges as vindictive for defendant's insistence on a jury trial).

As in *LaDeau*, the prosecution here could have brought the charges in the Superseding Indictment when the initial Indictment was filed, but the prosecution did not do so until after the defendant filed pre-trial motions. Unlike *LaDeau*, where the prosecution jettisoned the charge in the initial indictment and replaced it with a new charge in the superseding indictment, the prosecution here more troublingly piled new charges upon old charges. This is not a mere recalibration of its case, adding an omitted element of the charge or clarifying some vagueness defect, this is simply the prosecution's effort to seek more charges and more punishment. The Superseding Indictment doubles the charges and doubles the potential statutory sentence.

The case is also similar to *United States v. Picou*, 2015 WL 6163423 (E.D. Cal. 2015). There, the defendant filed a motion to dismiss, which was not granted but led to the admonishment of the government, and the prosecution responded by adding five additional counts through a superseding indictment filed "less than a month prior to the trial" that was scheduled. *Id.* at *5.

6

Because the government had long had the evidence to bring the new charges and yet it did not do so until the defendant filed its motion to dismiss, which led to the government's admonishment, the Court dismissed the superseding indictment as vindictive. *Id.* As in *Picou*, the prosecution's Superseding Indictment here came on the eve of trial based on long-held evidence and following the filing of defense motions that embarrassed the government. A presumption of vindictiveness is warranted.

This is not one of the harder cases, though, where the Court must look to the circumstances to determine whether a rebuttable presumption of vindictiveness should arise. To be sure, this is a case where the circumstances do yield a presumption of vindictiveness. But this case is easier because the prosecution has come right out and said that it acted as a reprisal for Mr. Hamilton asserting his rights. In response to Mr. Hamilton's complaint that the prosecution had superseded, the prosecution confessed to the Court:

> here, *the new charges are a direct response to the defendant's own motions practice*: the conspiracy charge was added, in part, to short circuit the defendant's arguments about the admissibility of certain evidence and the Travel Act charge provides an alternative theory in light of the defendant's challenges—baseless as they are—to the scope of 18 U.S.C. § 666.

(Dkt. 142 at 2 (emphasis added).)[2] The prosecution also reiterated that it had long held the evidence of the intra-state use of the phone that provides the basis for the new Travel Act charge,

---

[2] The prosecution's admission that the new conspiracy charge is an attempt to circumvent the Court's order for a *James* hearing and "short circuit [Mr. Hamilton's] arguments about the admissibility of certain evidence" is misguided. (Dkt. 142 at 2.) Charging a conspiracy does not "short circuit" the *James* inquiry. *James* itself involved a charged conspiracy. *United States v. James*, 590 F.2d 575, 585 (5th Cir. 1979) (en banc) ("The majority writes in the context of a case in which the defendants have been charged with criminal conspiracy.") (addressing a charged drug conspiracy). To the extent that the prosecution hopes the conspiracy charge will help it admit stale evidence barred by the statute of limitations, that is no justification either. The evidence should prove the crime, rather than have the prosecution contort the alleged crime to gain admission of disparaging evidence. Here, the admission of evidence extending the alleged offense *undermines* the alleged crime because violations of Section 666, the object of the conspiracy, must take place

7

which is no surprise as the government was in the room taping the phone call at the time, well before the initial Indictment.  (*Id.* ("Instead, discovery produced months ago shows that the defendant—without any government involvement whatsoever—requested the phone call underlying Count Four so he could bribe Council Member A.").)  Nevertheless, the Travel Act is not an "alternative theory," but supplemental, as the initial theory is charged in Count 3 and the Travel Act is charged in Count 4.  Thus, the additional charge upped the ante.

In a short telephonic hearing following the return of the Superseding Indictment, the prosecution again confirmed its actual vindictiveness.  The prosecution justified the Superseding Indictment both based on new facts that it claimed to have learned – but, as we show below, the prosecution knew these facts long before filing the initial Indictment and these new facts are not crimes or charged as crimes[3] – and again the prosecution told the Court that the new counts were in response to Mr. Hamilton contesting the case by filing motions.  The prosecution claimed the decision to supersede was based on these supposedly-new facts,

> coupled with these motions that have been filed by the Defense complaining about surplusage, complaining about – that we have failed to state an offense, complaining about the indictment in general, complaining about the charges, I – I made a decision to supersede with a conspiracy count which encompasses the broader context of the conduct with Hamilton and Davis and others.

