IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO.  3:19-CR-083-M-1 |
| v. | ECF |
| RUEL M. HAMILTON | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS COUNTS 1 AND 2 AS INTERNALLY INCONSISTENT AND FOR
VIOLATING SECTION 666'S ONE-YEAR RULE**

The United States of America, by and through the undersigned Assistant United States Attorney, files this response in opposition to the defendant's Motion to Dismiss Counts 1 and 2 as Internally Inconsistent with Each Other and for Violating Section 666's One-Year Rule.  (Dkt. 161.)  For the reasons stated below, this motion should be denied.

<u>INTRODUCTION</u>

On December 3, 2019, the grand jury returned a four-count superseding indictment alleging that the defendant committed the following offenses: Count 1: Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds, in violation of 18 U.S.C. § 371 (18 U.S.C. § 666(a)(1)(B) and (a)(2)); Counts Two and Three: Bribery Concerning a Local Government Receiving Federal Funds, in violation of 18 U.S.C. § 666(a)(2); and Count Four: Use of Interstate Facility to Commit a Travel Act Violation, in violation of 18 U.S.C. § 1952(a)(3).  (Dkt. 139.)  Counts One and Two allege that the defendant corruptly influenced Davis by funneling money to her through a non-profit entity known as Hip Hop Government, by making illegal campaign donations

Government's Response To Defendant's Motion To Dismiss Counts 1 And 2 As Internally Inconsistent -
Page 1

to candidates for public office through Davis in the names of his employees and minor
grandchildren, and by promising Davis employment after her term expired on the City
Council while she was still engaged in promoting Hamilton's business interests in her
official capacity.  (*Id*. at 4-5).  Count 1 alleges an overarching Section 666 conspiracy and
Count 2 is a substantive 666 count.

ARGUMENT

**1.  These Counts allege separate and distinct offenses.**

Hamilton claims that the superseding indictment is defective in Count 1, in
essence, for failing to identify separate one-year conspiracies; and, in Count 2, for
alleging facts that are inconsistent with Count 1.  Hamilton cites no relevant authority in
support of his argument regarding Count I, and for Count 2, cites the general proposition
that "[a]n indictment is defective if it contains logically inconsistent counts" *United State
v. Conde,* 309 F. Supp. 2d 510, 511 (S.D.N.Y. 2003).

The superseding indictment charges two distinct offenses in Counts 1 and 2.
Count 1 alleges that Hamilton and Davis engaged in a conspiracy wherein Davis was
corruptly influenced by Hamilton to support Hamilton's projects.  The relevant time
frame of Davis' corruption occurred from in or around November 2013 to in or around
her last date in office in June 2015.  (Dkt. 139 at ¶ 7.)   The execution of the agreement
between Hamilton and Davis extended beyond her tenure on the City Council, and as part
of the benefits Hamilton agreed to bestow upon Davis for her official actions, Hamilton
hired Davis as a consultant from on or about October 2015 to on or about October 2018

Government's Response To Defendant's Motion To Dismiss Counts 1 And 2 As Internally Inconsistent -
Page 2

and paid her in excess of $20,000 during that timeframe.  (*Id*. at ¶¶ 48, 54, 59.)  The culmination of the benefits that began years before ended when Davis decided to run again for her former council member office in 2019.

Payments during the conspiracy

Beginning on or about November 18, 2013 through on or about March 6, 2015, at Davis' direction, Hamilton made payments to Jeremy Scroggins directly and to his non-profit totaling approximately $29,500.  (*Id*. at ¶¶ 22, 23, 24, 25, 26, 27, 28, 37.)  From these funds, Davis received cash from Scroggins.  (*Id*. at ¶ 38.)

The indictment also alleges that Hamilton and Davis, in furtherance of their conspiracy to engage in bribery, including furthering their financial interests, agreed to make campaign donations in excess of the $1,000 limit to candidates who were anticipated to win election and then continue on the tradition of Davis's unwavering support for Hamilton's financial interests.  (*Id*. at ¶¶ 29, 35.)  In fact, Davis reminded Hamilton that the campaign contributions could only be "a thousand dollars per person." To which Hamilton replied: "Yeah.  Well, I got a couple people up here I'm going to get some from and then I'm going to start rounding out stuff for family members."  (*Id*. at ¶ 32.)  Davis even told Hamilton to "try to have the money in different – in different names already laid out, but not your office address, if that makes sense.  Because I don't want them to come back, hit me like they did last time."  (*Id*. at ¶ 44.)  So, during the course of the 2015 city council election cycle in early 2015, Hamilton made illegal campaign contributions through Davis to two city council member candidates totaling at least

