IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:19-cr-083-M-1 |
| | ) | Chief Judge Barbara M. G. Lynn |
| RUEL M. HAMILTON | ) | |

# MR. HAMILTON'S STATUS REPORT

Abbe David Lowell, Bar No. 358651DC
Christopher D. Man, Bar No. 453553DC
Kaitlin A. Pierce, Bar No. 242020DC
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Dion J. Robbins, Bar No. 488888GA
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
DRobbins@winston.com
214-453-6100 (ph)
214-453-6400 (fax)

*Counsel for Defendant Ruel M. Hamilton*

In light of the Court's May 7, 2020 Order (Dkt. 199), Mr. Hamilton provides the Court with the following information:

I.    **PENDING MOTIONS**

The Court listed pending motions and set Monday, June 8, 2020 for a hearing. In its February 6, 2020 Order (Dkt. 167), the Court rescheduled the *James* hearing that it had previously ordered and stated "counsel should also be prepared to discuss their arguments related to ECF 154-156 and 164." Mr. Hamilton believes a hearing on at least these matters is merited. As to the *James* hearing, as it may involve evidentiary matters (e.g., witness testimony) for the Court to consider, it would seem an in-person hearing should occur. As to any hearing, Mr. Hamilton would ask that all parties participate in the same manner – in person or by videoconference.[1]

In addition, last week, the Supreme Court unanimously decided *Kelly v. United States*, 590 U. S. ____ (2020). In light of the holding and rationale, Mr. Hamilton is also submitting a brief supplement to his Motion to Dismiss Counts 1 Through 3 For Failure to Allege an Offense (MTD 6; Dkt. 159) addressing the new statement of the law. That too might be a subject for the Court's questions on June 8.

II.   **JURY ISSUES**

   A.    **Hardships and Anxiety**

Should any part of the case remain after the Court rules on pending motions and there be any portion left to try, some jury issues arise. As we understand the status, the Court intends to use the venire that was originally summoned for the January 2020 trial and who have returned

---

[1] Counsel assume that, by June 8, 2020, the courthouse will be open with appropriate precautions for in-person appearances. Lead and other counsel would have to travel (presumably by air) for the hearing.

1

completed questionnaires (Dkt. 147). Since a full eight or more months will have passed since the questionnaires were completed, there will be the need to have that panel supplement their responses (at least with respect to case publicity, whether they have discussed the case and especially new hardships posed by the COVID-19 virus and its impact on health, child care, employment, etc.).

One further issue about which the Court is surely aware is that surveys and polls have been asking and analyzing the impact the virus crisis will have on potential juries. There is concern that, for some time to come, jurors will be fretful about serving and distracted when they do. Some have suggested that juries may be impatient to end their service and too quick to deliberate. Despite states, in this case Texas, loosening restrictions on things people want, need, and like to do – work, entertainment, school, socializing – it is not certain when the time will be to loosen restrictions for things most people are reluctant to do in better times. Jury service, while essential to our democracy and something we all hope citizens will participate in, may be an area where a lack of confidence can impact how a case is decided.

### B.    Potential Juror Research

Also with respect to a possible jury, on December 3, 2019, the Court's law clerk wrote indicating that if the parties sought to do any research on jurors, they must seek permissions to do so. We seek such permission for any venire that is summoned by utilizing only publically available sources, such as publically posted social media accounts. This research would involve no contact or communications between potential jurors and counsel, and would not be a "vexatious or harassing investigation," as prohibited by Texas Rule of Professional Responsibility 3.06(a)(1). Such research can provide insights that help assess the viability and credibility of potential jurors during voir dire without any risk of improper influence of the jury. For example,

defense counsel were involved with a recent trial where a potential juror in a case against a public official indicated that he was neutral, but was subsequently excused for cause after it was discovered that he had posted public photos of himself on the Internet wearing a shirt that said "All politicians are crooks." In fact, this type of research is increasingly recognized by courts as essential due diligence during the jury selection process.

