IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Filed Under Seal |
| v. | CRIMINAL NO. 3:19-CR-083-M |
| RUEL M. HAMILTON | |

## GOVERNMENT'S SEALED MOTION TO REVOKE OR MODIFY THE DEFENDANT'S CONDITIONS OF PRETRIAL RELEASE

The government moves to revoke, or, in the alternative, modify the defendant's conditions of pretrial release based on his repeated and flagrant violation of the condition that he have no contact with potential witnesses in the case. As explained below, on multiple occasions the defendant contacted potential government witness, Leslie Martin, and attempted to dissuade her from speaking with government agents.

### BACKGROUND

On February 21, 2019, the grand jury returned a two-count indictment charging the defendant with bribery concerning a local government receiving federal benefits in violation of 18 U.S.C. § 666. (Dkt. 1.) At the defendant's initial appearance, U.S. Magistrate Judge Renee Toliver ordered the defendant released pending trial, subject to a number of conditions, including that he "*avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: any-co-defendants or co-conspirators*." (Dkt. No. 15 at 2, ¶ (7)(g) (emphasis added).) The defendant acknowledged the conditions of his release in open court and signed the release order, in which he "promise[d] to obey all conditions of release" and

stated that he was "aware of the penalties and sanctions" for violating the release conditions. (*Id.* at 3.)

On December 3, 2019, the grand jury returned a superseding indictment which, as relevant here, added a conspiracy charge, alleging that the defendant bribed former Dallas City Councilmember Carolyn Davis through various means, including by providing her with illegal campaign donations for the candidates of her choice. To increase the illegal benefit to Davis, the defendant would write multiple checks to the same candidate for an aggregate amount that exceeded the limit for a single donor. To disguise the fact that these donations all came from a single individual and were in excess of campaign-finance limits, the checks referenced the names of the defendant's employees and family members, including his minor grandchildren—often without their knowledge. (*See* Dkt. No. 139 (Count One).) In addition to constituting a bribe to Davis, this conduct violated local campaign-finance limits, and, because the defendant attempted to obscure the source of the donations, constituted a criminal offense under state law.

Leslie Martin, a former employee of the defendant, was one of his unwitting straw donors. The defendant knew—as early as December 18, 2019—that Martin was a potential government witness in this case because the government disclosed her name, along with the names of other potential government witnesses, to defense counsel and the Court by email that day. (Exhibit 1.)

Approximately three weeks later, the defendant—with full knowledge that Martin was a potential government witness in this bribery prosecution—contacted her and left a voicemail on her personal cell phone. The defendant told Martin that the government

**Government's Motion to Revoke or Modify Conditions of Release – Page 2**

was now focused on "the payroll tax issue from 2010" and that he had "been offering to engage and pay for attorneys to represent all the corporate employees." (Exhibit 2.) This is the first verbal contact that the defendant had with Martin since her termination from his company, AmeriSouth, in 2015. Then the next day, January 9, Martin received a $1,650 distribution check for one of her investments in an AmeriSouth property. Notably, Martin did not receive a distribution check for her investments for nearly 17 years prior to September 2018—about a month after the government informed the defendant that he was the subject of a federal bribery investigation.

On January 10, Martin left a voice message returning the defendant's call, and the defendant returned her call on January 13. The call was recorded. On the call, the defendant again offered to pay for a lawyer to represent Martin. The lawyer he proposed to hire, Sarah Wirskye, also represents three other AmeriSouth employees who are potential government witnesses in this case.

While Hamilton carefully framed the conversation with disclaimers that Martin was free to speak with the FBI and that he was not telling her to refuse to be interviewed, he plainly attempted to dissuade Martin from cooperating with law enforcement:

> *[O]bviously I've got to say this right*. If the FBI contacts you and you want to speak with them, you can. You don't have to. You can get counsel. You can hire anybody you want and obviously that costs money. Or the company is willing to pay for counsel for everybody.

The defendant further explained that, "if you were engaged with counsel, they, FBI, if they want to speak to you would have to speak to the attorney and not you." In response to her question about why she needed a lawyer, the defendant told Martin that government agents could lie to her or try to intimidate her: "[T]hey try to intimidate, you

**Government's Motion to Revoke or Modify Conditions of Release – Page 3**

know. You can't count on them telling you the truth, so I'm just throwing that out there." Martin told the defendant that she would have to think about his offer for legal representation, to which he responded: "I don't think you'd contacted . . . but they can be very intimidating." (Exhibit 3.)[1]

Then, on January 22, Martin again called the defendant to tell him that she would not accept his offer to be represented by Wirskye and that she did not want to talk to his attorneys. On that call, which was also recorded, the defendant again advised Martin to be wary of the FBI lying to her and explained that the benefit of having a lawyer is that the FBI cannot contact her directly:

> I've learned a lot about how the FBI and how the government works now. They will—they will say anything. They will make up anything. They don't have to tell the truth. They could show up at your door and tell you a lie and it's perfectly acceptable.
>
> ***
>
> [I]f you're represented by counsel[,] they've got to go through your attorney. So they can't talk to you, essentially, unless your attorney says they can. Okay?

