IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | NO. 3:19-CR-083-M |
| v. | |
| RUEL M. HAMILTON | |

**GOVERNMENT'S NOTICE OF INTENT TO POTENTIALLY OFFER
EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(b)**

The government files this notice under Federal Rule of Evidence 404(b) to identify evidence that it *may* present in its case-in-chief, namely, the defendant's attempts to obstruct the government's access to a key witness in this case, Leslie Martin, and prior bribes that the defendant paid to former Dallas City Councilmember Dwaine Caraway. Although the evidence identified herein is part of the charged conduct or intrinsic to it, the government files this notice out of an abundance of caution. The proffered evidence is highly relevant to contested issues arising from the charged conduct and will add little time to the government's case-in-chief as all of it would be presented by witnesses that the government has already slated to testify to the charged conduct.

**BACKGROUND**

Count One of the Superseding Indictment charges the defendant with conspiring with Carolyn Davis and others, namely, Jeremy Scroggins, to bribe Davis in exchange for her support of his real estate projects, particularly his application to receive federal tax credits to renovate his Royal Crest property. Count Two is a substantive count based on

the same conduct.  The bribes relevant to these counts took three different forms: (1) money the defendant funneled through Scroggins' nonprofit, Hip Hop government, to Davis; (2) political donations that the defendant made to candidates of Davis's choice and at her request; and (3) the promise of a future consulting job when Davis left the Dallas City Council.  To increase the illegal benefit to Davis with respect to the second category of bribes, the defendant would write multiple checks to the same candidate for an aggregate amount that exceeded the limit for a single donor.  To disguise the fact that these donations all came from a single individual and were in excess of campaign-finance limits, the checks referenced the names of the defendant's employees and family members, including his minor grandchildren—often without their knowledge, and the faux donors never reimbursed the defendant.  At trial, the government intends to prove these allegations— which appear prominently in the Superseding Indictment—with, among other things, the testimony of the defendant's former employee, Leslie Martin.

The grand jury returned the Superseding Indictment on December 2, 2019, and the allegations therein would have alerted the defendant to Martin's status as a potential witness.  The government, moreover, made Martin's status as a witness explicit a few weeks later when it disclosed her name, along with the names of other potential government witnesses, to defense counsel and the Court.  (Dkt. 227-1.)  More broadly, the defendant plainly knew in 2019 that his current and former employees in whose names he had made campaign donations were potential government witnesses.  In November 2019, the government interviewed Kristie Bonner, an AmeriSouth employee who, like Martin, the defendant made an unwitting donor.  Shortly after the interview,

Bonner expressly told the defendant that the FBI was asking about campaign donations that the defendant made in his employees' names.  Then, almost immediately thereafter, the defendant hired counsel for several AmeriSouth employees, including Bonner, shutting down the government's efforts to further communicate with them.  The one thing that all these employees have in common is that—like Martin—the defendant cut campaign checks in their names and without their knowledge.[1]

The Court is intimately familiar with what happened next.  With full knowledge that Martin would likely testify against him in this case, the defendant blatantly and repeatedly attempted to obstruct the government's access to Martin.  To that end, the defendant, through two separate phone calls that took place on January 14 and 20 of 2020:

- Attempted to convince Martin to hire the same lawyer that had stymied the government's access to witnesses in the past;

- told her that government agents are awful people who would lie to her and make up evidence;

- told her that the agents would come at her like stormtroopers, attempt to intimidate her, treat her like she was in the mob, and assume she was bad;

- told her that merely having done nothing wrong would not keep her from getting in trouble;

- claimed that the government would make "shit up" to indict her;

- told her that the defendant himself would not talk to law enforcement; and

- advised her that the defendant's own lawyer—who the defendant asked Martin to speak with—would likewise tell her not to cooperate.

---

[1] In fact, in revoking the defendant's pretrial release, Magistrate Judge Toliver explicitly found "ample evidence that [the defendant] actually knew [Martin] was a potential witness in the prosecution of this case" at the relevant time.  (Exhibit 1, Hearing Transcript, Dkt. 233 at 23.)

**Government's Notice under Rule 404(b) – Page 3**

(*See* Dkt. 227.)  The defendant's obstructive conduct with Martin is captured on audio recordings and has been produced to the defendant in discovery.

