**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | NO. 3:19-CR-0083-M |
| RUEL M. HAMILTON | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the Motion for Acquittal or New Trial Under Rules 29 and 33 (ECF No. 375), filed by Defendant Ruel M. Hamilton. For the reasons explained below, the Motion is DENIED.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

On June 29, 2021, a jury convicted Defendant Ruel M. Hamilton of Counts One, Two, and Three of the Superseding Indictment. ECF No. 339. Count One charged Hamilton with conspiracy to commit bribery concerning programs receiving federal funds, in violation of 18 U.S.C. § 371. Counts Two and Three charged Hamilton with bribery concerning a local government receiving federal benefits, in violation of 18 U.S.C. § 666(a)(2). At trial, after the government rested, Hamilton moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which the Court took under advisement. Following trial, prior to the jury's verdict, Hamilton moved for judgment of acquittal under Rule 29, which the Court denied. Hamilton now moves for judgment of acquittal and, in the alternative, a new trial under Federal Rule of Criminal Procedure 33.

## II.    LEGAL STANDARD

Rule 29 requires the Court to grant a judgment of acquittal despite a guilty verdict where there is insufficient evidence to sustain a conviction.  Fed. R. Crim. P. 29.  Evidence to support a conviction is sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014).  A court must give great deference to the jury's verdict, reviewing evidence "in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the jury."  *United States v. Moparty*, 11 F.4th 280, 296 (5th Cir. 2021).  The Court does not determine whether the verdict was correct, but rather, "whether the jury's decision was rational."  *United States v. Martinez*, 921 F.3d 452, 466 (5th Cir. 2019).  A verdict based on "mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference" is not rational.  *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996).

Rule 33 provides that the Court may vacate judgment and grant a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33.  Generally, the Court "should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict."  *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004).

## III.    ANALYSIS

Hamilton moves for judgment of acquittal on all counts, arguing that the jurisdictional elements of § 666(b) were not met; the substantive elements of the charged offenses were not established at trial; and the jury was invited to convict Hamilton based on activities protected by the First Amendment.  In the alternative, Hamilton moves for a new trial on evidentiary grounds and errors relating to the jury instructions.

### a.   The government established § 666's jurisdictional elements.

Title 18, United States Code, Section 666(a)(2), makes it a crime for anyone who "corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more." Section 666(b) requires that the organization, government, or agency in question "receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance."

The parties entered into the following stipulation prior to trial, which was admitted into evidence as Government's Exhibit 220:

> The parties hereby stipulate and agree that the City of Dallas is a local government within the State of Texas, which in each of the one-year fiscal periods from October 1, 2013 to September 31, 2014, from October 1, 2014 to September 31, 2015, and from October 1, 2017 to September 31, 2018, received in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance or other form of Federal assistance.

Gov. Ex. 220, at 2.

Because the stipulation only provides that the City of Dallas received "in excess of $10,000," as opposed to "*benefits* in excess of $10,000," Hamilton argues that the stipulation does not satisfy the jurisdictional requirement of § 666, because no other evidence was admitted showing it was met. Hamilton further argues that the government did not identify a specific federal program, mandating acquittal of the § 666 charges. Hamilton relies primarily on *United States v. Bravo-Fernandez*, 913 F.3d 244 (1st Cir. 2019), a First Circuit case which rejected the contention that a stipulation that a local government received over $10,000 in "federal funds" satisfied the jurisdictional element of § 666.

3

As an initial matter, the Court finds Hamilton's argument here somewhat disingenuous given that, prior to trial, Hamilton volunteered "to save time . . . [by] stipulat[ing] on some or all of the 666 jurisdiction issues," yet now raises the absence of the word "benefits" in the stipulation despite having removed that language himself—without indicating that he did so—from the government's proposal that otherwise directly tracked the statutory language.[1]  *See* Resp. (ECF No. 379) at Exs. A–D.

Regardless, the Court finds that the parties' stipulation satisfies the requirements of § 666(b).  Although § 666(c) excludes certain items from being considered under the statute—namely, salary, wages, fees, or other compensation or expenses—the statute does not otherwise define "benefits," Federal program," or "Federal assistance."  *See generally* § 666.  However, citing the legislative history of § 666, the Fifth Circuit has recognized that "the term 'Federal program involving a grant, a contract, a subsidy, a loan, a guarantee, insurance, or another form of Federal assistance' should be construed broadly."  *United States v. Marmolejo*, 89 F.3d 1185, 1189 (5th Cir. 1996), *aff'd sub nom. Salinas v. United States*, 522 U.S. 52 (1997) (citing S. Rep. No. 225, 98th Cong., 2d Sess. 370 (1984)); *see also Fischer v. United States*, 529 U.S. 667, 678 (2000) ("This language indicates that Congress viewed many federal assistance programs as providing benefits to participating organizations. Coupled with the broad substantive prohibitions of subsection (a), the language of subsection (b) reveals Congress' expansive, unambiguous intent to ensure the integrity of organizations participating in federal assistance programs.").

