IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:19-cr-083-M-1 |
| | ) | Judge Barbara M. G. Lynn |
| RUEL M. HAMILTON | ) | |
| | ) | |

**MR. HAMILTON'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OR ARGUMENT
CONCERNING THE LEGALITY OF HIS CAMPAIGN CONTRIBUTIONS UNDER
TEXAS CAMPAIGN FINANCE LAWS**

Abbe David Lowell, Bar No. 358651DC      Thomas M. Melsheimer, Bar No. 13922550TX
Christopher D. Man, Bar No. 453553DC    Dion J. Robbins, Bar No. 488888GA
Kaitlin Pierce Marino, Bar No. 242020DC  WINSTON & STRAWN LLP
WINSTON & STRAWN LLP                      2121 N. Pearl Street, Suite 900
1901 L Street, N.W.                       Dallas, TX 75201
Washington, DC 20006                      TMelsheimer@winston.com
ADLowell@winston.com                      214-453-6100 (ph)
202-282-5000 (ph)                         214-453-6400 (fax)
202-282-5100 (fax)

*Counsel for Defendant Ruel M. Hamilton*

**TABLE OF CONTENTS**

Page

INTRODUCTION....................................................................................................................1

ARGUMENT..........................................................................................................................2

    I.    EVIDENCE CONCERNING THE LEGALITY OF MR. HAMILTON'S CAMPAIGN CONTRIBUTIONS UNDER TEXAS LAW IS INADMISSIBLE.......2

    II.   THE COURT SHOULD ACCEPT A STIPULATION IN LIEU OF ANY OTHER EVIDENCE .................................................................................................6

CONCLUSION....................................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Filar v. Chicago Sch. Bd. of Trustees*,
   375 F. App'x 607 (6th Cir. 2010) ................................................................................ 6

*Old Chief v. United States*,
   519 U.S. 172 (1997) ...................................................................................................... 7

*Ricketts v. City of Hartford*,
   74 F.3d 1397 (2d Cir. 1996) ......................................................................................... 6

*United States v. Beechum*,
   582 F.2d 898 (5th Cir. 1978) ..................................................................................... 9-10

*United States v. Davenport*,
   1994 WL 523653 (5th Cir. 1994) .................................................................................. 6

*United States v. Olive*,
   2012 WL 5866138 (M.D. Tenn. Nov. 19, 2012) ........................................................... 6

*United States v. Ramos*,
   537 F.3d 439 (5th Cir. 2008) ......................................................................................... 6

*United States v. Speltzer*,
   535 F.2d 950 (5th Cir. 1976) ......................................................................................... 7

*United States v. Yeagin*,
   927 F.2d 798 (5th Cir. 1991) ......................................................................................... 7

**Other Authorities**

Alexandra Vernis, *Dallas campaign finance violations rampant*, Lobby Comply
   (Feb. 28, 2019), ............................................................................................................. 3

Corbett Smith, *Dallas lawyer's young children are listed as big donors for 3 City
   Council members*, The Dallas Morning News (Jan. 30, 2019) ...................................... 3

Corbett Smith, *Most Dallas City Council members' campaign finance reports
   show violations – but no one enforces the rules*, The Dallas Morning News
   (Feb. 27, 2019), ............................................................................................................. 3

Tim Rogers, *Councilman Scott Griggs returns campaign contributions from
   Hamilton children*, D Magazine (Feb. 6, 2019), ........................................................... 4

The Dallas Morning News (Feb. 27, 2019) .......................................................................... 3

Fed. R. Evid. 403...................................................................................................... 1, 2, 7

Fed. R. Evid. 404(b) ................................................................................................ 1, 2, 8

https://www.merriam-webster.com/dictionary/skirt.................................................... 2