(12/6/19 Tr. at 7) (Busch, M.).)  But by acknowledging that the prosecution upped the ante by adding new charges due to the defense asserting its rights by filing valid motions, which the

---

within one year.  (MTD 8 at 3-4.)  Thus, the evidence the government seeks to admit undermines its own claim that there was a crime.

[3] These alleged new facts go to the new allegations that Mr. Hamilton attempted to "skirt campaign finance laws" (Dkt. 139 ¶19), but skirting laws is not the same as breaking them.  The Superseding Indictment does not even charge that these laws were broken, much less constitute a charged federal crime.  The prosecution cannot justify superseding the Indictment to add new gratuitous facts that it finds unseemly, but are not crimes.

prosecution repeatedly characterized as "complaining," the prosecution again confirmed that it engaged in actual vindictiveness for Mr. Hamilton exercising his right to defend himself.

## II.     THE COURSE OF EVENTS IN THIS CASE CREATES A REASONABLE APPREHENSION THAT THE ADDITIONAL CHARGES ARE VINDICTIVE

Both the manner in which Mr. Hamilton exercised his legal rights and the manner in which the prosecution sought the Superseding Indictment "provide[] no objective indication that would allay a reasonable apprehension by the defendant that the [conspiracy and Travel Act charges are] vindictive." *Dvorin*, 817 F.3d at 455.  Thus, a presumption of vindictiveness applies.

### A. The Manner In Which Mr. Hamilton Exercised His Legal Rights Heightened The Risk For Prosecutorial Vindictiveness

The manner in which Mr. Hamilton exercised his legal rights heightened the risk for prosecutorial vindictiveness.  Through discovery requests and motions, Mr. Hamilton placed significant strain on the prosecution and made it harder for them to try this case.  In terms of discovery, Mr. Hamilton relentlessly pursued all *Brady* and *Giglio* material from the time the initial Indictment was returned.  Following the prosecution's original discovery production in April 2019—which was limited to evidence directly related to Mr. Hamilton's case—Mr. Hamilton requested *all* wire recordings of Davis in the government's possession.  That request resulted in the prosecution producing over 9,000 audio and video files.  Then, on August 28, 2019, Mr. Hamilton sent another discovery request, this time for unredacted copies of FBI 302 reports summarizing interviews of, and conversations between, Davis and Jay Scroggins.  That request went unanswered for months.  Undeterred, Mr. Hamilton filed a Motion to Compel on October 30, 2019.  (Dkt. 104.)  Finally, on November 27, 2019, the prosecution provided Mr. Hamilton's counsel with limited access to those FBI 302 reports within the confines of the FBI field office.

Those carefully guarded reports—the prosecution still refuses to provide full access to Mr. Hamilton—reveal serious, and alarming, instances of prosecutorial over-reach.[4]  (*See* MTD 2.)

In addition to doggedly pursuing evidence, Mr. Hamilton filed over a dozen motions in the months leading up to the Superseding Indictment.  Several of these motions identified factual and legal flaws in the grand jury process and bribery charges.  (*See, e.g.*, Motion to Dismiss for Failure to Screen for Grand Jury Bias (Dkt. 101) (suggesting that the prosecution did not take the necessary steps to ensure the grand jury that returned Mr. Hamilton's Indictment was impartial); Motion to Strike Surplusage (Dkt. 98) (pointing out references in the indictment to the uncharged gratuity theory under Section 666); Motion to Dismiss for Failure to Allege an Offense (Dkt. 99) (noting that various actions Davis and Caraway were allegedly bribed to perform do not constitute "business" or "a transaction" "*of*" the Dallas City Council under Section 666).)