$20,000 by a series of checks that appeared on their face to comport with base contribution limits by identifying false, individual $1,000 donors.[1]  (*Id*. at ¶¶ 29, 35.)  In fact, the investigation has revealed that Hamilton's employees were unaware of these donations, and it is presumed that his very young grandchildren were also unaware of his deception.  (*Id*. at ¶ 18.)  These checks purporting to be from real donors violated the Dallas City Code and state law.[2]

Hamilton also gave Davis cash in furtherance of his scheme to make illegal contributions to city council candidates in violation of state law.[3]  From on or about April 13, 2015 through on or about June 13, 2015, Hamilton gave Davis, while still on the City Council, at least $15,000 in cash.  (*Id*. at ¶¶ 42, 43, 46, 47, 51, 52, and 55.)  And, on at least one of those occasions, Davis accompanied Hamilton to his bank as he withdrew the cash he gave her.  (*Id*. at ¶¶ 46, 51.)  Hamilton knew that Davis intended to keep at least some of these cash amounts for herself and he specifically agreed to pay her directly for her efforts to get candidates elected all while she was still on the city council and actively engaged in efforts to support his project.  (*Id*. at ¶ 55.)  Hamilton and Davis further

---

[1] During this same timeframe, Hamilton, on his own volition, also made $14,000 in campaign contributions to City Council Member Dwaine Caraway under similar circumstances.  (*Id*. at ¶¶ 36, 40.)

[2] *See* Dallas City Code, Sec. 15A-2(a)(1), Ordinance No 21035; adopted August 28, 1991 and Title 15, Texas Election Code, Sec. 253.001(a).)  A violation of this statute is a Class A misdemeanor which is punishable by imprisonment up to one year and a $4,000 fine.  *Id*. Sec. 253.001(c); Texas Penal Code, Title 3, Sec. 12.21.

[3] "A candidate… may not knowingly accept from a contributor in a reporting period political contributions in cash that in the aggregate exceed $100."  (Texas Election Code, Sec. 253.003(a).)  A violation of this section is a Class A misdemeanor.  (*Id*. at sec. 253.033(b).)

Government's Response To Defendant's Motion To Dismiss Counts 1 And 2 As Internally Inconsistent - Page 4

agreed during the course of the conspiracy that Hamilton would hire Davis as a consultant once she left the city council in June 2015.  (*Id*. at ¶ 48.)

The Conspiracy Count

Count 1 alleges that Hamilton and Davis engaged in a conspiracy to commit bribery concerning programs that receive federal funds in violation of 18 U.S.C. § 666(a)(1)(B) and (a)(2).  (*Id*. at ¶ 7.)  The superseding indictment further alleges that Davis was an agent of the City of Dallas, a local government that received benefits in excess of $10,000 in the one-year periods beginning October 1, 2013 and October 1, 2014.  (*Id*.)  The government intends to prove that during the relevant timeframe of the conspiracy while Davis was an agent for the City of Dallas, that is, from November 2013 to June 2015, the City of Dallas received federal benefits in excess of $10,000 and intends to refer to 2013 and 2014 fiscal years accordingly.  The government intends to prove that during the timeframe of Hamilton's bribery, the City of Dallas continuously received periodic benefits from at least one federal government agency, for example, the United States Department of Housing and Urban Development (HUD), and that there was never a 12 month-period where the City did not receive HUD benefits in excess of $10,000.

In his motion, Hamilton argues that a conspiracy count extending beyond a one-year period somehow runs afoul of Section 666's one-year threshold period though he provides no legal authority to support it.  Hamilton cites *United States v. Valentine* wherein the defendant was convicted of misappropriating government funds over a three

year period in two substantive counts.  In that case, the government's evidence established that the defendant misappropriated funds in excess of $5,000 over a three year period, but was unable to prove that that threshold was reached within any one-year period.  (63 F.3d 459, at 463; 6th Cir. 1995).)  The court held that Section 666 "mandate[s] that a one-year limitation likewise attaches to the $5,000 threshold requirement" and "that a natural reading of the statute requires the $5,000 theft to occur during a one-year period."  *Id*. at 463-464.

Here, Hamilton conspired to provide benefits to Davis over a longer period of time than a singular one-year period.  Thus, the government alleged that the relevant one-year periods occurred beginning October 1, 2013 and October 1, 2014 respectively.  At a minimum, the government will prove that Hamilton provided benefits to Davis of $5,000 during the one-year period beginning October 1, 2013 (Dkt. 139 at ¶¶ 22, 23) and more than $38,500 during the one-year period beginning October 1, 2014.  (*Id*. at ¶¶ 24, 25, 26, 27, 28, 37, 42, 43, 46, 51, 52, 53.)