The United States District Court for the District of Columbia, for example, recently denied Defendant Roger Stone's motion for a retrial based on prejudicial social media posts by a member of the jury discovered after the verdict was rendered in part because "[t]he information in the motion could have easily been found with the exercise of due diligence. . ." *United States v. Stone*, No. 1:19-cr-00018-ABJ, 2020 WL 1892360, at *5 (D.D.C. Apr. 16, 2020). Judge Amy Berman Jackson, citing several cases, secondary sources, and state bar associations that have discussed and endorsed the practice, explained that "[a]n effort to uncover social media activity" is now "a rudimentary practice that has been an inexpensive and popular arrow in the trial practitioner's quiver for quite some time." *Id.* at *33. This kind of research has been specifically endorsed by the American Bar Association. In 2014, the ABA Standing Committee on Ethics and Professional Responsibility issued a Formal Opinion addressing the ethical issues involved during the jury selection process and the course of a trial when lawyers monitor jurors' postings on the Internet and social media in order to get a sense of their backgrounds and proclivities in particular matters. *See* ABA Standing Comm. on Ethics and Prof'l Responsibility, Formal Op. 466 (2014), available at https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/formal_opinion_466_final_04_23_14.pdf. Noting the "strong public interest in identifying jurors who might be tainted by improper bias or prejudice," *id.,* at 2, the Committee advised that "[u]nless

3

limited by law or court order, a lawyer may review a juror's or potential juror's Internet presence, which may include postings by the juror or potential juror in advance of and during a trial, but a lawyer may not communicate directly or through another with a juror or potential juror," *id.,* at 1.  As Judge Jackson observed, "[t]he practice has been sufficiently widely used to become a subject of treatises." *Stone*, 2020 WL 1892360, at *33 n.54.

While both the ABA Model Rule of Professional Conduct 3.5(b) and Local Rule 24.1 prohibit attorney communications with jurors, the ABA Standing Committee on Ethics and Professional Responsibility clarified that while a lawyer sending an electronic request to a juror for access to non-public social media information would be an impermissible communication, accessing and viewing publically available information is acceptable even where potential jurors are alerted by the Website or otherwise that the information has been viewed, because this "does not constitute a communication from the lawyer in violation of 3.5(b)." ABA Formal Op. 466 at 1.  This approach has been widely adopted, even among Texas District Court Judges.  *See* January 25, 2017 Standing Order of U.S. District Judge for the Eastern District of Texas Rodney Gilstrap, at 2 ("[A]ttorneys . . . are *not* prohibited from conducting . . . any type of online investigation merely because a juror or potential juror may become aware that his or her [online electronic information] is being reviewed.") (emphasis in original).  In keeping with this guidance, any research would be limited to publically available sources and would not involve any requests or communications sent from lawyers to potential jurors, electronically or otherwise.  We believe this research can provide valuable insights that will facilitate the jury selection process and ensure that our client receives as fair and impartial a trial as possible.

4

**III.   SCHEDULE**

As the Court monitors the status of health conditions in the Dallas area, and if recommended CDC and other guidelines (e.g., social distancing, masks, screening, cleaning) are still in existence in June and July, we would request a status conference call closer to the hearing date to go over logistics and confirm the schedule.

Dated: May 11, 2020

                            Respectfully submitted,

/s/ Abbe David Lowell
Abbe David Lowell, Bar No. 358651DC
Christopher D. Man, Bar No. 453553DC
Kaitlin A. Pierce, Bar No. 242020DC
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Dion J. Robbins, Bar No. 488888GA
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
DRobbins@winston.com
214-453-6100 (ph)
214-453-6400 (fax)

*Counsel for Defendant Ruel M. Hamilton*

5

**CERTIFICATE OF SERVICE**

I certify that on May 11, 2020, a copy of the foregoing was filed with the Court's electronic case filing system, thereby effecting service on counsel for all parties.

<u>/S/Abbe David Lowell</u>
Abbe David Lowell