The defendant also suggested that Martin could get in trouble even if she did nothing wrong personally. After Martin told the defendant that she "didn't do anything wrong, and you're [the defendant] the one that didn't pay the taxes," the defendant

---

[1] Per the advice of the Department of Justice's Professional Responsibility Advisory Office, a separate taint team was assigned to conduct the investigation of the defendant's contacts with Martin. Thereafter, the prosecution team was provided only redacted transcripts of the January 13 and 22 calls between the defendant and Martin that exclude any conversations about the bribery case, and it is attaching those redacted transcripts as exhibits to this motion. In conjunction with the filing of this motion, and so the prosecution team satisfies it's discovery obligations, the taint team will provide defense counsel and the Court with unredacted versions of the conversations.

**Government's Motion to Revoke or Modify Conditions of Release – Page 4**

warned her that "the mere fact that you did nothing wrong does not keep you out of trouble with these people [the FBI]."

The defendant told Martin that his own lawyer would tell her not to talk to the FBI:

> [Q]uite frankly, I think Abbe [Lowell], my attorney would tell you, you don't want to talk to them because there's nothing good that's going to come from it.

The defendant referred to the FBI as "a bunch of storm troopers" and claimed that the government will "just charge people with shit even if they know it's not real."  He told Martin that "they treat everyone like they're the mob."  He also told Martin:

> [M]y advice, if anybody asked me what should I—what should I do, this is anybody, anywhere, anytime, I would say don't speak to law enforcement without—guilty or not without legal representation . . . .  Just because it's just, you know, I mean, it's just—gah, I mean, it's just a nightmare.

\*\*\*

> *I can't tell you, you can't do it, you know, because I can get in trouble . . . if I said don't do it, you know . . . .*  I'm hoping to keep everybody out of this.

In other words, Hamilton appeared to choose his words carefully precisely because he knew that it was illegal—or at least "out of bounds"—to attempt to dissuade a potential witness from cooperating with the government.  (Exhibit 4.)

## ARGUMENT

It is plain that the defendant, through his contacts with Martin, has repeatedly violated his conditions of release.  There is no dispute that the defendant knew that Martin might offer testimony against him in this case.  He was put on notice of this fact not only by the government's early disclosure of its witnesses, but also by the content of

the superseding indictment. Indeed, the defendant personally made campaign contributions in Martin's name without her knowledge or consent, and those are the precise allegations that appear in the superseding indictment.

Nor is there any dispute that the defendant intentionally failed to "avoid all contact, directly or indirectly, with" Martin. (Dkt. No. 15 at 2, ¶ (7)(g).) The defendant repeatedly and personally contacted Martin, and those conversations are recorded. Finally, the defendant's violations of his conditions were neither technical nor harmless. Instead, while maintaining the faux position that he was not telling her what to do, the defendant clearly attempted to dissuade Martin from speaking with law enforcement. Courts order criminal defendants to have no contact with potential witnesses precisely to avoid this sort of inappropriate influence.

Under these circumstances, the defendant has demonstrated that he is unwilling or incapable of abiding by the Court's conditions of pretrial release. Accordingly, the government respectfully asks the Court to set a hearing, issue a summons for the defendant's appearance, and revoke his pretrial release, or, at the very least, admonish the defendant and modify those conditions to make abundantly clear that he is precluded from inappropriately contacting potential witnesses for any reason whatsoever in the future.

## CONCLUSION

The government respectfully requests that the Court set a hearing, issue a summons for the defendant's appearance, and, based on the forgoing, revoke or modify his conditions of pretrial release.

Respectfully submitted,

ERIN NEALY COX
United States Attorney

/s/ *Andrew Wirmani*
Andrew O. Wirmani
Assistant United States Attorney
Texas Bar No. 24052287
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214.659.8681
Facsimile: 214.767.4100

CERTIFICATE OF SERVICE

I hereby certify that on **July 9, 2020**, I electronically filed the foregoing document with the Clerk of Court for the United States District Court, Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys who have consented in writing to accept this Notice as service of this document.

/s/ *Andrew Wirmani*
Andrew O. Wirmani
Assistant United States Attorney