Counts Three and Four of the Superseding Indictment are based on the defendant's attempts to bribe Dwaine Caraway with a $7000 check in exchange for (1) Caraway encouraging the Mayor to place on the City Council's agenda a referendum for the November 2018 election requiring employers to provide employees with paid sick leave; and (2) Caraway's assistance with real estate developments, particularly projects that the defendant wanted to undertake in the area of 11th Street and Bonnie View Road in South Dallas.

Notably, that was not the first bribe that Caraway had received from the defendant related to his property on Bonnie View in Caraway's district.  A few years prior, the defendant requested Caraway's help with permits related to a parking issue at the property.  Caraway met the defendant at his property located on Bonnie View Road and asked the defendant for $3000 in exchange for his assistance.  Because the defendant did not have that kind of cash on hand, he made a telephone call.  Shortly thereafter a woman driving a Corvette showed up and paid Caraway some of the cash he had requested.  The Friday after this occurred, Caraway again met with the defendant.  Caraway drove by the defendant's Good Haven Apartments and saw a black SUV belonging to Person X parked there.  When Caraway called person X, he confirmed that he was meeting with the defendant.  Later that day, Person X, on behalf of the defendant, gave Caraway the remainder of the bribe money that he had requested.

## RELEVANT LAW

The Federal Rules of Evidence allow the admission of evidence of extrinsic offenses or acts for any relevant purpose other than to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The Fifth Circuit has explained that "Rule 404 is a rule of inclusion, which admits evidence of other acts relevant to a trial issue except where such evidence tends to prove ***only*** criminal disposition." *United States v. Shaw*, 701 F.2d 367, 386 (5th Cir. 1983) (internal citation omitted) (emphasis added). Under Rule 404(b), evidence of a defendant's "crime, wrong, or other act" is admissible for non-propensity purposes, "*such as* proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b) (emphasis added).

In *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), the Fifth Circuit announced a two-step test for the admissibility of "other crimes" evidence under Rule 404(b), commonly known as the "*Beechum* Test." First, the evidence must be relevant to an issue unrelated to the defendant's character or propensity to act in a like manner; and, second, the danger of unfair prejudice to the defendant must not *substantially* outweigh the probative value of the evidence. *Id.* at 911; *see also United States v. Sanders*, 343 F.3d 511 (5th Cir. 2003).

1. **Evidence of witness-tampering and prior similar crimes are generally relevant to show consciousness of guilt, intent, knowledge, and lack of mistake.**

Relevancy—under the first prong of *Beechum* and otherwise—is a low bar. Extrinsic evidence is admissible in this case if it is supported by sufficient evidence and "has any tendency to make a fact" relevant to an issue listed in Rule 404(b) "more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also United States v. Kinchen*, 729 F.3d 466, 472 (5th Cir. 2013) ("An extrinsic act is relevant to an issue other than the defendant's character if it is offered to prove one of the elements listed in Rule 404(b)"); *United States v. Smith*, 804 F.3d 724, 735 (5th Cir. 2015) (holding that the government must prove extrinsic acts only by a preponderance of the evidence).[2]

The Fifth Circuit has held that, in a conspiracy case such as this, "the mere entry of a not guilty plea raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence." *United States v. Parziale*, 947 F.2d 123, 129 (5th Cir. 1991). It has also repeatedly held that "an uncharged offense is relevant to intent, a proper non-character issue under Rule 404(b), if it 'requires the same intent as the charged offense,' because evidence of the uncharged offense then 'lessens the likelihood that the defendant committed the charged offense with innocent intent.'" *Smith*, 804 F.3d at 736 (quoting *Beechum*, 582 F.2d at 913).

---

[2] "It is unnecessary that the extrinsic evidence fit neatly under one of the exceptions listed in Rule 404(b), as this list is not exhaustive." *United States v. Ebron*, 683 F.3d 105, 131 (5th Cir. 2012). Instead, as the Fifth Circuit has explained, "to avoid the strictures of Rule 404(b), all the government need do is suggest a logical hypothesis of the relevance of the evidence for a purpose other than to demonstrate his propensity to act in a particular manner." *United States v. Krout*, 66 F.3d 1420, 1431 (5th Cir. 1995).