---

[1] Specifically, the government provides email correspondence between the parties prior to trial indicating that the government sent Hamilton's counsel a draft stipulation tracking the language of § 666(b) and containing the word "benefits," which was subsequently returned with changes.  Resp. (ECF No. 379) at Exs. A–D.  Hamilton's counsel flagged two of the changes made, but did not flag for the government the removal of the word "benefits" from the proposal until moving for judgment of acquittal on these grounds following the government's case in chief.  The Court makes no comment on the government's characterization of this strategy as "sandbagging."

To that end, in similar cases, the Fifth Circuit has found the "benefits in excess of $10,000 under a Federal program" requirement can be satisfied with testimony about assistance funding received from the federal government. *See, e.g.*, *United States v. Brown*, 727 F.3d 329, 336–37 (5th Cir. 2013). For example, in *Marmolejo*, the Fifth Circuit noted that the Second Circuit in *United States v. Rooney*, 986 F.2d 31, 35 (2d Cir. 1993), had "equated 'benefit' with 'Federal assistance,'" and accordingly, grants and contracts received by Hidalgo County "[l]ikewise" constituted "Federal assistance" or a "Federal program" under § 666(b). 89 F.3d at 1190–91. Here, where the stipulation expressly provides that the City of Dallas "received in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance or other form of Federal assistance" for the relevant years, the Court finds the jurisdictional element met.

Hamilton points to the Supreme Court's opinion in *Fischer v. United States*, 529 U.S. 667 (2000), to argue that simply because the federal government is the source of the funding does not necessarily mean federal assistance constitutes "benefits" for purposes of § 666. Mot. at 16–17 (quoting *Fischer*, 529 U.S. at 681). *Fischer* addressed whether a municipal agency that operated hospitals received "benefits" within the meaning of § 666(b) if the source of the funds was a federal program, like Medicare. 529 U.S. at 670–71. However, *Fischer* concerned the question of whether payments to Medicare providers, as opposed to directly to patients, to reimburse them for the costs of services rendered pursuant to a market transaction fell under § 666(b). In contrast, the stipulation here provides that the funding in question is received directly by the City of Dallas, as opposed to an ancillary provider who provides services to the City. Moreover, the stipulation provides at least the same amount of specificity regarding the relevant federal assistance as the testimony in *Brown*, which the Fifth Circuit post-*Fischer* found to be sufficient

5

to confer federal jurisdiction under § 666(b). *See* 727 F.3d at 336–37 (testimony of city accounting manager that the city "receive[d] assistance from the federal government" in excess of $10,000 for each of the relevant years was found sufficient to establish jurisdiction under § 666(b)).

In addition, the stipulation here was accompanied by evidence, including the testimony of City of Dallas Housing Department employee Bernadette Mitchell, confirming that the City of Dallas received funding in the form of grants from the U.S. Department of Housing and Urban Development approximating $30 million per year. Trial Tr. Vol. 2-B, at 93 (June 16, 2021). Ms. Mitchell testified that $3 million in these federal funding grants were specifically available to commit toward low-income housing projects seeking low-income housing tax credits ("LIHTC"). *Id.*; *see also* Gov. Ex. 56, at 15. The jury also heard evidence regarding the LIHTC program's structure and purpose, including the fact that the program helps direct private capital toward the creation of affordable rental housing, and allows qualified low-come families to lease developed units at below market rate rents. *See, e.g.*, Gov. Ex. 56, at 4–5, 8–9. Evidence was also presented about the criteria the City of Dallas used to allocate these funds, including a scoring system that awarded points for various criteria, such as whether the project is located in an underserved area, the income level of tenants, and whether the tenant populations have special housing needs. *Id.* Accordingly, the jury heard sufficient evidence to conclude that the City of Dallas was both a recipient of federal funding and that its low-income tax credit housing program received benefits intended to promote the creation of affordable housing.

The First Circuit's decision in *Bravo-Fernandez* does not warrant a different outcome. Not only is it not binding on this Court, the stipulation in *Bravo-Fernandez* did not track the statutory language—unlike the stipulation here which, with the exception of the word "benefits,"

follows the statute—and no other evidence was presented to satisfy the requirements of § 666(b). 913 F.3d at 248.  Accordingly, *Bravo-Fernandez* is distinguishable.

Hamilton also argues that Carolyn Davis and Dwaine Caraway—the Dallas City Council members who took money from Hamilton—were not agents of the City of Dallas Housing Department, and thus money received by the Housing Department cannot satisfy the jurisdictional element under § 666(b).  However, in *United State v. Lipscomb*, 299 F.3d 303 (5th Cir. 2002), the Fifth Circuit held that "the term 'agent' plainly includes city council members," in a § 666 case where the City of Dallas, "through many of its agencies and departments, received substantial federal funds."  *Id.* at 308–09, 315.  In addition, the jury heard evidence that the Housing Department is a department of the City of Dallas, that Davis and Caraway both served on the Housing Committee and oversaw and voted on whether project resolutions— including LIHTC projects—put forward by the Housing Department should be sent to the full Council, and that as City Council members, Davis and Caraway both voted on resolutions for LIHTC applications and projects.  *See, e.g.*, Trial Tr. Vol. 2-A, at 43–44 (June 16, 2021); Trial Tr. Vol. 2-B, at 74, 76–78, 81–83, 85–86, 97; Gov. Exs. 50, 62–63.  The jury also heard evidence that the City Council formulated criteria and priorities for the Housing Department to consider when assessing potential projects.  Trial Tr. Vol. 2-B, at 81–83.  Accordingly, any purported distinction between the City of Dallas and the Housing Department for purposes of federal jurisdiction under § 666(b) is immaterial.  *See United States v. Reyes*, 239 F.3d 722, 734 (5th Cir. 2001) ("[T]he connection between federal benefits and the charged conduct is sufficient to uphold [defendant's] convictions under § 666. . . . [H]ere the charged criminal conduct related to city council members, who, by voting up or down on bids, ultimately decide how federal money will be spent.").