**INTRODUCTION**

Given how the evidence was solicited and admitted at the first trial, Mr. Hamilton's pre-trial concerns about the prosecution's intended us of campaign contribution laws and rules turned into reality. Therefore, Mr. Hamilton requests that the Court exclude any evidence or argument by the prosecution that his contributions to candidates for Dallas City Council ("DCC") violated Texas campaign finance laws. Mr. Hamilton is not on trial for violating any state or local campaign finance law, but the prosecution attempted to make that an issue in the last trial and it should be prevented from doing so in a retrial. The prosecution is not allowed to offer evidence or argue that because a defendant committed some other crime, he must have committed the crime for which he is charged too, but that fundamental principle carries even more force here, where the supposed "other crime" is no crime at all. *See* Fed. R. Evid. 404(b). With knowledge of how the prosecution's misused this evidence before, if repeated, Mr. Hamilton will have to defend himself against this uncharged allegation, resulting in a "trial in a trial" with needless delay and the real potential for jury confusion. The evidence is of no legitimate probative value and whatever probative value it may have "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time." Fed. R. Evid. 403.

Before the first trial, the Court recognized that admitting evidence to suggest that Mr. Hamilton violated some Texas campaign finance law was "unduly prejudicial," but the Court's effort to cabin such evidence left the prosecution a big enough opening that allowed evidence and argument concerning a violation of Texas campaign finance laws anyway, which tainted the jury. (10/28/20 Tr. at 86.) Mr. Hamilton asks that the Court plug this hole in its prior ruling, so that the evidence and argument that it attempted to exclude stays out.

**ARGUMENT**

**I.      EVIDENCE CONCERNING THE LEGALITY OF MR. HAMILTON'S CAMPAIGN CONTRIBUTIONS UNDER TEXAS LAW IS INADMISSIBLE**

Evidence or argument concerning the legality of Mr. Hamilton's campaign contributions under Texas campaign finance laws should be excluded because they come nowhere close to satisfying the balancing test under Rule 403.  In the first place, there is nothing to put on the side of the scale favoring its admissibility.

Mr. Hamilton is not charged with any crime concerning Texas campaign finance laws and, to the contrary, the grand jury seemed to reject that such laws were violated.  The Superseding Indictment alleges that Mr. Hamilton "skirt[ed] campaign finance laws," rather than allege that such laws were broken.  (Dkt. 139, ¶18.)  In this context, the word "skirt" means to "avoid," or "miss by a narrow margin."  *See* https://www.merriam-webster.com/dictionary/skirt.  It does not mean violating the law.

Nor is the claim that Mr. Hamilton skirted finance laws at all probative of the central issue left in the case, whether Mr. Hamilton committed bribery.  Evidence of prior bad acts is inadmissible under Rule 404(b) because it undermines the presumption of innocence to suggest that someone may be guilty of a crime because they have done something distasteful in the past. Moreover, as the Superseding Indictment suggests, Mr. Hamilton did not do anything illegal under those laws.  Indeed, despite the press calling attention to numerous people making campaign donations in the same manner as Mr. Hamilton, no one ever has been charged with a crime for doing so.

Moreover, the prosecution's theory that Mr. Hamilton disguised his campaign donations by writing the name of someone else on the memo line of the checks used to make campaign contributions is ludicrous.  On their face, the checks are signed by Mr. Hamilton and drawn from

2

his account, leaving no ambiguity as to who was donating this money. This is no different than checks that someone may give to charity, noting in the memo line that the donation is made to honor or in memory of a friend or loved one.

To be clear, this is *not* a violation of Texas campaign finance laws and, as discussed below, Mr. Hamilton had been assured that this manner of making campaign donations was both legal and commonplace. It is true that some in the press have criticized this practice after Mr. Hamilton and many others made donations in this manner, but not a single person *ever* has been charged with a crime for doing so. That certainly suggests that Texas law enforcement officials do not read Texas' law as these federal prosecutors now do. In addition to Mr. Hamilton not being placed on notice that this was a crime, he also was affirmatively instructed by candidates that this was a legal practice and being done by others. *See infra* n.3. Thus, this evidence cannot fairly be used to demonstrate any sort of consciousness of wrongdoing by Mr. Hamilton.