Some of Mr. Hamilton's motions also exposed what could be described as "unusual" government behavior.  For example, in the Motion to Dismiss Due to Pre-Indictment Delay (Dkt. 78), Mr. Hamilton highlighted the fact that the prosecution was aware of Davis's illegal activities as early as November 2014, yet allowed her to continue serving as a Councilmember for another six months, until her term expired in June 2015.  In the Motion to Preclude Co-Conspirator Statements (Dkt. 81), Mr. Hamilton called attention to the abnormally generous plea agreement

---

[4] The discovery the prosecution has been reluctant to provide Mr. Hamilton contains information about its interactions with a critical witness, Caraway.  When the prosecution finally provided this material in the shadow of Mr. Hamilton's Motion to Compel (Dkt. 104), it surely realized that those highly questionable interactions (now the subject of MTD 2) would be revealed.  Despite its statement in a December 5, 2019 filing that "[t]he government never dealt with 'Caraway while he was running for City Council . . .'" (Dkt. 142), the discovery shows otherwise.  The government actually encouraged Caraway to run for Council and *paid him* thousands of dollars during his campaign.  Not only did the federal government fail to prevent Caraway from running once it was clear he was corrupt, the federal government actually supported his candidacy and did not tell his opponent (Carolyn King Arnold) or the citizens of Dallas that the federal government was using its power to knowingly facilitate helping a corrupt individual prevail in a local election.

the prosecution gave Scroggins—a twice-convicted felon who admitted to stealing donations from a children's charity—in order to get his testimony that he heard Mr. Hamilton is guilty, but has no first-hand knowledge because the two never even met.  In the Motion to Dismiss for Violations of the Speedy Trial Act (Dkt. 77), Mr. Hamilton provided sworn declarations revealing that Davis repeatedly claimed that the government coerced her to plead guilty by causing her to fear that no one would be around to care for her disabled daughter unless she took the plea deal, and that she insisted that Mr. Hamilton is innocent and she would testify that he is innocent.  (Dkts. 77-1, 77-2, & 77-3.)  And in the Motion to Dismiss for Due Process Violations (Dkt. 79), Mr. Hamilton publicized the government's set-up of him, including a well-orchestrated attempt to play on his sympathies, with graphic descriptions of Caraway's illness and pleas for help with medical bills.  Some of these motions caught the attention of the local media, which subsequently criticized the government's investigation conduct and prosecutorial decisions.  *See* Jim Schutze, The Dallas Observer, *Dallas City Council Corruption Case a Third-Cousin to Trump Impeachment* (Nov. 13, 2019) ("So the case against Ruel Hamilton comes down to the words of Dwaine ('My mama's sick') Caraway, Jeremy ('Sadly those funds are no longer with us') Scroggins and Carolyn ('I'm dead') Davis.  Wow.").

Two of Mr. Hamilton's motions even caused the prosecution to have to explain itself to the Court.  In response to Mr. Hamilton's Motion to Compel—which mentioned that certain third parties had only recently received notices that they were wiretapped in 2015—the Court ordered the prosecution to file a statement on compliance with 18 U.S.C. §2518(8)(d). (Dkt. 132).[5]

---

[5] Mr. Hamilton notes that the government made misstatements to the Court in its response.  (Dkt. 144 at 7.)  The government stated that "the government's first production dated April 23, 2019 included . . . one of the thirteen orders delaying notification of the inventory notice" and that on "September 27, 2019, the government provided an electronic copy of the court's wire interception file to defense counsel, including the applications and delaying orders described herein."  (Dkt.

Additionally, in response to Mr. Hamilton's Motions to Preclude Hearsay Statements (Dkt. 80) and Unsworn Co-Conspirator Statements (Dkt. 81) the Court ordered a *James* hearing, so that it could preview the out-of-court statements the prosecution planned to rely on at trial.

When the prosecution cryptically suggested it may supersede the Indictment in response to those motions, Mr. Hamilton made clear that could lead to this motion if instead of merely seeking to clean up technical deficiencies in its then-existing charges, it added new charges with additional penalties.  (Dkt. 130 at 1 n.1 ("The government's suggestion that it may seek to supersede is concerning given that any effort to do so would now come so late in the trial schedule, in the midst of holidays and with the remaining court deadlines quickly approaching.  If the government were to make any significant changes, that may necessitate expanding discovery, litigating additional issues, and a trial delay.  *See, e.g.*, *United States v. Dvorin*, 817 F.3d 438 (5th Cir. 2016) (dismissing superseding charges as vindictive retaliation for defendant's litigation against the government).")  Nevertheless, adding new conspiracy and Travel Act charges is exactly what it chose to do, as well as adding a new theory of bribing Davis with campaign donations to others.