Hamilton's assertion that the "indictment is defective because it does not identify a *single* one-year period in which the conspiracy to complete the Section 666 offense was intended to occur" (Dkt. 161 at 4.) would imply that a conspiracy to commit a section 666 violation is limited to a one-year period.  Hamilton cites no authority for this assertion but instead, proclaims "[s]urely, such a pleading approach violates the one-year rule."  (Dkt. 161 at 5.)

The elements of conspiracy in the context of this case are:[4]

*First*:           That the defendant and at least one other person made an agreement to commit the crime of bribery concerning an agent of a local government receiving federal benefits in violation of 18 U.S.C. § 666(a)(2), as charged in the indictment;

*Second*:      That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

*Third*:         That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

Thus, in order to prevail in Count 1, the government must prove that Hamilton and Davis had an agreement to violate Section 666 and committed at least one of the overt acts in order to accomplish some object or purpose of the conspiracy as alleged.  The burden is on the government to prove the existence of his conspiracy, not to satisfy Hamilton's fictional pleading requirements.

### 2.  Count 2 is a Substantive Offense

Hamilton's argument that Count 2 is defective for, in his words, alleging facts that are, in his view, inconsistent with those in Count 1 is not supported by his argument. (Dkt. 161 at 7.)  Upon a plain reading of Count 2, it alleges a timeframe of conduct that is within the broader timeframe of the conspiracy conduct alleged in Count 1.  But, Hamilton's argument that a conspiracy count must comport with a substantive count, that

---

[4] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2019).

is, the quids and the quos must line up together is fictional and he has no law to support

it.  The unique element of a Section 666 charge is that the defendant corruptly gave or

agreed to give anything of value to any person with the intent to influence or reward an

agent in connection with any business, transaction, or series of transactions of the

governmental unit.[5]  So, any one corrupt acceptance or agreement to accept anything of

value intending to be influenced or rewarded in connection with any business, transaction

or series of transactions would suffice to establish a substantive 666 offense.  There is no

requirement in Count 2 that the government prove an underlying conspiratorial

agreement such as is alleged in Count 1.  Hamilton ignores that his scheme occurred over

a period of time, and that he eagerly threw money at Davis and anyone else Davis asked

him to in order to get what he wanted at City Hall.  However, in Count 2, the government

specifically choose the timeframe centered around Davis' official actions in 2015 in

relation to Hamilton's Royal Crest project and the near-constant flow of money and

benefits from Hamilton to Davis.  Specifically, this substantive count encompasses

Davis' votes on February 2, 2015 as Chair of the Dallas City Housing Committee, and on

February 25, 2015, during a City Council meeting, which benefitted Hamilton and his

financial interests by recommending that the Texas Department of Housing and

Community Affairs (TDHCA) grant 9% low income tax credits to his project, and that

the Dallas Housing and Finance Corporation, an entity of the City of Dallas, provide a

---

[5] Fifth Circuit Pattern Jury Instruction 2.33CB (5th Cir. 2019).

$2,520,000 development loan to Hamilton's project. (Dkt. 139 at ¶¶ 56, 57.) Davis further agreed at Hamilton's request to officially lobby for his project before the TDHCA in Austin, Texas. (*Id.* at ¶ 58.) Preceding and surrounding these official acts, Hamilton, as specifically charged in Count 2, corruptly provided benefits to Davis in the form of checks to a non-profit of her choice, gave cash directly to her, and made tens of thousands of dollars in illegal campaign contributions through Davis.

Contrary to Hamilton's motion, these counts are not internally inconsistent. Instead, these counts have a common factual underpinning that Hamilton corruptly influenced Davis with benefits, including a job after public life which he provided as agreed. Count 1 is a conspiracy that encompasses the broad scheme over time and Count 2 alleges narrowed substantive conduct.

## CONCLUSION

The government charged Hamilton with engaging in a conspiracy to commit bribery with Davis, and with the substantive offense of committing bribery with Davis. The charges are unique factually and legally though they share a common underpinning, that is, the pervasive corrupt conduct that Hamilton and Davis engaged in to further their financial interests to the detriment of the citizens of the City of Dallas. The Court should reject Hamilton's arguments and deny his motion.

Respectfully submitted,
ERIN NEALY COX
UNITED STATES ATTORNEY

s/ Marcus Busch
MARCUS BUSCH
Assistant United States Attorney
Texas State Bar No. 03493300
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel:  214-659-8600
Email: marcus.busch@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2020, I filed the foregoing document with the

Clerk of Court for the United States District Court, Northern District of Texas, and all

attorneys of record and the United States Probation Department will be notified by the

ECF System.

 s/ Marcus Busch
MARCUS BUSCH
Assistant United States Attorney