Under these standards, the Fifth Circuit has consistently held that attempts to obstruct justice, including interfering with witnesses, is relevant to show a "criminal defendant's consciousness of guilt about other crimes charged." *United States v. Kimmel*, 777 F.2d 290, 293 (5th Cir. 1985); *see also United States v. Ballis*, 28 F.3d 1399, 1409 (5th Cir. 1994) ("Here, even if Ballis had been tried separately on the bank fraud counts, evidence of the obstruction of justice offenses would have been probative evidence of consciousness of guilt and admissible against the defendant whether he testified or not."); *United States v. Davis*, 752 F.2d 963, 972 (5th Cir. 1985) (recognizing that "evidence of Davis' … alleged interference with a witness in an upcoming proceeding against him would tend to establish Davis' 'guilty consciousness' of the false statement and mail fraud charges."); *cf. United States v. Yi*, 460 F.3d 623, 633 (5th Cir. 2006) (holding that the defendant's post-arrest attempt to bribe of the arresting officer to let him escape was "relevant and highly probative of intent, knowledge, and absence of mistake").  Other federal courts of appeals take the same view.  *See, e.g.*, *United States v. Poulsen*, 655 F.3d 492, 508 (6th Cir. 2011) ("Evidence of witness tampering was admissible as an 'other purpose' under Rule 404(b) because it tends to establish consciousness of guilt without any inference as to … character[.]"); *United States v. Hayden*, 85 F.3d 153, 159 (4th Cir. 1996) (recognizing that evidence of witness obstruction is admissible under Rule 404(b) if the evidence is related to the charged offense and reliable).

The Fifth Circuit has also consistently held that extrinsic evidence of kickbacks and bribery are relevant to prove intent in a separately charged bribery case.  *See United States v. Bruno*, 809 F.2d 1097, 1106 (5th Cir. 1987) (holding that evidence of

defendant's prior bribery involvement was admissible under Rule 404(b) to establish intent elements of conspiracy to commit fraud and bribery and wire fraud); *Smith*, 804 F.3d at 736 (holding that evidence of an "uncharged land-sale bribe" was admissible "in the present case" because it "required the same intent as the charged ditch-spraying-contract bribe."). Other federal courts of appeals have held the same. *United States v. Krikheli*, 461 F. App'x 7, 10 (2d Cir. 2012) (holding that extrinsic evidence of kickbacks for referrals to an imaging facility was admissible under Rule 404(b) to establish intent where defendants were charged with another healthcare kickback scheme); *United States v. McPartlin*, 595 F.2d 1321, 1343 (7th Cir. 1979) (holding that, in prosecution for corporation's bribery of city officials, evidence of defendant corporate officer's bribes of foreign officials was properly admissible to prove intent).

### 2. Undue prejudice is a high bar that can be mitigated by limiting instructions.

Under the second prong of *Beechum*, extrinsic evidence is inadmissible only if its probative value is substantially outweighed by the risk of undue prejudice. As an example, the "prejudicial effect of extrinsic evidence substantially outweighs its probative value when the relevant exception, *i.e.* motive, is uncontested, because the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudice." *Kinchen*, 729 F.3d at 473. Even where the risk of prejudice exists, the risk is "diminished by [a] district court's instructions to the jury regarding the limited purpose for which any evidence of other similar acts may be considered." *Id*. at 474 (quotation marks and alterations omitted).

### 3.  Rule 404(b)'s reach is limited in any event.

In reality, however, very little evidence actually implicates the notice requirements of Rule 404(b).  The Rule has no applicability to charged conduct.  In a conspiracy case, such as this one, "the government is not limited to overt acts pleaded in proving a conspiracy."  *United States v. Quesada*, 512 F.2d 1043, 1046 (5th Cir. 1975).  Instead, the government "may show other acts of the conspirators occurring during the life of the conspiracy" even if not charged in the indictment.  *Id*.; *United States v. Perez*, 489 F.2d 51, 70 (5th Cir. 1973) (same); *United States v. Ayres*, 434 F.2d 60, 61–62 (5th Cir. 1970) (same).