7

Accordingly, the Court concludes that the Government established the jurisdictional prerequisite for conviction under § 666(b).

### b.  The Government established the substantive elements of Counts 1, 2, and 3.

Hamilton next contends that government failed to prove the substantive elements of bribery under § 666, arguing first that the government did not establish a specific *quid pro quo*, and second, that the government did not prove that Hamilton entered into a corrupt agreement with Davis or Caraway, justifying acquittal of the conspiracy count (Count 1) and the substantive § 666 bribery counts (Counts 2 and 3), or a new trial.  As discussed below, these arguments fail.

First, relying on *McDonnell v. United States*, 136 S. Ct. 2355 (2016), Hamilton argues that the government was required to show both a specific *quid pro quo* and that Hamilton's payments or promises of things of value to Davis and Caraway were in connection with an "official act" consisting of "business" or "transactions" related to their office.  As an initial matter, the Court has already rejected Hamilton's legal argument that § 666 is limited to *quid pro quo* bribery or that it requires proof of an "official act" *quo*.  *See* ECF No. 216 at 4–11.  As discussed in the Court's Order denying Hamilton's Motion to Dismiss the Superseding Indictment for Failure to Charge Required Elements Under the First, Fifth and Sixth Amendments, the Fifth Circuit has never held that § 666 liability is limited only to *quid pro quo* bribery, nor has the Fifth Circuit applied an "official act" requirement—*i.e.*, that the government must prove a link between a thing of value conferred upon a public official and a specific "official act" for or because of which it was given—in the context of § 666.  *Id.*  Accordingly, the Court declines to acquit or grant a new trial on these grounds as a matter of law for the same reasons articulated in its Order on Hamilton's Motion to Dismiss.  *See id.*; *see also United States v. Roberson*, 998 F.3d 1237, 1247 (11th Cir. 2021) ("The only Circuit Courts of Appeals to

8

directly consider the issue in published cases post-*McDonnell*, the Second and Sixth, have not

imported an "official act" requirement into section 666." (citing *United States v. Ng Lap Seng*,

934 F.3d 110, 134 (2d Cir. 2019); *United States v. Porter*, 886 F.3d 562, 565–66 (6th Cir.

2018))).

      Similarly, the Court denies Hamilton's motion for a new trial under *McDonnell* on the

grounds that the Court did not define "business" or "transaction" when instructing the jury.  As

explained in the Court's Order denying Hamilton's Motion to Dismiss the Superseding

Indictment for Failure to Allege an Offense, the scope of § 666(a)(2) is not limited to financial or

commercial exchanges, but should be construed broadly to encompass "the intangible business

or transactions of a federally funded organization."  ECF No. 220, at 2–6 (quoting *United States*

*v. Robinson*, 663 F.3d 265, 275 (7th Cir. 2011)).  The Fifth Circuit has not opined otherwise, nor

does Hamilton provide any authority indicating that the Court's instruction that the jury must

find intent to influence or reward the person targeted "on any question or matter which may be

then or would thereafter be pending before that person" impermissibly broadened § 666.  Trial

Tr. Vol. 8, at 23 (June 24, 2021).

      Further, the Court concludes that the government presented sufficient evidence from

which the jury could conclude that the actions sought by Hamilton from Davis or Caraway were

"in connection with any business, transaction, or series of transactions" of the City of Dallas, as

required by § 666(a)(2).  Regarding Davis, the jury heard evidence of her role on the City of

Dallas Housing Committee to facilitate Hamilton's LIHTC application for his Royal Crest

development project, as well as the City of Dallas's award of a resolution in support of the Royal

Crest application to receive 9% low-income housing tax credits, and a conditional $168,000 loan

from the Dallas Housing Finance Corporation, which Ms. Mitchell testified is operated by the

City of Dallas (Trial Tr. Vol. 2-B, at 96).  *See, e.g.*, Gov. Exs. 82, 82A, 117.  Regarding Caraway, evidence was presented that Hamilton sought assistance in placing an item—the paid sick-leave initiative—on the Dallas City Council meeting agenda, such that it would be considered on and voted by the Council.  Gov. Exs. 9–10.  Such evidence is sufficient to uphold the jury's verdict on this point.  *See* ECF No. 220, at 7–9, 11–12.