Over the years, there has been significant media attention surrounding contributions to DCC campaigns and the reporting of such contributions.[1] For instance, *D Magazine* published an article scrutinizing Mr. Hamilton's practice of making campaign contributions in local races on

---

[1] *See* Corbett Smith, *Dallas lawyer's young children are listed as big donors for 3 City Council members*, The Dallas Morning News (Jan. 30, 2019), https://www.dallasnews.com/news/ 2019/01/30/dallas-lawyer-s-young-children-are-listed-as-big-donors-for-3-city-council-members/ (criticizing a donor for making campaign contributions on behalf of his minor children); Corbett Smith, *Most Dallas City Council members' campaign finance reports show violations – but no one enforces the rules*, The Dallas Morning News (Feb. 27, 2019), https://www. dallasnews.com/news/2019/02/27/most-dallas-city-council-members-campaign-finance-reports- show-violations-but-no-one-enforces-rules/ (noting that there have been "more than 30 questionable donations reported by 10 of the 14 council district reps" and "[a] dozen more issues showed up on reports of former council members and losing candidates."); Alexandra Vernis, *Dallas campaign finance violations rampant*, Lobby Comply (Feb. 28, 2019), https:// stateandfed.com/lobbycomply/campaign-finance/dallas-campaign-finance-violations-rampant/ (explaining that there is disagreement as to whether the Texas Ethics Commission or the Dallas City Secretary is responsible for the oversight of campaign finance reporting in Dallas).

behalf of his family members.[2]  Although some in the press have suggested that this practice is

unseemly, it is worth emphasizing that no one has been charged under the theory that it is illegal,

and it is difficult to imagine that any court would allow such a flimsy charge to proceed to trial.

The record also is clear that Mr. Hamilton certainly did not intend to break those laws as

he was assured by candidates that it was lawful, a common practice, and a City Councilmember

instructed him on what to do.  The recordings provided by the prosecution demonstrate that then-

Councilmember Carolyn Davis instructed Mr. Hamilton to write contribution checks in this

manner and described how she had confirmed with City officials that the practice was lawful.[3]  In

fact, when Mr. Hamilton made a mistake in writing the name of a campaign and had to re-write

certain checks, Davis contacted him to make sure that the corrected checks would be written in

this manner.[4]  Mr. Hamilton was clearly under the impression that then-Councilwoman Davis was

---

[2] Tim Rogers, *Councilman Scott Griggs returns campaign contributions from Hamilton children*,
D Magazine (Feb. 6, 2019), https://www.dmagazine.com/frontburner/2019/02/councilman-scott-
griggs-returns-campaign-contributions-from-hamilton-children/.

[3] GOV_158, 4/23/15 recorded telephone call:
    MS. DAVIS: . . . the rule is the name can be anybody as long as you don't give a check to one
    -- for one -- as long as you don't get one check for $10,000.  You can get -- the -- the check
    can come from your brother.  Check-- check can come from your momma.  Check can come
    from your daddy.
    MR. HAMILTON:  Okay.

GOV_56411, 4/28/15 recorded telephone call:
    MS. DAVIS:  Ruel -- I told Ruel -- Ruel had his checkbook, I said, Ruel, you just can't write
    it under one name, but you can write different names -- and we went to the City Secretary.
    They said, Ms. Davis, they can write different name and it can be under the same checkbook,
    but it has to be in different names in the memo.  Ruel did --
    MR. DUNCAN:  Yes.
    MS. DAVIS:  -- exactly what I asked him to do.
    MR. DUNCAN:  Yes.