---

144.)  The first discovery production did not include any inventory notices, and the September 27, 2019 production included only some of the orders described in the government's filing, interspersed between thousands of other documents.  A similar misstatement was made with respect to an interview in which Caraway stated that his prior interchanges with Mr. Hamilton were proper.  The government stated in its December 5, 2019 filing that "the interview statements of Caraway at issue were produced to the defendant in redacted form months ago."  (Dkt. 142.)  But the FBI 302 report summarizing that interview, GOV_00035811, was provided to defense counsel for the first time only eight days earlier, on November 27, 2019, and access was limited to the FBI field office.  This disclosure plainly would have supported Mr. Hamilton's initial motions by demonstrating a lack of government reason to target Mr. Hamilton and a lack of Mr. Hamilton's pre-disposition to commit a crime.  The very purpose of *Brady* is violated if discovery is not made in time to be useful to the defense, and it is hardly productive to have to keep relitigating motions as the prosecution slowly releases discovery in dribs and drabs that change the factual background of those motions.

Although Davis discussed the campaign contributions that she solicited from Mr. Hamilton with the government, Davis apparently never told anyone those campaign contributions were bribes.

Even the Court expressed its shock to the Superseding Indictment.  (12/6/19 Tr. at 4.)  As the Court explained:

> I understand this single reference in your response to the second round of Defense motions that you might supersede the indictment to further detail the alleged offense.  It said nothing, nor did it allude to the possibility that you would add new counts to the indictment that are predicated on events that you knew well had occurred three plus years ago.

(12/6/19 Tr. at 4.)

### B.     The Manner In Which The Prosecution Sought The Superseding Indictment Strongly Suggests Vindictiveness

Additionally, the manner in which the prosecution sought the Superseding Indictment strongly suggests vindictiveness.  The prosecution waited until a month before trial—after the motions deadline had passed and even juror questionnaires had been returned—to seek a Superseding Indictment adding two new charges against Mr. Hamilton.  These charges are both legally weak and based entirely on evidence that was available to the government when it sought the initial Indictment.

### 1.  New Charges Are Weak

Both new charges contained in Mr. Hamilton's Superseding Indictment are legally weak, as reflected in the numerous motions Mr. Hamilton is filing today.  The new conspiracy charge alleges that "[f]rom in or around November 2013 to in or around June 2015, Ruel M. Hamilton, Carolyn Rena Davis, and others known and unknown to the grand jury, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree with each other for Davis to receive bribes and other things of value from Hamilton."  (Dkt. 139 ¶7.)  But Davis is deceased and, therefore, cannot testify to any such agreement.  And Scroggins, who the prosecution will likely

13

rely upon to prove the conspiracy, stated in interviews with the FBI that he has never met Mr. Hamilton and was never present during any meetings between Mr. Hamilton and Davis. In an attempt to substantiate this baseless charge, the prosecution quotes Davis making incriminating statements in conversations with people *other than Mr. Hamilton*. The prosecution previously admitted that these conversations did not "relate to [Mr.] Hamilton's charged conduct."[6]

The new Travel Act charge is likewise weak. The prosecution alleges that Mr. Hamilton used "facilities in interstate commerce" to promote "Bribery in violation of Texas Penal Code § 36.02." This charge is based on an August 2 intra-state phone conversation between Mr. Hamilton and Caraway. But that conversation—which was intercepted by the FBI—did not include any talk of a *quid pro quo*. Rather, Mr. Hamilton simply gave Caraway his pitch for why paid sick leave would benefit the people of Dallas, to which Caraway responded by requesting an in-person meeting with Mr. Hamilton. It is hard to imagine how Mr. Hamilton—who neither hinted at payment nor suggested the in-person meeting—was using this phone call to promote bribery. And significantly, intrastate phone calls are not covered by the Travel Act. (*See* MTD 9.)

---

[6] Defense counsel previewed audio recordings of Davis' conversations with these third parties prior to Mr. Hamilton's initial Indictment when the prosecution pressed for a non-litigated resolution to the case. After an Indictment was returned, when the recordings were not included in the prosecution's first discovery production, defense counsel requested them. In a June 13, 2019 letter, the prosecution stated, "[t]hose recordings were previewed to you to provide some context of Davis's overall conduct but do not specifically relate to Mr. Hamilton's charged conduct . . . ." And, in another example of the inquiry the Court should make, those recorded conversations the prosecution initially stated were not relevant to the case, and therefore did not have to be turned over, are now the very conversations from which the prosecution extracted quotes from people other than Mr. Hamilton and added them to the face of the Superseding Indictment *before* the Court has reviewed and ruled on them at the scheduled *James* hearing. (*See* Dkt. 139 ¶¶30, 33.)