Nor do the notice requirements of Rule 404(b) apply to evidence that is intrinsic to a charged conspiracy.  "Evidence of acts *other than conduct related to the offense* is intrinsic when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged."  *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005) (emphasis added) (citation omitted).  Thus, without providing notice under Rule 404(b), the government is permitted to offer any evidence that "complete[s] the story of the crime by proving the immediate context of events in time and place."  *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996).

Finally, Rule 404(b) is not a tool for pretrial discovery; instead, the government is required to disclose only the "general nature of any [extrinsic acts] evidence that the prosecutor intends to offer at trial."  Fed. R. Evid. 404(b).  As the Advisory Committee Note for Rule 404(b) explains,

> The Committee considered and rejected a requirement that the notice
> satisfy the particularity requirements normally required of language used in
> a charging instrument … Instead, the Committee opted for a generalized
> notice provision which requires the prosecution to apprise the defense of
> the general nature of the evidence of extrinsic acts. The Committee does not
> intend that the amendment will … require the prosecution to disclose
> directly or indirectly the names and addresses of its witnesses, something it
> is currently not required to do under Federal Rule of Criminal Procedure
> 16.

Advisory Committee Note to Fed. R. Evid. 404(b); *see also United States v. Williams,* 792 F. Supp. 1120, 1134 (S.D. Ind. 1992) (rejecting request for evidence underlying Rule 404(b) notice and noting that "[n]othing in the rule indicates that the defendant is entitled to receive documents or other evidence from which the Government derives the prior bad act evidence.  The Government merely need provide the Defendants with information sufficient to indicate the general nature of the evidence.").  The "general nature" for a 404(b) notice "does not require the government to identify the witnesses upon which it intends to rely on to introduce such evidence at trial."  *United States v. Neff*, No. 3:11-CR-0152-L, 2013 WL 811903, at *1 (N.D. Tex. Mar. 4, 2013).  The reasonable notice requirement does not include additional discovery obligations.  *See United States v. Beakley*, No. 5:16-CR-013-D, 2017 WL 4338805, at *1 (N.D. Tex. Aug. 25, 2017) (rejecting the defendant's request for discovery beyond the government's obligations under *Brady*, *Bagley*, or the notice provision in Rule 404(b)); *see also United States v. Patel*, No. 01 CR 716, 2002 WL 1750948, at *1 (N.D. Ill. July 26, 2002) (Rule 404(b) does not provide for "unbridled discovery and, to that end, the government need only appraise the defense of the general nature of the evidence of extrinsic acts") (quoting Fed. R. Evid. 404(b), Notes of Committee on the Judiciary, Sen Rep. No. 93–1277)).

## EVIDENCE AT ISSUE

1.    **Evidence of the defendant's attempts to obstruct the government's access to Leslie Martin, a key witness in this case.**

At trial, regardless of whether the defendant testifies, the government may present evidence of his attempts to obstruct the government's access to Martin after learning of her status as a witness.

This evidence is intrinsic to the charged conspiracy.  Courts consistently hold that a defendant's attempts to conceal participation in a conspiracy is intrinsic evidence. *United States v. Singleton*, 458 F. App'x 169, 174 (3d Cir. 2012) (finding false deposition statements intended to conceal participation in a conspiracy intrinsic); *United States v. Skarda*, 845 F.3d 370, 377 (8th Cir. 2016) (holding that threat "show[ing] consciousness of guilt ... is considered direct evidence of the crime charged and is not subject to a Rule 404(b) analysis" (internal citations omitted)); *United States v. Cooper*, No. 4:01-CR-8BN, 2001 WL 37120128, at *1 (S.D. Miss. Dec. 12, 2001) (finding other acts allegedly done by the defendant to conceal the crimes for which he was charged intrinsic); *United States v. Hall*, No. 16-00102-BAJ-RLB, 2017 WL 2615746, at *2 (M.D. La. June 16, 2017) (finding evidence intrinsic because it evinces an attempt to conceal the alleged scheme).  It is irrelevant that the Superseding Indictment here alleges a conspiracy through "in or around June 2015" because the defendant's acts of concealment demonstrate a continuing conspiracy through at least January 2020.  *See United States v. Veng Xiong*, No. 18-CR-0243-002-CVE, 2019 WL 3381773, at *3 (N.D. Okla. July 26, 2019) ("Even though the incident occurred several months after the dates listed in the

superseding indictment, defendant's ongoing efforts to frustrate an investigation" by discouraging witness from cooperating "intrinsic to the crimes charged[.]")[3]