Next, Hamilton argues that acquittal is required because the government produced no direct evidence of a corrupt agreement between Hamilton and Davis (Counts 1 and 2) or Hamilton and Caraway (Count 3), and instead relied on inferences drawn from normal, everyday activity.  In making this argument, Hamilton effectively asks the Court to reweigh the same evidence the jury heard and reject their verdict in favor of what he calls a "more plausible explanation" for his actions, namely that his payments to Hamilton and Davis were innocent charitable or political contributions, and as to Davis, that he made a legitimate offer of employment to a qualified candidate.  He also challenges the credibility of the testimony of Hamilton and Davis's co-conspirator, Jeremy Scroggins, on the grounds that he was offered leniency by the government in exchange for his testimony.

Here, the jury heard the evidence that Hamilton points to as the "normal, everyday" explanations for his behavior, including that he was charitable and often supported local political campaigns.  However, the jury also heard evidence that Hamilton offered things of value to Davis in conjunction with his affordable housing projects pending before the Dallas City Council and the Dallas City Housing Committee, and Scroggins's testimony as a co-conspirator that Hamilton offered these things of value to Davis because he wanted something in return.  The jury also heard that, after discussing future development projects in Caraway's district and asking Caraway for assistance in getting a referendum regarding a sick-leave initiative on the

Council agenda, Hamilton wrote Caraway a $7000 check and asked whether it should be made out to Caraway's campaign.

A defendant "cannot obtain an acquittal simply by ignoring inferences that can logically be drawn from the totality of the evidence." *United States v. Martinez*, 921 F.3d 452, 466 (5th Cir. 2019). In addition, "credibility determinations are the purview of the trier-of-fact." *United States v. Bates*, 850 F.3d 807, 811 (5th Cir. 2017). The Court declines to invade the province of the jury as the trier-of-fact, and finds that there was sufficient evidence from which the jury could reasonably conclude that Hamilton committed the crimes charged.

Hamilton further maintains that to satisfy the First Amendment under *McCormick v. United States*, 500 U.S. 257 (1991), the government was required to show Hamilton's political contributions to Davis were made in return for an explicit promise to perform or not perform an official act. Accordingly, Hamilton argues that the government's use of a timeline, comparing Hamilton's monetary contributions to Davis against various deadlines and votes for his tax credit applications, was designed merely to imply an agreement and was insufficient to sustain a conviction.

However, as stated in the Court's Order denying Hamilton's Motion to Dismiss the Superseding Indictment for Failure to Charge Required Elements Under the First, Fifth and Sixth Amendments, it is not at all clear that *McCormick* applies to alleged violations of § 666.[2] *See* ECF No. 216 at 8. In cases involving other bribery statutes, namely, honest services fraud and bribery under 18 U.S.C. § 201, the Fifth Circuit has held that "a particular, specified act need not be identified at the time of payment to satisfy the *quid pro quo* requirement, so long as the payor

---

[2] *McCormick* involved the Hobbs Act, 18 U.S.C. § 1951, extortion under color of official right. The *quid pro quo* "element of the offense is derived from the statutory requirement that the official receive payment under color of official right." *Evans v. United States*, 504 U.S. 255, 274 (1992) (Kennedy, J., concurring). Section 666, by contrast, does not use the "under color of official right" language.

11

and payee agreed upon a specific *type* of action to be taken in the future." *United States v. Whitfield,* 590 F.3d 325, 350 (5th Cir. 2009) (honest services fraud). To that end, the Fifth Circuit has favorably cited cases from other circuits holding that "it is sufficient if the public official understands that he or she is expected as a result of the payment to exercise particular kinds of influence . . . as specific opportunities arise," *United States v. Tomblin*, 46 F.3d 1369, 1381 n.19 (5th Cir. 1995) (18 U.S.C. § 201) (quoting *United States v. Coyne*, 4 F.3d 100, 114 (2d Cir. 1993)), and that "the government need not show that the defendant intended for his payments to be tied to specific official acts." *Id.* (quoting *United States v. Jennings*, 160 F.3d 1006, 1013–14 (4th Cir. 1998)).

Accordingly, because "[t]he law only requires that the Government prove the specific intent to give or receive something of value in exchange for an official act' to be performed sometime in the future," *Whitfield*, 590 F.3d at 353, the fact that no written, explicit agreement between Hamilton and Davis was presented to the jury is irrelevant to uphold Hamilton's conviction on Counts 1 and 2. There is no requirement that the *quid pro quo* agreement be expressly articulated aloud. Sufficient evidence was presented at trial to establish that Hamilton and Davis had an agreement in which Hamilton provided things of value in exchange for Davis exercising her influence over his LIHTC projects pending before the City Council and Dallas City Housing Committee. Such influence included Davis voting in support of Hamilton's projects, as well as Davis pushing the Housing Department to support the Royal Crest project even though it was not in her district—something that Housing Chair Bernadette Mitchell testified was "unusual" and that she could not recall any other City Councilmember doing. *E.g.*, Trial Tr. Vol. 2-B, at 110–12; Trial Tr. Vol. 3-A, at 49–50 (June 17, 2021).

12

Accordingly, because sufficient evidence exists in the record to establish the substantive elements of bribery under § 666, the Court declines to disturb the jury's verdict on Counts 1, 2, and 3 on these grounds.  Nor is a new trial needed under *McCormick*.  The jury was appropriately instructed that "[i]t is not necessary that the thing of value be correlated with a specific official act," and "it is sufficient if the thing of value is given with the intent that the agent of the local government will exercise particular kinds of influence as specific opportunities arise."  Trial Tr. Vol. 8, at 23–24.  Such instructions comport with Fifth Circuit precedent and do not warrant a new trial.