[4] GOV_139, February 26, 2015 Recorded Telephone Call:
    MS. DAVIS:  Hey sweetheart.  We've got a bit of a problem.  The checks that you've written.
    I didn't pay attention to them.  They have Tiffinni Young for City Council.  Bank of America
    won't take them so they have to -- it has to be Tiffinni Young Campaign . . .  I got all -- she
    gave them all back to me and then I just need to hook up with you and give them back to you.
    . . .

being careful to have him follow the law.[5] No one in their right mind would use checks from their own bank accounts with their name printed on each one and sign their own name to them if they thought doing so was illegal.[6]

The prosecution's propensity argument—that evidence Mr. Hamilton skirted Texas campaign finance laws helps to prove that he would commit bribery—also cuts the other way. People who commit bribery try not to attract attention to what they are doing. They pass cash in a paper bag, rather than hand a big wad of cash to an official in public. They do not pay by check, with their name written on it, to avoid creating a paper trail. Nor would they place a notation on the memo line that would draw attention to the check, like the press attention that Mr. Hamilton's checks generated.

The use of this evidence is an improper attempt by the prosecution to muddy-up Mr. Hamilton in front of the jury by suggesting that he did something that it hopes the jury will find distasteful if not illegal, and force Mr. Hamilton to defend himself against this baseless uncharged allegation. Mr. Hamilton's guilt or innocence should be decided solely based on whether he committed the crime charged, not whether the jury thinks that he may have done something else that was distasteful in his past.

With nothing on the scale in favor of admission of this evidence or line of argument, the scale tips decisively toward inadmissibility when the waste of time and potential for jury confusion

---

MR. HAMILTON: Just bring them all and I'll rewrite every one of them.

[5] That also opens the issue of a public authority defense to any charge that his campaign contributions were illegal.

[6] People who intend to violate campaign finance limits have done so in any number of ways, but none involve them using their own name on the checks used to make the donations (e.g., strawman contributions, where a third-party is given money to donate in their own name; providing cash anonymously to a campaign; providing discounted materials to a campaign or paying vendors to discount costs to a campaign; donations to an improperly coordinated PAC, etc.).

is considered. The presentation of evidence as to the legality of Mr. Hamilton's local campaign contributions and his innocent intent poses a serious risk of confusing the jury. This will inevitably lead to a "mini-trial" on Texas campaign finance law within the actual trial for bribery. *See United States v. Olive*, 2012 WL 5866138, *6 (M.D. Tenn. Nov. 19, 2012) (excluding evidence that the defendant operated his company in violation of state securities and insurance laws because it "could result in a trial within a trial that carries with it a high risk of confusing and/or misleading the jury"); *see also Filar v. Chicago Sch. Bd. of Trustees*, 375 F. App'x 607 (6th Cir. 2010) (excluding evidence that would have "required a trial within a trial"); *Ricketts v. City of Hartford*, 74 F.3d 1397 (2d Cir. 1996) (same). The trial should not be drawn into a side-show regarding the legality of uncharged conduct or Mr. Hamilton's intent with respect to how he wrote his checks. *See United States v. Ramos*, 537 F.3d 439, 456 (5th Cir. 2008) (affirming the district court's exclusion of evidence because it "would assuredly have diverted the attention of the jury, confused the issues actually to be decided, and unfairly prejudiced the conduct of the trial"); *United States v. Davenport*, 1994 WL 523653, at *8 (5th Cir. 1994) (holding "the tenuous relevance of [certain] evidence, as well as its potential to waste the jury's time and cause confusion, rendered its exclusion well within the wide discretion afforded district courts in matters regarding admissibility of evidence."). The Court should exclude evidence or argument by the prosecution that Mr. Hamilton's campaign contributions violated campaign finance rules.

## II.   THE COURT SHOULD ACCEPT A STIPULATION IN LIEU OF ANY OTHER EVIDENCE

Aside from excluding evidence concerning the legality of Mr. Hamilton's campaign contributions under Texas law, the Court should accept a stipulation from Mr. Hamilton concerning his method of writing contribution checks in lieu of evidence on this matter. The Superseding Indictment alleges that Mr. Hamilton made campaign contributions to Tiffinni

Young, Carolyn King Arnold, and Dwaine Caraway, as part of the alleged agreement with Carolyn Davis. (Dkt. 139, ¶¶29, 35, 40.) Mr. Hamilton is willing to stipulate to the date of those checks, that those checks are authentic, signed by him and drawn from his account. That stipulation addresses every conceivably proper reason for the prosecution to offer evidence concerning the checks, as it confirms that Mr. Hamilton did use these checks to make those campaign contributions.