### 2. New Charges Are Based On Evidence That Was Available To The Prosecution When It Sought The Initial Indictment

Moreover, the new charges in the Superseding Indictment are based on evidence that was available to the prosecution when it sought the initial indictment in February 2019 (in some instances years before). In support of the new conspiracy charge, the prosecution primarily relies upon the same facts underlying the Davis bribery charge. The only "new" evidence, claimed by the prosecution, is a group of campaign donations Mr. Hamilton made by check—his own checks which were signed by him—with other individuals' names written in the memo line. That evidence is not new at all. The government subpoenaed Mr. Hamilton's financial records prior to seeking the initial Indictment, and what is written on those checks now is what was written on them then. And, before the initial Indictment was returned, a local magazine featured an article questioning Mr. Hamilton's campaign contribution tactic, naming candidates now referenced in the Superseding Indictment. *See* Tim Rogers, D. Magazine, *Councilman Scott Griggs Returns Campaign Contributions from Hamilton Children* (Feb. 6, 2019), https://www.dmagazine.com/frontburner/2019/02/councilman-scott-griggs-returns-campaign-contributions-from-hamilton-children/. The checks and even the article were provided by the prosecution in its first discovery production in April.

Similarly, the initial Indictment clearly reflected the prosecution's view that a conspiracy had transpired, as it repeatedly referred to a "scheme" in which Mr. Hamilton actually paid bribes to Davis (Dkt. 1 ¶¶2, 6) and repeatedly claimed that Davis performed official acts in exchange for those bribes (*id.* ¶¶6, 7). Thus, the initial Indictment charged a consummated bribery agreement in which Mr. Hamilton agreed to pay the bribes solicited by Davis, and the factual resume to Davis' plea claimed that Davis did "conspire" with Mr. Hamilton. (Dkt. 10 at 1.) Nevertheless, it took the prosecution another ten months to charge that same agreement as a conspiracy.

15

And the Travel Act charge is *solely* based on evidence contained in the initial Indictment. The government was well aware that Mr. Hamilton used a telephone to call Caraway because Caraway told the government that Mr. Hamilton had called on August 2, 2018.  (Caraway 3/4/19 FBI 302 at 1.)  In fact, the August 2, 2018 phone call between Mr. Hamilton and Caraway that provides the basis for this charge is quoted in paragraph 11 of the initial Indictment.  (Dkt. 1 ¶11.) Caraway called Mr. Hamilton back that same day because "FBI Agents requested Caraway to call Hamilton back and record the conversation."  (Caraway 3/4/19 FBI 302 at 1.)  Because the supposed crime was in the course of a trap set by the government, the government plainly knew of the use of the phone but did not bring a Travel Act charge until the Superseding Indictment.

The weakness of the prosecution's additional charges and the lack of any new evidence to support them strongly suggests that the prosecution's motives were not to "clean up" the existing charges but to up the ante against Mr. Hamilton.

### 3.  The Prosecution Can Identify No Objectively Innocent Reason For Bringing The Superseding Indictment

The record of this case and timing of the events should raise a presumption of vindictiveness and require the prosecution to prove "by a preponderance of the evidence that events occurring since the time of the original charge decision altered that initial exercise of the prosecutor's discretion."  *Dvorin*, 817 F.3d at 455.

At the December 6, 2019 status conference, the prosecution attempted to justify the new charges in the Superseding Indictment as arising from newly-discovered evidence.  But, as explained above, the evidence underlying the new charges was available to the government by the time it sought the initial Indictment in February 2019, in some instances years before.

Additionally, the new charges are not made to clean up any deficiencies in the old charges, they merely reflect a piling on of new charges.  In the first place, the prosecution did not even wait

16

for the Court to dismiss the counts in the initial Indictment before supplementing them with new counts, so there was not anything that technically needed to be cleaned up at the time the Superseding Indictment was filed. The prosecution filed the Superseding Indictment presuming that the initial Indictment would be dismissed, but left the old charges in with the new so that the total number of charges has now doubled.