Even if the Court disagrees, the defendant's attempts to obstruct the government's access to a key witness are admissible under Rule 404(b).  As explained above, the evidence is relevant under the first *Beechum* prong because it evinces the defendant's consciousness of guilt regarding the charged crimes.  (*See supra*.)  The government can also easily prove the fact of the extrinsic acts by a preponderance of the evidence because the defendant's obstructive conduct was recorded.  Finally, while the evidence is undoubtedly prejudicial to the defendant, it is not unfairly so.  *See* Fed. R. Evid. 403.  Instead, the evidence is prejudicial only for completely appropriate purposes—to prove the defendant's guilty conscious.  *United States v. Bradley*, 924 F.3d 476, 483 (8th Cir. 2019), cert. denied, 140 S. Ct. 668, 205 L. Ed. 2d 444 (2019) (recognizing when considering evidence of consciousness of guilt that it is "not unfairly prejudicial merely because it tends to prove a defendant's guilt"); *United States v. Rhodes*, 736 F. App'x 375, 377 (4th Cir. 2018) (recognizing that obstructive conduct is "clearly relevant and probative of the defendant's consciousness of guilt, and courts have generally concluded that such evidence is not unfairly prejudicial."); *United States v. Johnson*, 75 F. App'x 296, 298 (5th Cir. 2003) (holding that evidence of consciousness of guilt "was not unfairly prejudicial").

---

[3] Here, concealment was plainly part of the agreement underpinning the charged conspiracy, and the defendant evidently persisted in that agreement even after his principal co-conspirators were deceased or cooperating with the government.

**Government's Notice under Rule 404(b) – Page 12**

2.     **The defendant's payment of a bribe to Caraway related to the same potential property developments a few years earlier.**

To be sure, the defendant's payment of a $3000 bribe to Caraway for official acts related to the 11th Street and Bonnie View is intrinsic to his bribe for the same purpose a few years later. *United States v. Madrid*, 610 F. App'x 359, 390 (5th Cir. 2015) (finding two briberies intrinsic because they "involved similar modus operandi, a common purpose, and occurred in close temporal proximity" and therefore "the two briberies were part of a common scheme or of the same course of conduct[.]"). Indeed, because the two briberies involved the same parties, properties, and purposes, the Court can comfortably conclude that the events are "inextricably intertwined." *Freeman*, 434 F.3d at 374. The earlier bribe also provides critical context because it demonstrates that the later bribe was not some ploy orchestrated by a cooperating witness. *Coleman*, 78 F.3d at 156.

In any event, the evidence is plainly admissible under Rule 404(b). As explained above, courts consistently hold that evidence of prior bribes are relevant for non-propensity purposes regarding later bribes. (*See supra*.) Here, the defendant's $3000 bribe to Caraway for official action related to Bonnie View is relevant to, among other things, (1) the defendant's intent and motive behind the $7000 check to Caraway charged in this case; (2) the defendant's knowledge regarding the nature of that payment, *i.e.*, innocent or illicit; (3) the defendant's plan to bribe Caraway and his preparation for that crime; and (4) the absence of any mistake, that is, any assertion that a payment that plainly appears to be a bribe on tape was actually something different. *See* Fed. R. Evid. 404(b). At the same time, the government can more than carry its evidentiary burden. It

is well established that the testimony of a single witness is sufficient to prove facts beyond a reasonable doubt, not to mention a preponderance of the evidence. *Forman v. Cain*, No. 07-4200, 2008 WL 1746710, at *12 (E.D. La. Apr. 14, 2008). Further, Caraway's anticipated testimony about the $3000 bribe is internally consistent, uncontradicted by other evidence, and detailed in that he remembers a female driver, a Corvette, an approximate dollar amount, cash as opposed to a check, and the specifics about how the remainder of the money was delivered to him.