### c.  First Amendment

Hamilton argues separately that a new trial is warranted at least as to Counts 1 and 2 because the jury was not instructed to require *quid pro quo* bribery, and the Court did not include Hamilton's proposed jury instructions defining bribery, or distinguishing bribery from gratuities.  Mot. at 33–37.  According to Hamilton, failure to include such instructions invited the jury to convict based on any action taken with intent to influence, such that Hamilton was improperly convicted based on activity protected by the First Amendment, namely lobbying, making campaign contributions, and offering to employ Davis as a lobbyist after her term on the City Council expired.

As discussed previously, § 666 does not require *quid pro quo* bribery.  Moreover, Hamilton concedes the Fifth Circuit has yet to take a position on whether § 666 forbids taking gratuities in addition to bribes.  *See* Mot. at 36.  The statute criminalizes giving or offering "anything of value . . .with intent to influence *or reward*," and the majority of circuits to have considered this language have concluded that § 666 covers gratuities as well as bribes.  *See* 18 U.S.C. § 666(a)(2) (emphasis added); *United States v. Anderson*, 517 F.3d 953, 961 (7th Cir.

13

2008) ("It makes no difference that the money was not delivered before the action was taken; the intent was to influence Rieser's action."); *United States v. Ganim*, 510 F.3d 134, 150 (2d Cir. 2007) ("We have interpreted § 666 to impose criminal liability for both kinds of crime proscribed by § 201: bribery and illegal gratuities."); *United States v. Zimmermann*, 509 F.3d 920, 927 (8th Cir. 2007) ("Section 666(a)(1)(B) prohibits both the acceptance of bribes and the acceptance of gratuities intended to be a bonus for taking official action.").  Accordingly, although the Court concludes that this is a bribery case, based on the open state of the law in the Fifth Circuit, a new trial is not necessary because the jury instructions did not distinguish between bribes and gratuities as the basis for conviction.

Moreover, as discussed in the Court's Order denying Hamilton's Motion to Dismiss Counts 1 and 2 Based on the First Amendment (ECF No. 218), although lobbying is protected by the First Amendment, there are limits; lobbying is protected activity only if it is "not in connection with an effort to control the exercise of an officeholder's duties."  *See McCutcheon v. FEC*, 572 U.S. 185, 208 (2014) (plurality op.).  Hamilton points to no authority indicating that campaign contributions cannot form the basis of a conviction under § 666, or that campaign contributions corruptly given with an intent to influence or reward an elected official is lobbying protected by the First Amendment.  Nor does Hamilton point to any authority in the Fifth Circuit requiring that jury instructions be given in this context.

Nor does the Court agree with Hamilton that the government constructively amended the Superseding Indictment during trial, resulting in a variance requiring a new trial.  Hamilton argues that he was charged on a theory of bribery alone, but that the government's theory of liability shifted from Hamilton disguising bribes to Davis as donations to Scroggins's nonprofit, Hip Hop Government, to a theory that the payments to Hip Hop Government, even if

14

legitimately charitable in nature, could constitute illegal payments under § 666(a)(2) if given with the intent to influence or reward Davis.

"A material variance occurs 'when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense.'"  *United States v. Mitchell*, 484 F.3d 762, 769 (5th Cir. 2007) (quoting *United States v. Delgado*, 401 F.3d 290, 295 (5th Cir. 2005)).  "A variance is material if it prejudices the defendant's 'substantial rights,' either by surprising the defendant at trial or by placing the defendant at risk of double jeopardy."  *United States v. Robinson*, 974 F.2d 575, 578 (5th Cir. 1992).  "In contrast, a variance is immaterial if it does not 'impair the defendant's ability to defend himself through failing to identify the nature of the charge.'"  *Id.* (quoting *United States v. Eaton*, 501 F.2d 77, 79 (5th Cir. 1975)).

Here, Hamilton points to four paragraphs of the Superseding Indictment as the basis for his constructive amendment argument.  Mot. at 43 (citing Superseding Indictment (ECF No. 139) ¶¶ 10, 16–17, 19).  These paragraphs state that the purpose of the conspiracy was for Davis to enrich herself through bribe payments and other things of value while on the City Council and to establish herself as a consultant and lobbyist once off the Council (¶ 10), that to disguise bribe payments, Hamilton wrote checks payable to Scroggins's nonprofit, which Scoggins then deposited or cashed and gave the proceeds to Davis (¶¶ 16–17), and that Davis concealed her expected and actual receipt of things of value by not disclosing conflicts of interest, omitting sources of income on her financial disclosure filed with the City, and failing to recuse herself from votes (¶ 19).  The proof at trial did not differ materially from these facts alleged in the Superseding Indictment.  Accordingly, although Hamilton refers to the government's closing arguments as crafting a different narrative, any variance was immaterial.

15

For the foregoing reasons, Hamilton's request for a new trial on First Amendment grounds is denied.