Federal Rule of Evidence 403 justifies proving facts through stipulations, rather than the introduction of evidence, if the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . ." Fed. R. Evid. 403. Given the potential for prejudice in doing otherwise, it can be reversible error to refuse this sort of stipulation. *See Old Chief v. United States*, 519 U.S. 172, 197 (1997) (reversible error found for not accepting a stipulation in lieu of prejudicial evidence); *United States v. Yeagin*, 927 F.2d 798, 803 (5th Cir. 1991) (same); *United States v. Speltzer*, 535 F.2d 950, 955-56 (5th Cir. 1976) (same).

This Court recognized the potential for prejudice in admitting this evidence before the first trial, but it sought to draw a different line. Despite this Court's best intentions, the prosecution demonstrated that the line the Court sought to draw was unworkable. The Court decided that evidence concerning the legality of Mr. Hamilton's campaign contributions was "unduly prejudicial" and that the prosecution "was not in a position to pursue a remedy for the violation of state law or local ordinances." (10/28/20 Tr. at 86.) The Court instructed the prosecution: "The line you're going to walk is that he understood that he was not permitted to make contributions in excess of a thousand dollars, period; not that he understood that it was a violation of state law or local ordinances." (*Id.* at 88.)

7

This line proved unworkable in practice. The jury could not be told that Mr. Hamilton knew that he was not permitted to make donations to state or local candidates that exceeded $1,000 without being told, or the jury inferring, that he knew it was not permitted by a state or local ordinance. This $1,000 prohibition had to come from somewhere, and the jury would naturally infer that this prohibition must be established by state or local ordinances—there is nowhere else that the prohibition could come from. By allowing testimony and argument that there was a $1,000 contribution limit and that Mr. Hamilton violated that limit, the jury was told that Mr. Hamilton had violated the law.

Again, none of this evidence is relevant. The $1,000 cap is irrelevant to whether the campaign donations were bribes, as a bribe could either be above or below the cap. The issue under the Texas campaign finance laws also is more nuanced than simply whether there is a $1,000 cap (which everyone agrees upon); the issue is whether that cap could be avoided by using the memo line as Mr. Hamilton was instructed that he could do lawfully. Additionally, the Rule 404(b) problem is the same when the suggestion was made that Mr. Hamilton did something bad, something he was "not permitted" to do, regardless of whether that prohibition arose under state or local ordinances or from some other place.

At the first trial, the prosecution repeatedly identified the $1,000 cap and suggested that Mr. Hamilton broke the law, which injected the very prejudice that the Court sought to avoid back into the trial. The prosecution suggested that Mr. Hamilton had done something improper, which put the burden on him to deny it.

That left defense counsel in a difficult position that they never should have found themselves. The defense could either let this disparagement of Mr. Hamilton go unanswered or it could have considerably delayed the trial by having a mini-trial on the issue, offering evidence of

8

the ambiguity of the Texas law, its lack of any enforcement history in this context, and the guidance

that Mr. Hamilton was given that the practice was lawful.  Not only would that have been a waste

of time and confused the jury about the actual issues in the case, it likely would have annoyed both

the Court and the jury by delaying the trial to address a tangential issue.  Either way, the

prosecution's tactic left an unwarranted and prejudicial stain on Mr. Hamilton.