While the prosecution can be forgiven for presuming that its initial Indictment would be found defective by the Court, the more serious defect in the Superseding Indictment is that it did not correct the errors that the motions revealed to exist in the initial Indictment. For example, Mr. Hamilton argued at length that the initial Indictment failed to state a bribery charge concerning Davis in violation of Section 666, such that it is not a crime. Adding a conspiracy count does not correct those deficiencies, as a conspiracy to commit a non-crime is not a crime either. (*See* MTDs 5-8.) Those claims are not made any easier either by attempting to charge First Amendment-protected activities as a crime. (*See* MTDs 5 & 7.)

The same is true of the prosecution's bribery theory concerning Caraway. Mr. Hamilton argued at length that the initial Indictment was defective because the prosecution had not charged *quid pro quo* bribery, and that defect is not circumvented by charging violations of Texas bribery law under the Travel Act as Texas law requires the same showing. (MTD 9.) Indeed, the new Travel Act theory poses more hurdles as it hinges upon a single intra-state phone call being used to facilitate the Texas bribery violation, but that phone call did nothing to further bribery (even under the prosecution's theory of bribery) and intra-state phone calls are not actionable under the Travel Act. (*Id.*) These added hurdles are most likely why the prosecution never brought the ill-conceived Travel Act charge in the first place.

Moreover, the circumstances of this case do not fall within the other categories of events recognized by courts as objective reasons for bringing a superseding indictment. For example, this is not a case where charges were added as the result of a failed or breached plea agreement. *See Bordenkircher*, 434 U.S. at 364-65; *United States v. Goodwin*, 457 U.S. 368, 379 (1982). Indeed, any discussions between the prosecution and Mr. Hamilton to settle this case have been over since August 2018. Nor is this a case where the prosecution was merely "inconvenienced" by a single motion. *See United States v. Brown*, 298 F.3d 392, 406 (5th Cir. 2002).

The Fifth Circuit's decision in *Dvorin*, 817 F.3d at 455, provides helpful guidance on this point. In that case, the prosecution obtained a superseding indictment that added a forfeiture count after the case was remanded following a *Brady* violation. After the defendant was convicted, the Fifth Circuit vacated the district court's finding of forfeiture, concluding that a presumption of vindictiveness applied. In so holding, the Court compared the reasons given by the prosecution for adding the forfeiture count against objective events recognized in other cases and concluded that "the government has not pointed to any objective event that would motivate prosecutors to add a forfeiture count aside from Dvorin's appeal and the agreed remand." *Id.* at 456.

The prosecution has made awarding the relief requested in this motion simple by acknowledging that it filed the additional charges in the Superseding Indictment as a response to Mr. Hamilton's pre-trial motions practice. But even without that direct admission of actual vindictiveness, the same conclusion would be reached through the presumption of vindictiveness. The added charges in the Superseding Indictment came on the eve of trial, following Mr. Hamilton filing his pre-trial motions, and the government had all the facts at its disposal to file those same charges at the time it filed the initial Indictment. Having forgone the need for such charges in the initial Indictment at the outset of the case, it is reasonable to conclude that the only thing that had

18

changed to inspire the prosecution to want to up the ante is that Mr. Hamilton had filed motions in his defense. That is enough to create a rebuttable presumption of vindictiveness, which the prosecution can hardly rebut now that it already has admitted to engaging in actual vindictiveness.

## CONCLUSION

A hearing by the Court, seeking explanations from the prosecution, will confirm the existence of actual vindictiveness and an inability to rebut a presumption of vindictiveness.

Dated: January 31, 2020

Respectfully submitted,

/s/ Abbe David Lowell
Abbe David Lowell, Bar No. 358651DC
Christopher D. Man, Bar No. 453553DC
Kaitlin A. Pierce, Bar No. 242020DC
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, D.C. 20006
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Dion J. Robbins, Bar No. 488888GA
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
DRobbins@winston.com
214-453-6100 (ph)
214-453-6400 (fax)

*Counsel for Defendant Ruel M. Hamilton*

## CERTIFICATE OF SERVICE

I certify that on January 31, 2020, a copy of the foregoing was filed with the Court's electronic case filing system, thereby effecting service on counsel for all parties.

/S/Abbe David Lowell
Abbe David Lowell