Finally, the evidence at issue is both highly relevant and prejudicial only in the fairest of senses. Indeed, there is virtually *no risk* that the jury would improperly consider the events only as evidence of the defendant's propensity to pay bribes because that pattern is already established by the charged conduct, *i.e.*, the defendant's repeated payment of bribes to Davis over a multi-year period. At most then, even if we assume that the jury will disregard the Court's instructions—which we should not—and consider the evidence only as improper propensity evidence, the evidence would merely cumulate admissible evidence. *Cf. Parker v. Randolph*, 442 U.S. 62, 73 (1979) (plurality opinion) ("A crucial assumption ... is that juries will follow the instructions given them by the trial judge. Were this not so, it would be pointless for a trial court to instruct a jury...."). In short, because the evidence is incapable of being used in an unfairly prejudicial manner, and it is critically relevant, Rule 403 does not apply.

**3.    The defendant's failure to disclose the Federal Tax Lien against his solely held entity.**

As referenced above, concern the defendant and Carolyn Rena Davis engaged in a bribery scheme for Davis to perform official acts, in her capacity as an agent of the City of Dallas, regarding the defendant's projects which included the defendant's Royal Crest Apartment Complex and his Texas Department of Housing and Community Affairs ("TDHCA") application for Low Income Housing Tax Credit.   The evidence will show that on February 25, 2015, the defendant as "authorized representative" submitted the application to the TDHCA as the "Manager of the General Partner" of Texas Royal Crest L.P..  (Texas Royal Crest L.P. was identified as the "Applicant Entity" on the application.)  As a part of the Application, the defendant executed and signed an "Applicant Eligibility Certification."  Included in the "Applicant Eligibility Certification" was a paragraph that read as follows:

> Applicant or any other member of the Development Team is not, at the time of Application, subject to an enforcement or disciplinary action under state or federal securities law or by the NASD; is not subject to a federal tax lien; and is not the subject of proceeding in which a Governmental Entity has issued an order to imposed penalties . . . .

The second paragraph of the "Applicant Eligibility Certification," provided that,

> The undersigned, in each and all of the following capacities which it may serve or exist – Applicant, Development Owner, Developer, Guarantor of any obligation of the Applicant and/or Principal of the Applicant and hereby referred to as "Applicant," whether serving in one or mor such capacities, is hereby submitting its Application to the Department for consideration of multifamily funding.

Nonetheless, when the defendant submitted the February 25, 2015 application and the "Applicant Eligibility Certification," the defendant failed to disclose the fact that a Notice of Federal Tax Lien for $54,259.69 had been filed against his solely held entity

Amerisouth Management L.P.  Amerisouth Management L.P. is a limited partnership held by two of the defendant's other solely held entities, that is, Amerisouth Realty, L.L.C. and Amerisouth Investments L.P..  The tax identification number for both of these entities (Amerisouth Realty, L.L.C. and Amerisouth Investments L.P.) is listed as the defendant's social security number on the Form K-1s for the entities.  Further, the losses incurred by the defendant's solely held entity Amerisouth Management L.P. were reported by the defendant on his individual income tax return in 2010.  The defendant failed to disclose this Federal Tax Lien to the TDHCA.  Had the defendant disclosed the Federal Tax Lien, then his application for Low Income Housing Tax Credit would have been removed from consideration by the TDHCA.

The government submits that notice pursuant to FRE 404(b) is not required for the above evidence because it is inextricably intertwined in the facts and circumstances charged in Counts One and Two of the Superseding Indictment.  Nonetheless, notice is hereby given out of an abundance of caution.  If notice is required pursuant to FRE 404(b), the evidence outlined above is relevant for intent, preparation, plan, knowledge, identity, or absence of mistake or accident and should therefore be admitted.

Respectfully submitted,

ERIN NEALY COX
United States Attorney

/s/ *Andrew Wirmani*
Andrew O. Wirmani
Assistant United States Attorney
Texas Bar No. 24052287
1100 Commerce Street, Third Floor

**Government's Notice under Rule 404(b) – Page 16**

Dallas, Texas 75242
Telephone: 214.659.8681
Facsimile: 214.767.4100

CERTIFICATE OF SERVICE

I hereby certify that on **October 26, 2020**, I electronically filed the foregoing

document with the Clerk of Court for the United States District Court, Northern District

of Texas, using the electronic case filing system of the Court.  The electronic case filing

system sent a "Notice of Electronic Filing" to all attorneys who have consented in writing

to accept this Notice as service of this document.

/s/ *Andrew Wirmani*
Andrew O. Wirmani
Assistant United States Attorney