### d. Evidentiary Rulings

Hamilton next argues that a new trial is warranted under Rule 33 based on purportedly erroneous evidentiary rulings.  First, Hamilton argues that the Court improperly admitted the testimony of Hamilton's co-conspirator, Jeremy Scroggins.  Hamilton raises multiple issues with Scroggins's testimony, including that the government did not satisfy the hearsay exception under Federal Rule of Evidence 801(d)(2)(E) with regards to Scroggins's testimony, and that Scroggins's testimony should have been excluded under Rules 602 and 802 because it was not based on his personal knowledge.

To determine the admissibility of Davis's out-of-court co-conspirator hearsay statements under Rule 801(d)(2)(E), the Court conducted a hearing pursuant to *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc), and reviewed extensive briefing by the parties to determine whether the government could establish the necessary predicate facts.  *See* ECF No. 314.  During trial, the Court concluded that the government had established the existence of a conspiracy for purposes of Rule 801(d)(2)(e) between Hamilton, Davis, and Scroggins to coordinate Hamilton's providing things of value to Davis or to third parties at her request.  Trial Tr. Vol. 3-A, at 67–69. The Court also noted on the record its finding that the statements at issue rose above the level of idle chatter, and were made by one of the co-conspirators during the alleged conspiracy in furtherance of and to advance an ultimate object of the co-conspirators' efforts, relating either to concealing activities, conversations about providing additional things of value to Davis or to explain the workings of the joint venture and agreement, or to bolster confidence that the agreement would not be detected.  *Id.*  As the government satisfied the necessary prerequisite

facts for the co-conspirator hearsay exception to apply under Rule 801(d)(2)(E), the Court admitted certain out-of-court recordings of conversations between Davis and Scroggins, and permitted Scroggins to testify about his dealings with Davis.

Now, in moving for a new trial, Hamilton does not specify which parts of Scroggins's testimony he believes constituted inadmissible hearsay or statements not made in furtherance of the conspiracy, and instead appears to be making a blanket objection to Scroggins's "impermissible" testimony, arguing that it should have been struck in its entirety although he made no such request during trial.  Mot. at 47.  Hamilton points to trial testimony describing conversations in which Davis told Scroggins she "would never vote on anything or do anything that would  . . .put [them] in any kind of situation" and that she recused herself from Council votes when there was "any kind of conflict."  Mot. at 48 (quoting Trial Tr. Vol. 3-A, at 90–91). Hamilton argues that, based on this testimony, Scroggins believed Davis and Hamilton were not doing anything criminal, and therefore there was no conspiracy and no statements made in furtherance of that conspiracy were admissible under Rule 801(d)(2)(E).

The fact that Scroggins may or may not have at some point believed the arrangement between Davis, Hamilton, and Scroggins was not criminal is irrelevant; in determining whether Rule 801(d)(2)(E) applies, a conspiracy may be shown "merely by [persons] engaging in a joint plan[ ] . . . that was non-criminal in nature."  *United States v. Nelson*, 732 F.3d 504, 516 (5th Cir. 2013).  After reviewing the statements identified by Hamilton as improperly admitted, the Court finds that they rose above the level of idle chatter and were all made in furtherance of the joint venture between Hamilton, Scroggins, and Davis to provide things of value to Davis or third parties at Davis's request, including statements relating to concealing activities, conversations about providing additional things of value to Davis or to explain the workings of the joint

17

venture and agreement, or to bolster confidence that the agreement would not be detected. Scroggins's testimony was properly admitted.

In addition, Hamilton's argument that Scroggins speculated as to Davis's state of mind and did not testify from his own knowledge is undermined by Scroggins's testimony describing his extensive personal and working relationship with Davis that lasted at least ten years. *E.g.*, Trial Tr. Vol. 3-A, at 76–77. Scroggins appropriately testified from his own personal knowledge and experience regarding his conversations and interactions with Davis, including his inferences and opinions as to whether she was telling the truth at various times. *See United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999) ("Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience.").

Next, Hamilton argues that the Court improperly excluded statements made by Davis indicating that she had not accepted bribes from Hamilton and that she desired to recant her guilty plea. Prior to trial, the Court granted the government's Motion in *Limine* seeking to exclude any statements relating to Davis's intent to withdraw her guilty plea, that she was pressured to plead guilty, or that she never told the FBI she accepted bribes, with the caveat that such statements would be admissible only to show a prior inconsistent statement of the witness— *i.e.*, had the government sought to admit her guilty plea. *See* Pretrial Conf. Tr. (ECF No. 275), at 55 (Oct. 28, 2020). The government never introduced Davis's guilty plea into evidence, and accordingly, Davis's statements purporting to recant her plea were properly excluded as hearsay, not subject to adversarial testing, and not admissible under any exception to the hearsay rule.