When cross-examining former Councilmember Scott Griggs, the prosecution referenced

the fact that Griggs had returned some campaign checks from Mr. Hamilton.  The prosecution

asked, "[a]nd you returned them—is that because it was over the $1,000 limit for city council

people that are running for city council are allowed to receive?," to which Griggs responded,

"[y]es."  (6/21/21B at 132.)  The obvious implication is that Griggs returned the checks because

Mr. Hamilton had violated the legal limit of $1,000.  What city council people "are allowed to

receive" obviously must be a limitation set by some kind of law, and the jury would know that.

Similarly, in cross-examining Councilmember Carolyn King Arnold, the prosecution asked

if "there is a limit on how much you can receive from one person per campaign," to which Arnold

responded that the limit is "$1,000."  (6/22/21B Tr. at 29.)  The prosecution then suggested Mr.

Hamilton's violation of that law by asking, "if anybody ever let you know . . . that that $8,000 all

came from one person and not the eight people that we just went through, would you have done

something to stop it[?]," to which Arnold responded, "[y]es."  (*Id.* at 32.)

Likewise, in cross-examining former Councilmember Philip Kingston, the prosecution

asked whether he ever "knowingly received in excess of $1,000 from [Mr. Hamilton]" for one of

his campaigns.  (6/22/21B Tr. at 129.)  Recognizing that the prosecution was insinuating that he

violated campaign finance laws, Kingston responded that "the election code . . . contemplates that

families are going to use the same bank account."  (*Id.*)

The admission of this evidence was prejudicial.  As the Fifth Circuit explained in *United States v. Beechum*, "[o]ne of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for extrinsic offense." 582 F.2d 898, 914 (5th Cir. 1978).  "This danger is particularly great where . . . the extrinsic evidence activity was not the subject of the conviction" because "the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged." *Id.*  Here, the testimony elicited by the prosecution suggested that Mr. Hamilton violated campaign finance laws, and therefore, had some propensity to commit the crimes with which he was charged.

There is no reason to repeat mistakes from the first trial when we can learn from them and do better.  The stipulation proposed by Mr. Hamilton is the appropriate way to resolve this issue in any future trial.  It gives the prosecution every legitimate benefit it is entitled to receive from that evidence by confirming that the checks were given by Mr. Hamilton as campaign contributions, and prevents the defense from arguing it was not his check or his signature, etc.  But it also avoids the prejudice of straying into the extraneous field of the $1,000 legal limits on contributions, how the limits legally could be skirted, and the other time-consuming and potentially confusing issues that would arise from having a mini-trial on that tangential point.

## CONCLUSION

Mr. Hamilton requests that the Court exclude the above-mentioned evidence so that he may receive a fair trial.

Dated: June 29, 2023

Respectfully submitted,

/s/ Abbe David Lowell

Abbe David Lowell, Bar No. 358651DC        Thomas M. Melsheimer, Bar No. 13922550TX
Christopher D. Man, Bar No. 453553DC       Dion J. Robbins, Bar No. 488888GA
Kaitlin Pierce Marino, Bar No. 242020DC    WINSTON & STRAWN LLP
WINSTON & STRAWN LLP                       2121 N. Pearl Street, Suite 900

1901 L Street, N.W.                                 Dallas, TX 75201
Washington, DC 20006                                TMelsheimer@winston.com
ADLowell@winston.com                                214-453-6100 (ph)
202-282-5000 (ph)                                   214-453-6400 (fax)
202-282-5100 (fax)

*Counsel for Defendant Ruel M. Hamilton*

## CERTIFICATE OF CONFERENCE

I certify that on June 26, 2023, the defense conferred with the prosecution concerning this

motion and the prosecution is opposed.  The prosecution agreed to file its response to the motion

within fourteen days, in accordance with the Court's local rules, and does not oppose Mr. Hamilton

filing a reply brief.

/S/Christopher D. Man
Christopher D. Man

## CERTIFICATE OF SERVICE

I certify that on June 29, 2023, a copy of the foregoing was filed with the Court's electronic

case filing system, thereby effecting service on counsel for all parties.

/S/Abbe David Lowell
Abbe David Lowell