Finally, Hamilton identifies certain testimony during the government's cross-examination of defense witnesses, which Hamilton complains constituted improper evidence that led the jury to believe Hamilton violated campaign finance laws, and should have been excluded under

Federal Rule of Evidence 403.  Each of the challenged testimony pointed to by Hamilton consists of statements relating to the $1000 limit for personal campaign contributions to Dallas City Council members.  *See* Mot. at 52–53 (citing Trial Tr. Vol. 5-B, at 132 (June 21, 2021), Trial Tr. Vol. 6-B, at 29 (June 22, 2021), and Trial Tr. Vol. 6-B, at 129).  No objections were made to this testimony at trial.  In addition, the Court notes that defense counsel elucidated similar testimony indicating that "six contributions of a thousand dollars" to a city councilmember were returned "because they were more than a thousand dollars."  Trial Tr. Vol. 5-B, at 127–28.  The Court concludes that the admission of the challenged testimony was not erroneous; alternatively, any prejudice resulting from the admission of this evidence does not constitute a miscarriage of justice warranting a new trial.

### e.  Jury Instructions

Hamilton further requests a new trial on the grounds that the jury should have been instructed on entrapment, unanimity of theory, and good faith.

### i.  Entrapment

Hamilton argues that he was entitled to offer an entrapment defense as to Count 3, regarding the $7000 check Hamilton wrote to Caraway, and that the lack of a jury instruction on entrapment warrants a new trial.  To establish the defense of entrapment, Hamilton was required to make a prima facie showing of (1) a lack of disposition to commit the offense and (2) some governmental involvement and inducement more substantial than simply providing an opportunity to commit the offense.  *United States v. Macedo-Flores*, 788 F.3d 181, 187–88 (5th Cir. 2015).  "Only after the defendant has made a prima facie showing of entrapment by showing both elements—lack of predisposition and governmental inducement—is the defendant entitled to an entrapment instruction by the court."  *Id.*; *see also United States v. Bradfield*, 113 F.3d 515,

522 (5th Cir. 1997) ("A defendant is entitled to an entrapment instruction when there is sufficient evidence from which a reasonable jury could find entrapment.").

Hamilton argues that he established both lack of predisposition and inducement as a matter of law, warranting acquittal or, in the alternative, a new trial. Specifically, Hamilton contends that his lack of a prior criminal record and the evidence of his philanthropic and charitable character presented at trial established a prima facie case that he lacked predisposition to commit a crime. He also points to statements by Caraway during their August 2, 2018, phone call and August 3, 2018, in-person meeting, during which Caraway purportedly made pleas to Hamilton based on need, sympathy, and friendship, which allegedly induced Hamilton to write a $7,000 check to Caraway. *See* Mot. at 57.

Hamilton did not make a prima facie showing of lack of predisposition. "Predisposition . . . focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *United States v. Stephens*, 717 F.3d 440, 445 (5th Cir. 2013) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)) (internal quotation marks omitted). "A lack of predisposition can appear from, for example, lack of prior interest or experience related to the crime, significant hesitation or unwillingness, or attempts to return discussion to lawful conduct." *United States v. Theagene*, 565 F.3d 911, 920 (5th Cir. 2009). "Where a defendant 'promptly avail[s] himself of [a] criminal opportunity, it is unlikely that his entrapment defense [warrants] a jury instruction.'" *Stephens*, 717 F.3d at 445 (alterations in original) (quoting *Jacobson v. United States*, 503 U.S. 540, 550 (1992)).

Here, the evidence was that Hamilton had previously made improper payments to Davis in connection with her work on the City Council, reflecting experience related to the charged

20

conduct of bribery.  The evidence also showed a lack of hesitation to write the $7000 check in question.  Hamilton asked Caraway "what can I do for you right now today," and in response to Caraway's answer that Hamilton could "answer that bill that I just threw out there for about [$6200]," Hamilton confirmed that Caraway would "follow through with the Mayor," before he retrieved his checkbook.  Gov. Ex. 9; Gov. Ex. 10, at 20–22.  Hamilton stated that the only thing stopping him from going forward was "a pen," then proceeded to write a check for more than Caraway requested.  Gov. Ex. 9; Gov. Ex. 10, at 22.  "[A] defendant's ready and willing participation" alone suffices to prove predisposition.  *United States v. Reyes*, 239 F.3d 722, 739 (5th Cir. 2001).

Regarding inducement, "[t]he critical determination in an entrapment defense is whether criminal intent originated with the defendant or with the government agents."  *Bradfield*, 113 F.3d at 521.  Inducement requires proof of "some governmental involvement and inducement more substantial than simply providing an opportunity or facilities to commit the offense."  *Id.* "It does not constitute entrapment for government agents to merely conduct undercover operations or otherwise employ 'artifice and stratagem' to catch criminals."  *Theagene,* 565 F.3d at 922.  Instead, "[i]nducement . . .  appear[s] when government agents persist in encouraging criminality after a defendant rejects overtures."  *Id.* (emphasis added).

Courts have identified inducement when government agents harass or threaten a defendant, or take "actions designed specifically to take advantage of the defendant's weaknesses."  *See  United States v. Gutierrez*, 343 F.3d 415, 420 (5th Cir. 2003).  For example, government inducement was found in *Bradfield,* when police paid a confidential informant a contingency fee to successfully induce Bradfield to participate in a drug deal.  113 F.3d at 518, 523.  The informant made "approximately eighteen calls during April 1992, in an unrelenting

campaign to entice Bradfield to do a drug deal." *Id.* at 523.  In that case, the Fifth Circuit concluded that there was "a plethora of evidence of government inducement," which was "more than sufficient to establish a prima facie showing [of inducement]." *Id.*

In contrast, here, the evidence presented at trial indicates that, at most, the government provided an opportunity for Hamilton to commit the bribery offense or employed artifice and stratagem in encouraging Caraway to set up the in-person August 3 meeting with Hamilton, neither of which rise to the level of inducement required under Fifth Circuit precedent.  Nor is there any suggestion that, through Caraway, the government "persisted" or "harassed" Hamilton in prompting the conduct underlying the offense, or that Hamilton rejected overtures encouraging his criminal behavior.  *Cf. United States v. Sandoval*, 20 F.3d 134, 136 (5th Cir. 1994) (inducement found where government agent repeatedly reminded defendant of tax liability and made ten requests of something personal in exchange for helping reduce the defendant's tax liability).  When Caraway brought up developments relating to Eleventh Street, Hamilton asked questions and contributed to the conversation, and did not need to be prompted or encouraged to stay on that topic.

Hamilton's argument that Caraway resorted to pleas based on need, sympathy or friendship to induce Hamilton's payment is likewise unpersuasive to show inducement. Hamilton relies primarily on *Sherman v. United States*, 356 U.S. 369 (1958), and *United States v. Nations*, 764 F.2d 1073 (5th Cir. 1985), but neither align with the facts presented here.  Both cases involved repeated meetings between the defendant and the government agent and a shared history or close friendship, unlike here, where Caraway and Hamilton had one telephone conversation that lasted less than ten minutes and one in-person meeting the next day, and there was no evidence of a particularly close relationship between the two.  *See* Gov. Exs. 6–10.

22

Accordingly, because there was not sufficient evidence from which a reasonable jury could find entrapment, Hamilton was not entitled to an entrapment instruction.

### ii.  Unanimity of Theory

Hamilton requests a new trial because the jury was not instructed that it had to reach a unanimous verdict on a given basis of liability.  Hamilton's argument is premised on his since-rejected arguments that conviction under § 666 requires proof of a specific *quid pro quo*, or an "official act" *quo* by Davis and Caraway related to business or transactions of their offices. Because the Court has already concluded that the government was not required to establish that Hamilton bribed Davis and Caraway with a specific *quid* to obtain a particular *quo*, the jury could not find different theories of guilt as to the substantive § 666 bribery charges.  Regarding the conspiracy charge under 18 U.S.C. § 371, the Fifth Circuit has recognized that "[w]hen twelve jurors believe beyond a reasonable doubt that the defendant . . . agreed to achieve an ultimate criminal purpose against the United States, all jurors need not agree on which particular offenses that defendant intended personally to commit as long as there is but one conspiracy that encompasses the particular offenses charged."  *United States v. Dillman*, 15 F.3d 384, 392 (5th Cir. 1994).  Accordingly, a unanimity instruction was not necessary.

### iii.  Good faith

Finally, the Court denies Hamilton's request for a new trial on the grounds that the jury was not instructed on a good faith defense or on the defendant's theory of the case.  The Court instructed the jury on "willfully" as related to Count 1, and "corruptly" as related to Counts 2 and 3, and a further good faith instruction was unnecessary.  Trial Tr. Vol. 7-B, at 42–43 (June 23, 2021); *see United States v. Simkanin*, 420 F.3d 397, 411 (5th Cir. 2005) ("[T]he district court . . . was not required to include a specific instruction on good[ ]faith because it adequately

23

instructed the jury on the meaning of willfulness . . . ."); *United States v. Storm*, 36 F.3d 1289, 1294 (5th Cir. 1994); *see also United States v. Blagojevich*, 794 F.3d 729, 739 (7th Cir. 2015) ("The "good faith" argument is just a stalking horse for the contention that the *quid pro quo* must be stated explicitly and cannot be implied from hints and nudges; as we have rejected that contention directly, it cannot be resuscitated in the form of a "good faith" instruction untethered from statutory language.").

Nor is a new trial warranted because the Court did not adopt Hamilton's requested instruction that "[i]f the jury accepts Mr. Hamilton's theory of the case, he must be acquitted." Trial Tr. Vol. 7-B, at 49. The crux of Hamilton's argument is that because the jury was not told to acquit if it found that Hamilton's intent reflected good faith—*i.e.*, if Hamilton provided things of value to Davis and Caraway out of a belief that his actions were good for the community or out of friendship or compassion—he lacked the requisite intent to commit the charged offenses. *See* Reply (ECF No. 381) at 29. However, the jury was sufficiently instructed on the intent requirement that the government had to prove for each of the charged offenses, including that the government was required to prove each element, including intent, beyond a reasonable doubt. Trial Tr. Vol. 8, at 16, 18, 20–24. It was not necessary to further instruct the jury to acquit if it did not find the intent element satisfied.

## IV.    CONCLUSION

The Court has considered the remainder of the arguments for judgment of acquittal or a new trial made in Hamilton's Motion and finds that they are without merit.[3] The Motion is **DENIED**.

---

[3] In this Order, the Court does not purport to comment on every nuance of every argument put forth by Hamilton, but each argument has been weighed and considered by the Court in reaching its decision.

**SO ORDERED**.

November 8, 2021.

BARBARA M. G. LYNN
CHIEF JUDGE